IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-_____

ASSOCIATION OF HOME APPLIANCE MANUFACTURERS,

      Plaintiff,

v.

JILL HUNSAKER RYAN, Executive Director of the Colorado
Department of Public Health & Environment (CDPHE), in her
official capacity;

JEFF LAWRENCE, Director of the Environmental Health and
Sustainability Division of the CDPHE, in his official capacity; and

PHIL WEISER, Colorado Attorney General, in his official capacity.

      Defendants.

---

## COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF

---

Plaintiff Association of Home Appliance Manufacturers ("AHAM") hereby submits this Complaint for Declaratory and Injunctive Relief, and alleges and asserts as follows:

## <u>INTRODUCTION</u>

1.    Plaintiff AHAM, the United States and Canadian trade association whose members include manufacturers of gas and electric cooking products such as stoves, range hoods, and air-cleaning appliances, and other consumer appliances, has for decades been a leader in the development of science-driven, consensus standards through collaboration with government regulators, independent standards organizations, home appliance manufacturers, and experts

across a range of fields. One of AHAM's key missions is to help members deliver safer, more efficient, and more innovative products to improve Americans' lives.

2.     AHAM brings this lawsuit to protect its members' First Amendment rights to be free from the unconstitutional compelled speech mandated by Colorado House Bill 25-1161 ("HB25-1161"). Effective August 6, 2025, HB25-1161 requires AHAM's members to disseminate and endorse a non-consensus, scientifically controversial, and factually misleading government-mandated message about the purported "health impacts" of gas stoves that is contrary to the view of the World Health Organization, the U.S. Government Accountability Office, and federal agencies responsible for enduring the health and safety of American consumers. If AHAM's members do not disseminate that message, HB25-1161 exposes them to harsh penalties—it deems them to have engaged in a "deceptive trade practice," allowing either the State itself or private parties to impose damages, including on a class-action basis; penalties of up to $20,000 per violation; injunctions; and fee-shifting awards.

3.     Specifically, HB25-1161 requires AHAM's members to label their products sold in Colorado with a government-mandated label that includes the text, "**THE AIR QUALITY IMPLICATIONS OF HAVING A GAS STOVE**," and a "link" or "QR code" directing consumers to a website created by the Colorado Department of Public Health & Environment (CDPHE) that contains information on the purported "**Health Risks from Indoor Air Pollution Associated with Gas Stoves**" and includes "links to technical studies and other resources" from various third parties. The website lists several serious and potentially fatal adverse health conditions—such as "chronic heart and lunch diseases," "asthma," and "some cancers, such as leukemia." The content of the CDPHE-created website that AHAM members are compelled to

disseminate and tacitly endorse was developed at the sole discretion of the State, is subject to change at any time without notice and without any stakeholder input, and includes links to content created by private third-party groups that represent only a small, misleading subset of information on the subject of gas stoves.

4.     The compelled disclosure's suggestion that gas stoves, and only gas stoves, pose health risks represents only a vanishing minority view in the scientific literature. The overwhelming majority of available health research shows there is no *association* between gas stoves and adverse health outcomes, and—most critically—when evaluated collectively, fails to demonstrate *causation*. Indeed, the vast majority of studies concerning health outcomes related to cooking fuel conclude that ***the health risks of cooking with gas are no different than cooking with electricity***. The state-mandated website required by HB25-1161 fails to cite, or even acknowledge, these studies.

5.     Yet HB25-1161 singles out gas stoves, and requires only gas stoves to carry the State's one-sided, misleading, and stigmatizing information at the point of sale. HB25-1161 thus "[m]andat[es] speech that [AHAM's members] would not otherwise make necessarily alter[ing] the content of the[ir] speech." *Riley v. Nat'l Fed. of the Blind*, 487 U.S. 781, 795 (1988).

6.     Because there is no scientific consensus for HB25-1161's compelled label concerning the purported "health impacts" of gas stoves, the disclosure cannot withstand constitutional scrutiny. The First Amendment prohibits compelled disclosures unless they are "purely factual and uncontroversial." Courts have universally held that disclosures that are not rooted in a scientific consensus necessarily are neither purely factual nor uncontroversial. Applying that rule to the state of the science surrounding gas stoves, a District Judge in the Central

District of California recently found that "there is no scientific consensus regarding" the purported "health risks" of using gas stoves, and, thus, forcing manufacturers to place a warning label on gas stoves "would be barred by the First Amendment." *Hedrick v. BSH Home Appliances Corp.*, No. 2:23-CV-04752-JWH-JDE, 2025 WL 1238363, at *6 (C.D. Cal. Apr. 28, 2025) (dismissing consumer class action seeking to impose liability on manufacturers based on their failure to provide consumers a warning similar to that required by HB25-1161).

7.      Even more problematic, the legislative record shows that HB25-1161 was not driven by the purported "health impacts" unique to gas stoves at all, but instead by the unrelated policy debate on climate change and decarbonization. As one of the legislative sponsors of HB25-1161 testified, "gas appliances contribute to climate change and must be part of the conversation as we look to combat that existential crisis."[1] This echoes prominent literature in the decarbonization debate: "health hazards of indoor combustion can offer an essential antidote to the gas industry's climate obstruction strategies, while the climate implications of gas stoves can provide motivation for state and local governments to take action on indoor air pollution."[2] As one of the sources on the HB25-1161-mandated website itself explains: "[N]atural gas use in buildings and homes … is being targeted for a reason wholly unrelated to indoor air quality: It is a fossil fuel." (Duero Decl., Ex. C at 2.) Thus, not only is HB25-1161 scientifically unsupported, it is also

---

[1] Duero Decl., Ex. A at 5:14-17 (Tr. of Mar. 26, 2025 Comm. on Transp. and Energy Hearing at 5:14-17).

[2] Duero Decl., Ex. B (Aaron Regunberg, *Taking on "Now We're Cooking With Gas": How a Health-First Approach to Gas Stove Pollution Could Unlock Building Electrification*, Harv. Envtl. L. Rev., August 29, 2022, https://journals.law.harvard.edu/elr/2022/08/29/ taking-on-now-were-cooking-with-gas-how-a-health-first-approach-to-gas-stove-pollution-could-unlock-building-electrification/) (the "Harvard Law Article").

a government regulation of speech that is both content- and viewpoint-based. That makes the law

a clear violation of AHAM's members' First Amendment rights that cannot be justified under any

relevant constitutional standard.

8.    AHAM fully supports the continued development of consensus standards and

innovations to make products more energy efficient, further reducing carbon emissions overall.

And AHAM supports science-driven measures to protect consumer health—including universal

ventilation standards for all stoves, not just gas-fueled stoves. But AHAM cannot support this

unconstitutional content- and viewpoint-based speech compulsion. It brings this action to

permanently enjoin the First Amendment violation HB25-1161 presents to AHAM's members.

## PARTIES, JURISDICTION, AND VENUE

9.    Plaintiff Association of Home Appliance Manufacturers ("AHAM") is an Illinois

nonprofit, IRS-recognized 501(c)(6) trade association, headquartered in Washington, DC with an

office in Ottawa, Canada.  AHAM serves numerous vital roles for its members and in the interests

of their millions of consumers, including advocating for reasonable and necessary regulation,

pursuing evidence-based, science-driven product and safety standards, and ensuring consumers

receive accurate information about members' products. The First Amendment interests at issue in

this case—the right not to be compelled to provide consumers inaccurate, misleading, and

scientifically unsupported information about one's own products—clearly impact and are germane

to all of these purposes.

10.    AHAM's members include well-known home appliance manufacturers and

retailers like Whirlpool, Samsung, GE, Bosch, and LG. AHAM's members sell gas stoves in

Colorado, without warning labels, both indirectly through brick and mortar and online retailers

and directly though their own, direct-to-consumer on-line sales. Many of AHAM's members thus are both manufacturers and retailers. AHAM represents the vast majority of the manufacturers of the products affected by HB25-1161. As further discussed below, they have concrete plans to continue offering such products for sale to Colorado consumers. They disagree with the Gas Stove Labeling Law's implication that their products cause negative health impacts—and believe that being forced to speak the State's inaccurate and misleading message would violate their First Amendment right to free speech. AHAM's First Amendment challenge to HB25-1161 does not require the participation of any individual member, because the law applies equally to all members who sell their products in Colorado and the unconstitutionally-compelled information is not specific to any specific member or any specific members' products. AHAM thus has associational standing to bring this First Amendment challenge to HB25-1161 on behalf of its members.

11.     Defendant Jill Hunsaker Ryan is named in her official capacity as the Executive Director of the CDPHE.

12.     Defendant Jeff Laurence is named in his official capacity as the Director of the Environmental Health and Sustainability Division of the CDPHE.

13.     In their roles, Executive Director Hunsaker Ryan and Director Lawrence have oversight of the agency and division, respectively, responsible for developing, apparently without any review or comments from the public or any stakeholders, the specific content on the CDPHE webpage that AHAM members are required to publish and tacitly endorse every time they sell to consumers within the state—no matter the content, which can change at any time without notice—about the purported health impacts of gas stoves.

14.     Defendant Phil Weiser, in his official capacity as the Attorney General of the State of Colorado, enforces the laws of the state of Colorado, including its consumer-protection laws. Should HB25-1161, with its accompanying Warning Label provision, go into effect, Defendant Weiser will be tasked with enforcing it, including through the Colorado Consumer-Protection Act.

15.     This Court has jurisdiction over AHAM's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a) and 42 U.S.C. § 1983 because AHAM alleges violations of its rights under the First Amendment to the U.S. Constitution, made applicable to the States through the Fourteenth Amendment.

16.     The Court may award declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2022, as well as any other equitable relief it deems appropriate under its inherent powers.

17.     Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b)(1) because Defendants are located within this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to AHAM's claims occurred in this District.

## FACTUAL ALLEGATIONS

**A.    THERE IS NO SCIENTIFIC CONSENSUS THAT GAS STOVES CAUSE HARMFUL HEALTH EFFECTS, AND TO SUGGEST OTHERWISE IS HIGHLY MISLEADING.**

18.     To be clear, the current state of the science is this: international researchers and government agencies agree that **there is no consensus that indoor gas stove use is associated with—let alone causes—any health impacts**.

19.     Consider one of the most recently published articles on the topic. In 2024, a group of international researchers published an article in the highly respected *Lancet Journal of*

7

*Respiratory Medicine*. Funded by the (non-partisan) World Health Organization ("WHO"), researchers analyzed 116 studies to summarize the health impacts, if any, associated with or caused by cooking or heating with gas, compared with "polluting fuels" or with clean energy.[3]

20.     They found **no significant associations** between cooking with gas and adult asthma, wheeze, cough, or breathlessness—even when compared with cooking with electricity.[4]

21.     And, when compared with "polluting fuels," like wood or charcoal, cooking with gas "significantly *lowered* the risk of pneumonia, wheeze, cough, breathlessness, chronic obstructive pulmonary disease, bronchitis, pulmonary function deficit, severe respiratory illness or death, and low birth weight."[5]

22.     Those results accord with numerous previously published papers, including:

   a.     A 2013 analysis, also in the *Lancet Journal on Respiratory Medicine*, finding that data from "over 500,000 primary and secondary school children" across 47 countries found "no evidence of an association between the use of gas as a cooking fuel and either asthma symptoms or asthma diagnosis."[6]

---

[3] Benson Decl. ¶¶ 54, 89 & Ex. D (Puzzolo, E., N. Fleeman, F. Lorenzetti, F. Rubinstein, Y. Li, R. Xing, G. Shen, E. Nix, M. Maden, R. Bresnahan, R. Duarte, L. Abebe, J. Lewis, K. N. Williams, H. Adahir-Rohani and D. Pope (2024). "Estimated health effects from domestic use of gaseous fuels for cooking and heating in high-income, middle-income, and low-income countries: a systematic review and meta-analyses." Lancet Respir Med 12(4): 281-293.)

[4] *Id.*

[5] Benson Decl. ¶ 89 & Ex. D.

[6] Benson Decl., Ex. G (Gary Wong et. al., *Cooking fuels and prevalence of asthma: a global analysis of phase three of the International Study of Asthma and Allergies in Childhood (ISAAC)*, 1 Lancet Respir. Med., 386 (May 31, 2013)).

b. A 2014 report, published by the WHO, finding that "evidence for a relationship between gas cooking (and indoor NO2) and asthma prevalence or asthma symptoms was ***inconsistent***" and that "the current evidence was ***insufficient to support causality***."[7]

c. A 2023 review, in the journal *Global Epidemiology*, concluding that the current epidemiology literature does ***not*** "provide sufficient evidence regarding causal relationships between gas cooking or indoor NO2 and asthma or wheeze."[8]

23.    These scientific studies align with the approach adopted by the United States government.

24.    The Government Accountability Office most recently recognized in 2025 that there is "***no consensus on the health effects*** of nitrogen dioxide emissions directly attributable to gas stove cooking."[9]

25.    The Consumer Product Safety Commission clarified in 2023 and repeated in 2025 that it would not seek to "ban" gas stove use in the United States—indeed, it closed its investigation without taking any action at all.[10]

---

[7] Duero Decl., Ex. J at 76 (Nigel Bruce et. al., *WHO Indoor Air Quality Guidelines: Household Fuel Combustion Review 4: health effects of household air pollution (HAP) exposure*, at 76 (2014) ("WHO Report") (emphasis added)).

[8] Benson Decl., Ex. C (Li et. al, *Gas cooking and respiratory outcomes in children: A systematic review*, 5 *Global Epidemiology* 100107 (2023)).

[9] Duero Decl., Ex. D at 3 (U.S. Government Accountability Office, *Gas Stoves: Risks and Safety Standards Related to Products and Ventilation*, GAO-25-107514, 3 (March 14, 2025), https://www.gao.gov/assets/880/876258.pdf).

[10] *Id.* at 12 (reproducing Feb. 26, 2025 Letter from Peter Feldman, Acting Chairman of CPSC, to Alicia Kackley of GAO ("On March 7, 2023, the Commission published a Request for Information (RFI) on Chronic Hazards Associated with Gas Ranges. The comment period on this RFI closed in May 2023, and I consider this matter closed. As GAO notes in its report, millions

26.     And no other agency—including both the Department of Housing and Urban Development and the Environmental Protection Agency (EPA)—has determined that it is necessary to regulate gas emissions from indoor stoves.

27.     AHAM engaged Dr. Stacy Benson, an independent epidemiologist specializing in environmental epidemiology, occupational epidemiology, respiratory protection, and clinical research, and a former Fellow at the National Institute for Occupational Safety and Health in its National Personal Protective Technology Laboratory. (Benson Decl. ¶¶ 1, 3.) Dr. Benson undertook a comprehensive survey of the available peer-reviewed epidemiological research evaluating cooking with natural gas and potential health endpoints. (*Id*. ¶ 23.) After identifying all systematic reviews and meta-analyses on this topic, i.e., studies attempting to combine and appraise existing primary research, Dr. Benson then evaluated the individual studies cited in those materials together with additional studies identified in her own independent search. (*Id*. ¶¶ 19, 23, 42–47.) Through this she identified a subset of 69 individual studies addressing respiratory symptoms and disease endpoints for wheeze, breathlessness, cough, chronic lung conditions, acute lower respiratory infections and pneumonia, and asthma. (*Id*. ¶ 58.) She also assessed studies addressing other potential health endpoints such as cardiovascular disease and cancer. (*Id*. ¶ 48–51.)

28.     She then assessed the collective body of this scientific evidence using the Bradford Hill Criteria, which are widely accepted in epidemiology as the fundamental method for

---

of Americans use gas stoves every day. . . . [A]s GAO also notes, there is ongoing disagreement about the extent of the linkage before the emissions produced by gas stoves and certain health issues. For these reasons, I believe CPSC's attention and limited resources are better focused on the agency's core safety mission, not backdoor climate regulation.")).

establishing a causal inference.. (*Id*. ¶ 30, 60–70.) Applying the criteria here demonstrates "**there is no scientific consensus** that using gas stoves for home cooking is associated with or causes any health impacts or effects." (*Id*. ¶ 10 (emphasis added); *see also id.* ¶¶ 11–13, 70.) To suggest there is a scientific consensus for such an association or causal relationship [between health impacts or effects and gas stove] **would be scientifically inappropriate and therefore factually inaccurate**." (*Id*. ¶ 10 (emphasis added).) Dr. Benson also reviewed the CDPHE website published on August 4th. (*Id*. ¶ 24.) Her own search "encompassed far more research than the CDPHE presents on its website." (*Id.*) By contrast, "the CDPHE website only provides a minority view and omits the majority view found in the scientific evidence set out in the literature [Dr. Benson] reviewed." (*Id.*)

## B.    DESPITE THE ABSENCE OF ANY CAUSAL CONNECTION BETWEEN GAS STOVES AND HEALTH RISKS INTEREST GROUPS PROMOTE THOSE RISKS TO ADVANCE DECARBONIZATION

29.    Despite the widespread consensus that the science does not support the conclusion that gas stoves alone cause health effects, gas stove use continues to draw attention from a small group of opponents and, consequently, to make headlines.

30.    In 2022, the Harvard Environmental Law Review published a law student's essay giving the environmental justice movement an "antidote to the gas industry's climate obstruction strategies" rather than arguing about climate change, environmental justice advocates could raise "the [purported] health hazards of indoor combustion."[11]

31.    The law review article relied in part on a 2022 report by the Clean Energy think tank Rocky Mountain Institute ("RMI"), which did not conduct any new research but rather

---

[11] *See* Duero Decl., Ex. B at 2.

purported to analyze earlier studies of gas stove use and concluded that "a robust body of scientific research shows the pollutants released by gas stoves can have negative health effects."[12]

32.    The problem with the RMI study is that its conclusion is not supported by the scientific evidence. The papers the RMI study purported to analyze were based on observational data, had significant methodological problems, and their conclusions varied widely. RMI never mentioned or accounted for these inconsistences and methodological flaws in reporting its conclusions.[13]

33.    But the study's failings were masked by its abstract, which expressly appealed to proponents of decarbonization—and further by the Harvard Environmental Law Review article's emotional conclusion:

> The fossil gas industry has made consumer attachment to gas stoves the centerpiece of its anti-electrification messaging. To counter and overcome this strategy, building electrification advocates must tell their own story about gas stoves, and it is hard to imagine any narrative more salient than the reality of an everyday kitchen appliance that is literally poisoning our children in their own homes.[14]

34.    Shortly after the Harvard Environmental Law Review article was published, then-Commissioner of the U.S. Consumer Product Safety Commission, Richard Trumka Jr., told

---

[12] Benson Decl., Ex. E (Gruenwald, Seals et. al, *Population Attributable Fraction of Gas Stoves and Childhood Asthma in the United States*, 20 Int. J. Environ. Res. Public Health 75 (2022), https://www.mdpi.com/1660-4601/20/1/75); Duero Decl., Ex. E (Brady Seals, et al., *Gas Stoves: Health and Air Quality Impacts and Solutions*, RMI (May 2020), https://rmi.org/insight/gas-stoves-pollution-health/).

[13] *See* Benson Decl. ¶¶ 71–77, 89 & Ex. E.

[14] Duero Decl., Ex. B at 19.

Bloomberg News that gas stoves posed a "hidden hazard." "Any option is on the table," he said, adding that, "Products that can't be made safe can be banned."[15]

35.     Trumka's comments ignited a firestorm. Some politicians insisted that action was necessary,[16] while others decried government overreach.[17] The U.S. House of Representatives passed two bills to prohibit gas stoves from being singled out through federal regulation, the Gas Stove Protection and Freedom Act (H.R. 1615) and the Save Our Gas Stoves Act (H.R. 1640). Both received bipartisan support but did not advance beyond House approval.

36.     The media, rather than examining or addressing the distinction between the two separate issues of consumer health and climate change, published summaries under panic headlines. The Washington Post, in 2022, insisted in bold-face type "**Gas stove pollution causes 12.7% of childhood asthma**," relying on the very RMI study just discussed.[18] Even the study's author admitted, however, that it "***does not assume or estimate a causal relationship***."[19] By then, however, the gas-stove firestorm was already well underway.

---

[15] Duero Decl., Ex. F at 2 (Ari Natter, *US Safety Agency to Consider Ban on Gas Stoves Amid Health Fears*, Bloomberg (Jan. 9, 2023), https://www.bloomberg.com/news/articles/2023-01-09/us-safety-agency-to-consider-ban-on-gas-stoves-amid-health-fears).

[16] *Id.*

[17] Duero Decl., Ex. G (Ronny Jackson (@RonnyJacksonTX), X (Jan. 10, 2023, 8:52 AM), https://x.com/RonnyJacksonTX/status/1612839703018934274).

[18] Duero Decl., Ex. H (Gas stove pollution causes 12.7% of childhood asthma, study finds, Washington Post (Jan. 6, 2023) (citing Gruenwald, Seals et. al, *Population Attributable Fraction of Gas Stoves and Childhood Asthma in the United States*, 20 Int. J. Environ. Res. Public Health 75 (2022), https://www.mdpi.com/1660-4601/20/1/75) (emphasis added)).

[19] Duero Decl., Ex. I (Breanne Deppisch, *What to know about the study behind the push to ban gas stoves*, Washington Examiner (Jan. 11, 2023), https://www.washingtonexaminer.com/news/209154/what-to-know-about-the-study-behind-the-push-to-ban-gas-stoves/ (emphasis added)).

37.    Throughout the last three years, the media and politicians on both sides of the aisle have returned to the debate on gas stoves for reliable click-bait. News organizations continue to purport to summarize new studies with findings that scare the general public: gas stoves cause asthma, gas stoves cause lung disease, gas stoves cause cancer.

38.    But beyond those media headlines, the science has remained the same: There was no scientific consensus that gas cooking caused health effects when RMI published its study in 2022 and there is no scientific consensus that it does now.

## C.    COLORADO LEGISLATORS, RELYING ON MEDIA HYPE RATHER THAN SCIENCE, IMPOSE A LABELING REQUIREMENT

39.    That lack of scientific consensus, though, was not enough to stop the legislative process in Colorado from imposing burdensome, scientifically unsupported requirements on manufacturers, retailers, and others.

40.    HB25-1161 was first introduced by Representative Alex Valdez on February 3, 2025. When introduced, the bill required that a covered entity (defined as a "wholesaler or supplier of a gas-fueled stove") must affix a yellow adhesive label to any gas-fueled stove offered for sale in Colorado with the message, "**THIS APPLIANCE SHOULD BE VENTILATED TO THE EXTERIOR WHEN IN USE**" in bold-face type.[20]

---

[20] Duero Decl., Ex. K (proposing language of C.R.S. § 25-5-1602(1)). The bill likewise required that "[b]efore transacting an online sale of a gas-fueled stove to an address in [Colorado], a covered entity shall **prominently post on the internet website** where the online sale occurs **the content of the label** described in subsection (1) of this section for the prospective purchaser." *Id*. (quoting C.R.S. § 25-5-1602(3) (emphasis added)).

    **1.**    **Testimony Before the House Committee on Energy and the Environment Was Based on Climate Concerns and a Misunderstanding of What the Science Shows About Health Impacts**

41.    During a February 19, 2025 hearing before the House Committee on Energy and the Environment, bill sponsor Representative Valdez initially testified that HB25-1161 was meant as a reminder that gas appliances "should be ventilated to the exterior when in use. So it just reminds people to turn on their fan. We don't make any judgments upon what chemicals may be excreted by that process. . . In fact, the truth is, it's not only the combustible materials of gas, but it's also the food so -- you know, and the pan itself." Duero Decl., Ex. L at 3:23-4:2 (Transcript of Feb. 19, 2025 on House Comm. on Energy and the Environment Hearing). Despite this admission, she offered no explanation for why the bill was targeted only at gas stoves.

42.    At the February 19, 2025, hearing, three additional witnesses testified in favor of HB25-1161. Each mentioned purported health effects caused by gas stove emissions for which there is no credible scientific support. In addition, the witnesses' affiliations and testimony suggest that they supported HB25-1161's singling out of gas stoves in large part because of climate concerns. For example, Ms. Nordheim testified that she supported HB25-1161 because it would discourage the use of gas stoves, which even when properly vented, cause greenhouse gas emissions:

> "[E]ven when vented properly, gas stoves remain problematic due to their reliance on natural gas. Natural gas is a significant source of methane emissions, which are 80 times more potent than carbon. Additionally, the extraction of natural gas is a major driver of ozone pollution affecting Colorado's front range. Our continued use of natural gas exacerbates climate change . . . By encouraging the use of electric and induction stoves, we can reduce indoor air pollution and greenhouse gas emissions. . . . To effectively discourage the use of gas stoves and promote cleaner alternatives, we must take comprehensive actions, including and beyond the labeling requirements of this bill.

*Id.* at 6:22-7:16.

43.     Second, Jan Rose testified on behalf of the Colorado Coalition for a Livable Climate, a coalition of 53 "[c]ommunity groups, environmental organizations and faith-based organizations that all believe in meeting the Paris climate accords." *Id.* at 11:9-11. Ms. Rose testified that gas stove emissions contribute to "low birth weights and premature births and stillbirths and neural tube defects and underdevelopment of babies, toddlers and children," "asthma and upper airway inflation, a respiratory illness," "insulin resistance and developmental delays," "cardiovascular disease, chronic bronchitis, [and] can even impact stroke percentages." *Id.* at 21:22-22:10. Ms. Rose is not an epidemiologist, and her testimony did not identify specific studies to support any of these assertions. There is no scientific consensus that gas stove emissions cause any of these health effects.

44.     Third, Heidi Leathwood testified on behalf of 350 Colorado that "burning natural gas releases nitrogen oxides, carbon monoxide, and carbon dioxide, methane, nitrous oxide, volatile organic compounds, trace amounts of sulfur dioxide, and particulate matter." *Id.* at 15:24-16:2. The website for 350 Colorado explains "We are a grassroots movement working to build a fossil-free future powered by 100% renewable energy . . . Through our volunteer-led teams, we use a variety of tactics, such as legislation and direct action, to take on the climate crisis."[21] Ms. Leathwood testified that nitrogen oxides "cause[] airway inflammation, coughing, wheezing, and increased asthma attacks" and that volatile organic compounds can cause cancer, birth defects, and other serious health harms. Like the prior witnesses, Ms. Leatherwood is not an epidemiologist

_____

[21] Duero Decl., Ex. M, https://350colorado.org/ "Who We Are" (last visited 7/29/25).

and did not identify any specific studies to support those assertions. Duero Decl.. Ex. L at 16:8-10.

45.     Jacob Cassady, AHAM's Director of Government Relations, testified against HB25-1161 in person and through three pages of written remarks. (Declaration of Jacob Cassady ("Cassady Decl.") ¶ 6.) Mr. Cassady explained that "AHAM is an active participant and supporter of organizations who set standards and specify minimum ventilation rates that are acceptable for indoor use and minimize the adverse health effects of cooking food." Duero Decl., Ex. L at 13:13-17. But "[s]imply putting a label on one type of a cooking product gives consumers the false sense of security that they don't need to ventilate while cooking food by other [] fuel sources." *Id.* at 14:4-7. Rep. Valdez responded that the "use case" for applying the label to gas but not electric stoves is because in the winter in Denver "a bunch of people boil[] water on their stove … to keep their house from becoming any drier than it already is." *Id*. at 24:4-12. She continued that gas "needs to be ventilated … [but] you could boil water with an electric stove without needing to ventilate it." *Id.*

46.     Representatives DeGraaf and Barron also testified against the bill. Representative Degraaf explained, "Most of the pollutants that are represented are represented of incomplete combustion, which as long as you don't restrict the stove, you're going to get a complete combustion, and that's why gas stoves don't leave soot. . . . the limited amount of benzene is just – it's just a matter of incomplete combustion as is carbon monoxide. So there's – there's directions in there [user manual]. It's – it's already done. I just don't see the need for it [label]." *Id.* at 25:2-5, 25:10-15.

47.    The House Committee on Energy and the Environment voted 10-3 to move HB25-1161 to the committee of the whole with a favorable recommendation.

48.    After the February 19, 2025 hearing, Mr. Cassady met with Representative Valdez and other members of the House Committee on Energy and the Environment to continue discussion of AHAM's concerns, but subsequent amendments did not address those concerns. Cassady Decl. ¶ 7.

49.    HB25-1161 was amended to delete the statement, "Safety clause. The general assembly finds, determines, and declares that this act is necessary for the immediate preservation of the public peace, health, or safety or for appropriations for the support and maintenance of the departments of the state and state institutions," and substitute a petition clause in its place. Duero Decl, Ex. N2 (HB25-1161_L.004 (striking page 3, line 27, and page 4, which eliminated HB25-1161 § 4)).

50.    During debate on the House floor on February 28, 2025, Representative DeGraaf testified in opposition to HB25-1161. DeGraaf expressed concern that the RMI study connecting gas emissions to childhood asthma was biased,  Duero Decl., Ex. O at 13:18-14:1; 14:14-24; 15:10-15; 16:10-23, and opined "the reason for the stickers on the gas stove is because of the superstitions around carbon dioxide," *id*. at 12:25-13:3, and is "part of the effort to make sure that people are frightened about gas and carbon dioxide," *id*. at 15:1-2.

51.    On March 4, 2025, HB25-1161 passed the House by a vote of 41-21 without further amendment after two minutes of debate, with the only testimony provided by Representative DeGraaf in opposition to the bill.

52.     Around March 20, 2025, Jacob Cassady of AHAM contacted the members of the

Senate Committee on Transportation and Energy to request a meeting in advance of the hearing

on HB25-1161. This email explained:

> When cooking with any fuel source, proper ventilation is the most important
> factor to improving indoor air quality. Particulate matter ($PM_{2.5}$) is emitted during
> both gas and electric cooking and originating in the foodstuffs cooked. The
> legislation, as written, would lead a consumer to believe that they should only
> ventilate while cooking with gas fuel.
>
> AHAM is opposed to the legislation, as written, because it would require a
> misleading and inaccurate label to "warn" consumers that only cooking with gas
> requires ventilation or filtration to improve indoor air quality. Requiring a
> misleading label in statute fails to meet the public need for accurate information
> regarding indoor air quality. Public education should be correct and flexible to
> remain accurate in the future as science and innovations evolve.

Cassady Decl. ¶ 8.

### 2.     The Senate Substantially Revised HB25-1161 to Require a Label that Wrongly Implies Gas Stoves Have Adverse "Health Impacts"

53.     On March 26, 2025, the Senate Committee on Transportation and Energy adopted

a strike-below amendment, L.011, presented by bill co-sponsors Senators Cathy Kipp and Katie

Wallace. This amendment entirely rewrote HB25-1161. First, HB25-1161 as amended by L.011

changed the text of the required label from a statement about ventilation to a label stating

"**UNDERSTAND THE AIR QUALITY IMPLICATIONS OF HAVING AN INDOOR GAS**

**STOVE.**" in bold-faced black type in both English and Spanish followed by a link or QR code to

a web page on CDPHE's website. Amendment L.011 added Section 25-5-1602(4), which requires

that the CDPHE create a webpage about gas-stove health impacts for the required labels to

reference:

> The Department shall establish a page on the Department's public website with
> information on the health impacts of gas-fueled stoves. The Department may

include on the web page links to technical studies or other resources to assist the
public in understanding the health impacts of gas-fueled stoves.

Duero Decl., Ex. P (adding C.R.S. § 25-5-1602(4)).

54.    If a wholesaler does not comply with these requirements, it faces steep penalties.

For enforcement, HB25-1161 provides that "A retailer that, in the course of the retailer's business,

violates Section 25-5-1602 commits a deceptive trade practice under the "Colorado Consumer

Protection Act," [CCPA] Article 1 of Title 6." Duero Decl., Ex. P (amending C.R.S. 25-5-1603).

This enforcement provision originally referred to a "covered entity" rather than a "retailer," but

remained substantively unchanged from inception through final passage. HB25-1161 also added

subsection (kkk) to C.R.S. § 6-1-105: **Unfair or deceptive trade practices - definitions**. (1) A

person engages in a deceptive trade practice when, in the course of the person's business, vocation,

or occupation, the person: . . . (kkk) VIOLATES SECTION 25-5-1602." Under the CCPA, the

Attorney General or a district attorney can bring a civil action seeking penalties up to $20,000 for

each violation of the gas oven labeling law. C.R.S. § 6-1-112. The CCPA also allows private

enforcement actions, in which a successful plaintiff can recover the greater of actual damages or

$500 plus costs and attorney fees. C.R.S. § 6-1-113(2). If the plaintiff establishes bad faith

conduct—defined to include willful, knowing, or intentional conduct—by clear and convincing

evidence, the CCPA increases liability to treble actual damages plus costs and attorney fees. *Id*.

(2), (2.3).

55.    At no point during the public debate of HB25-1161 did the Colorado Senate or

Colorado House of Representatives or its committees discuss why it changed from a focus on

informing consumers about ventilation to a focus on purported health impacts or what the CDPHE

web page would actually say about the purported health impacts of gas-fueled stoves. Nor were

any procedures put in place to ensure the usual public review and stakeholder input before the State creates content for the website or changes it. HB25-1161, in fact, includes no notice-and-comment process at all.

56.     Amendment L.011 required that retailers place the yellow adhesive label "on the display model for a new gas-fueled stove" rather than requiring covered entities (retailers and suppliers) to place a label on all new gas stoves sold in Colorado. The requirement for online sales of new gas-fueled stoves that retailers "prominently post on the internet website where the online sale occurs the content of the adhesive label descried in subsection (1)" remained unchanged.

57.     During the March 26 Senate Committee on Transportation and Energy hearing, two co-sponsors and four other witnesses testified in support of HB25-1161. Although each witness mentioned purported health impacts of gas emissions, the witnesses' affiliations and testimony make clear that they supported HB25-1161's singling out of gas stoves for a label about purported health impacts at least in part because it furthered their climate goals. For example, HB25-1161 co-sponsor Senator Katie Wallace, ended her remarks in support of the bill by stating, "I will just wrap up by saying that gas appliances contribute to climate change and must be part of the conversation as we look to combat that existential crisis." Duero Decl., Ex. A at 5:14-17.

58.     The next witness was Jan Rose, the Legislative Analyst for the Colorado Coalition for a Livable Climate, a coalition of organizations that "work together to limit global warming." *Id.* at 7:19-22.

59.     Collin Tomb, testified on behalf of Boulder County and Colorado Communities for Climate Action that "Consumers deserve the truth about gas stoves and guidance on how to protect

themselves, as well as the opportunity to choose alternatives . . . that don't directly emit climate and air pollutants." *Id.* at 10:25-11:4, 7:14-17.

60.     Kari Burman, a retired senior engineer from the National Renewable Energy Lab representing the Colorado Sierra Club, *id*. at 11:9-14, described herself as "a passionate supporter of policies which will advance Colorado's clean energy transition and improve the air quality in the state," and testified that "[B]urning gas in buildings is not only a threat to the reduction of greenhouse gas emissions in Colorado, but also a threat to human health." *Id.* at 11:15-17, 11:21-23.

61.     Katherine Goff, a Northglenn City Council Member and past President of Colorado Communities for Climate Action, was the most direct in explaining how HB25-1161 supports environmental goals:

> "Understanding environmental impacts, including emissions of carbon dioxide and other pollutants like nitrogen oxides, can help individuals choose products that align with their environmental values. It's important that consumers learn that gas stoves emit greenhouse gases that contribute to climate change. By labeling appliances with a warning, manufacturers can encourage the development and adoption of cleaner alternatives, like electric stoves or induction cooktops, which have lower environmental impacts."

*Id.* at 13:17-14:1.

> As Colorado implements environmental and health regulations to protect our residents and the planet, requiring warning labels ensures that manufacturers will meet our state emission standards. This bill is a wise part of a broader movement toward greater transparency and responsibility in consumer products, encouraging sustainability, public health and better environmental outcomes.

*Id.* at 14:11-18.

62.     Later during the March 26 hearing, when HB25-1161 co-sponsor Senator Kipp was asked for clarification about whether HB25-1161 as amended by L.011 only required an adhesive

label on the display model instead of every stove sold, she testified "yes, just the display model, just at the point of sale. We don't think that people need to have the labels in their homes because they've already made a decision to purchase that stove." *Id.* at 37:3-6. This response suggests the purpose of the bill was to dissuade consumers from purchasing gas stoves, not to ensure that they understand indoor air quality, which is impacted by continued ventilation decisions after purchase.

63.    At the March 26 Senate Committee on Transportation and Energy hearing, Senator Simpson asked about the air quality implications of electric stoves and cooking without being ventilated. *Id.* at 15:1-3. Ms. Rose responded, "There are, with electric stoves, combustion effects. So if you burn something, you get PM2.5 and PM10. Those are true for electric stoves and gas stoves. The difference between a gas and an electric stove is that Stanford University says that electric -- that gas stoves bleed a small amount of methane 100 percent of the time, even when the burners aren't turned on. Electric stoves don't emit particulate matter -- they never emit methane, but they don't emit particulate matter when they're not cooking or when they're only cooking water, then they just emit evaporation." *Id.* at 15:7-17. Ms. Rose did not present any evidence that methane from gas stoves causes any health impacts.

64.    At the March 26 committee meeting, Jacob Cassady testified against HB25-1161 on behalf of AHAM and submitted written comments. Mr. Cassady explained that the U.S. Government Accountability Office had recently issued a report that "pointed out that there simply is no conclusive evidence that has been laid out that puts increased asthma rates or other health maladies on the use of natural gas cooking." *Id.* at 19:18-23. AHAM further expressed concern that putting a label on only gas cooking products was likely to mislead consumers into thinking

that ventilation during cooking is not needed for electric stoves. Finally, AHAM was concerned that the legislation's $20,000 per violation penalty was excessive. *Id*. at 19:2-6.

65.    A representative of the Colorado Retail Council also testified against the bill, agreeing that the potential penalties are excessive and that gas stoves are safe. *Id.* at 16:7-13, 17:3-8.

66.    On March 26, 2025, the Senate Committee on Transportation and Energy voted 6 to 3 to move House Bill 25-1161 to the Committee of the Whole with a favorable recommendation as amended by L.011.

67.    On March 31, 2025, on second reading HB25-1161 passed with the L.011 amendments recommended in the Senate Committee on Transportation and Energy.

68.    On April 6, 2025, Jake Cassady, the Director of Government Relations for AHAM emailed all Colorado State Senators to request a No vote on HB25-1161, and attached a letter that explained, "AHAM supports appropriate and accurate science-based labels for all cooking products." Cassady Decl. ¶ 10.

69.    The April 6 AHAM letter continued, "**All Cooking – Gas or Electric – Emits Pollutants – Ventilation is Key**. The **U.S. Government Accountability Office (GAO)** report on gas stoves, which was released March 18, 2025 and titled *Gas Stoves: Risks and Safety Standards Related to Products and Ventilation* notes that all cooking, regardless of fuel source, produces airborne particles" and this "Particulate matter, especially PM2.5 released as a function of cooking food, poses a greater risk to human health than the fuel source. Cassady Decl. Ex. D (linking to https://www.gao.gov/assets/gao-25-107514.pdf).

70.    Finally, AHAM's April 6 letter explained that the "EPA does not list gas stoves as significant contributors to indoor air quality or health hazards and advises that, regardless of fuel source, fine particulates (PM2.5) pose the greatest health risk of all cooking emissions. While a 2024 WHO funded study found: "Compared with electricity, using gas for cooking or heating did not result in a higher risk estimate for asthma in children nor in adults." Cassady Decl. Ex. D (linking to https://www.gao.gov/assets/gao-25-107514.pdf).

71.    Mr. Cassady sent an equivalent email and letter to all Colorado State Representatives on behalf of AHAM on April 7, 2025. Cassady Decl. ¶ 11.

72.    On April 7, 2025, at the third reading of HB25-1161 in the Senate, Senator Kipp introduced Amendment L.015 to insert the descriptor "credible, evidence-based" before "information on the health impacts of gas-fueled stoves" in response to a request from unidentified individual(s). Without further discussion, and therefore no effort to ensure that the information would be non-biased, the Senate approved the amendment and passed HB25-1161 by a vote of 19-15 with one abstention.

73.    On April 11, 2025, HB25-1161 returned to the House floor. Representative Valdez explained, "There were some significant changes made. It was essentially changed to a QR code that will inform folks of the information about ventilating their gas stoves. So changed a bit, but it's still a good bill. It will help people avoid breathing [] harmful stuff." Duero Decl., Ex. Q at 2:12-17 (Transcript of Apr. 11, 2025 House Hearing). Contrary to Representative Valdez's representation, HB25-1161 requires the webpage to include information about purported "health impacts" with no mention at all of ventilation. There was no further discussion of the Senate's amendments. Representatives Gonzalez and DeGraaf briefly spoke in opposition to the bill. The

House then voted 40-22 to concur with the Senate Amendments and repass HB25-1161 without further discussion.

### 3. Following Passage, AHAM Has Continuously Sought to Work with Colorado to Address its Concerns about HB25-1161

74.    On April 12, 2025, Jake Cassady emailed Allie Kimmel in the Governor's office to request a meeting to discuss AHAM's concerns with HB25-1161 and the constitutional issues it raises. Cassady Decl. ¶ 12.

75.    On April 14, 2025, Mr. Cassady emailed Mark Silberg, the Energy Policy Advisor to the Governor, to request a meeting, which occurred on April 15. *Id.* ¶ 13.

76.    On April 17, 2025, AHAM emailed Governor Polis to request that he veto House Bill 25-1161. *Id.* ¶ 15.

77.    On April 30, 2025, AHAM sent a Veto Request Follow-up Letter to Governor Polis and Mr. Silberg. *Id.* ¶ 16.

78.    On June 2, 2025, Mr. Cassady emailed Mark Silberg to inform him, "In advance of Friday's deadline for Governor Polis to act on HB25-1161, CEOs at a number of AHAM member companies request an opportunity to discuss with the Governor the major implications and serious concerns with the legislation. Please let me know of any availability." *Id.* ¶ 17.

79.    Governor Polis signed House Bill 25-1161 on June 4, 2025.

80.    On June 23, 2025, the President of the Colorado Retail Council emailed the CDPHE to confirm that they had not yet published the QR code or provided a link to the webpage that HB25-1161 requires Retailers to include on the label starting August 6, and requested assistance in getting clarity so that retailers would have time to coordinate with merchants to meet the labeling

requirement. Rachel Roussel-Diamond from the CDPHE responded that the agency planned to have the link available by the bill effective date. *Id.* ¶ 18.

81.    On July 1, 2025, the Colorado Retail Council responded to Ms. Roussel-Diamond to request a 180-day delay on enforcement of the new law, until January 1, 2026, because it would be impossible for retailers to be in compliance with the law if the website is not published until the bill becomes effective:

> If the Department plans to provide our members with the required website link on the very day the bill becomes effective (August 6th) our retailers will have absolutely no chance to be in compliance with this new law. We must design labels, have them printed in two languages, ship them to our stores, instruct staff on which items should receive a label, apply the labels on the product, etc.

Cassady Decl. ¶ 20.

82.    On July 2, 2025, Ms. Roussel-Diamond responded "our team is actively working to finalize this webpage, and we're on track to publish it by the bill's effective date. That said, the department does not have enforcement authority under this law. . . . which falls under the jurisdiction of the Attorney General's Office. For any requests related to enforcement timelines or identifying covered products, I recommend reaching out to the AGO directly." *Id.*

83.    On July 9, 2025, Jacob Cassady of AHAM emailed Rachel Roussel-Diamond: "Wanted to check on the website/QR code for gas stoves that is required by HB25-1161. My understanding is that by August 6, gas stoves on display for sale must have a sticker with specific language but also a QR code or weblink that connects consumers to a to be determined website. Please let me know if there are any updates on the website/code or if the site is complete." Mr. Cassady did not receive a response. *Id.* ¶ 19.

84.    On July 30, 2025, Kelly Mariotti, CEO of AHAM, sent a letter to representatives with the Colorado Attorney General's Office and the CDPHE, advising of its intention to pursue litigation to challenge HB25-1161, asking for a stay of enforcement, and requesting a meeting. *Id*. ¶ 21. A representative of the Attorney General responded after 5:00 p.m. on Friday August 1, 2025 that "someone from our office will be in touch on Monday[,]" August 4, 2025.

85.    That day, August 4, CDPHE published the website about the purported health impacts of gas-fueled stoves required by C.R.S. Section 25-5-1602(4), with no opportunity for public comment or stakeholder input. The website is titled "Credible, Evidence-Based Information on the Health Impacts of Gas-Fueled Stoves." It lists several serious and potentially fatal adverse health conditions, including "cancers, such as leukemia," under the heading "**Health Impacts from Indoor Air Pollution Associated with Gas Stoves**." Cassady Decl., Ex O. Although it contains a 17-item "bibliography" containing links to various sources, it presents only minority views of the available scientific literature. It includes none of the overwhelming majority of epidemiological studies explaining the absence of statistically-significant associations or causal relationships between gas stoves and adverse health effects. The website also links to "information provided by other state governments for consistency," although none of those other state governments require gas stove retailers and manufacturers to themselves distribute this type of one-sided, misleading information directly to every consumer considering whether to purchase a gas stove.

D.    **HB25-1161'S REQUIRED DISCLOSURES VIOLATE THE FIRST
AMENDMENT.**

A.    **The Disclosure Requirements Compel AHAM Members to Speak the State's
Preferred Message.**

86.    As mentioned above, AHAM's members include manufacturers of a variety of

major and portable home appliances, including well-known home appliance manufacturers

Whirlpool, GE Appliances, BSH Home Appliances and Electrolux.

87.    Some of AHAM's members sell gas stoves in Colorado, both directly to consumers

through their own websites, and to retailers or distributors who then sell the gas stoves to Colorado

residents either online or in person. For example, AHAM members sell gas appliances to retailers

like Home Depot, Lowe's, Menards, Sears, AJ Madison, and Wayfair, as well as to locally owned

and operated retail stores.

88.    For AHAM members who sell gas stoves directly to consumers residing in

Colorado through their websites, HB25-1161 requires that "[b]efore transacting an online sale of

a gas-fueled stove to an address in [Colorado], retailers shall prominently post on the internet

website where the online sale occurs the content of the adhesive label described in [C.R.S. § 25-

5-1602(1)]": **UNDERSTAND THE AIR QUALITY IMPLICATIONS OF HAVING AN**

**INDOOR GAS STOVE**," in bold-faced, black type in English and Spanish with a link or QR-

code to a CDPHE website that describes the health impacts of gas-fueled stoves. C.R.S. § 25-5-

1602(3), (1), (4). Although the bill does not define retailers, this website labeling requirement

presumably applies to manufacturers who directly sell appliances to consumers located in

Colorado. Thus, when HB25-1161 goes into effect, AHAM's members will be forced to

communicate a message with which they disagree, which could change in any manner without

notice at any time, and which they reasonably fear will mislead consumers. AHAM's membership agrees with the science: there is no consensus that cooking with gas has health impacts. But the Warning Label requires them to speak the opposite.

89.    AHAM members have concrete plans to continue offering gas stoves for direct sale to Colorado consumers through their websites and to sell gas stoves to third-party retailers, distributors, or wholesalers that will sell to Colorado consumers, as they have for decades.

**B.    HB25-1161's Disclosure Requirements Violate AHAM Members' First Amendment Rights**

90.    As described above, the law functions through a two-part system. First, the yellow Warning Label on the products warns consumers that they should "**UNDERSTAND THE AIR QUALITY IMPLICATIONS OF HAVING AN INDOOR GAS STOVE**," implying that the "implications" that consumers should try to "understand" are negative health effects. Especially in the context of other product packaging, there is nothing that a yellow label could convey to a consumer but caution—and, indeed, that is the law's purpose. In other words, the Warning Label misleads consumers into believing that gas stoves are dangerous. AHAM and its members firmly disagree with that message.

91.    Second, in addition to the warning label, the law requires the publication of a link or QR code directing consumers to a government website published by the CDPHE that includes further compelled speech. The government website was published just two days before the effective date of HB25-1611. The law does not require that the website be balanced or based on scientific consensus—and it is not. The website lists several serious and potentially fatal adverse health conditions—such as "chronic heart and lunch diseases," "asthma," and "some cancers, such as leukemia"—under the heading "Health Impacts from Indoor Air Pollution Associated with Gas

Stoves." Cassady Decl., Ex O. Yet it *presents only minority views of the available scientific literature*. Although the overwhelming majority of epidemiological studies assessing whether there is any statistically-significant association between gas stoves and adverse health effects have found *none*, the website fails to cite, or even acknowledge, these studies. Equally concerning, the website can be revised at any time without notice or public input. AHAM, consistent with scientific consensus, does not agree that there are "health impacts of gas stoves." The use of this language, particularly in light of the nature and content of the legislative history and recent inaccurate and misleading media articles, makes the website's content objectionable to AHAM and its members. Because there is no scientific consensus, forcing AHAM and its members to propagate and endorse the State's preferred message (no matter how factually or scientifically inaccurate, spurious, or even defamatory) violates their First Amendment rights.

92.     The average consumer is not familiar with statistics, study design, confounding factors, or epidemiology. They cannot analyze the reliability of a scientific study or the value of its purported conclusions. They are unlikely to even be able to recognize who funded the work. Consumers, instead, are likely to take statements on the CDPHE website and news articles at face value. In other words, consumers will view the misleading, selectively chosen materials linked on the CDPHE website as all equally credible. But some studies are indeed more thorough than others, and many studies have limitations that are not immediately obvious. By presenting the studies as "credible" and "evidence-based," but without the full context, the CDPHE-website, which AHAM's members are compelled to disseminate, is highly misleading.

93.    Forcing AHAM members to provide links to a government website effectively forces them to reinforce the message (already implied by the label) that their products are dangerous and associated with adverse health effects, without sound scientific support.

94.    This law thus tramples the First Amendment rights of AHAM members and exposes them to significant potential liability. If AHAM's members fail to include the required label content, they are subject to potential penalties of $20,000 per violation from public enforcement by Defendant Weiser. In addition, AHAM members are subject to potential private enforcement actions that could seek statutory fines of $500 per violation or actual damages (which can be trebled if violation is judged intentional) plus attorney fees and costs.

## FIRST CLAIM FOR RELIEF
**Declaratory Relief and Preliminary and Permanent Injunctive Relief for Violations of the First Amendment to the United States Constitution
(42 U.S.C. § 1983)**

95.    AHAM re-alleges and incorporates by reference all allegations set forth above.

96.    The First Amendment to the U.S. Constitution, applicable to state and local governments through the Fourteenth Amendment's Due Process Clause, protects the right to free speech, including the rights to not speak and to not express views which are not a person's own and with which a person disagrees. "At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence." *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013).

97.    The First Amendment forbids the State from "restrict[ing] expression because of its message, its ideas, its subject matter, or its content." *See Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972). For this reason, the State cannot "compel a person to speak its own preferred

messages," *303 Creative LLC v. Elenis*, 600 U.S. 570, 585-86 (2023), as this "alter[s] the content of their parade."

98.    HB25-1161's disclosure requirements violate the First Amendment, as applied to AHAM and its constituent members, because they are content- and view-point based. They are thus presumptively unconstitutional and, at a minimum, subject to strict scrutiny.

99.    The disclosure requirements prevent AHAM and its members from expressing their preferred message and requiring them to speak the State's preferred message. Specifically, HB25-1161 mandates AHAM and its members to publish and tacitly endorse the State's non-consensus, scientifically controversial, and factually misleading government-mandated message about the purported "health impacts" of gas stoves that is contrary to the view of the World Health Organization, the U.S. Government Accountability Office, and federal agencies responsible for enduring the health and safety of American consumers. AHAM and its members fundamentally disagree with this message because it is neither purely factual nor uncontroversial—there is no scientific consensus that gas stove use causes any health affects—but the labeling requirements force them to speak this message anyway.

100.    Further, by forcing AHAM and its members to endorse a link to a government website—which can change without notice or any public input and link to unlimited third party websites regardless of origin—the labeling requirements *also* force AHAM to speak the messages included on those websites regardless of what they may say initially or over time.

101.    HB25-1161 fails all elements of strict scrutiny because the State cannot prove it is "narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163, 171 (2015) (it is the government's burden to prove compliance with strict scrutiny). The State

cannot prove, as it must, that the purported interest supposedly served by HB25-1161 is a compelling one, or that it remedies any harm, because there is no scientific consensus that indoor gas stoves have health impacts.

102.    HB25-1161 is not subject to intermediate scrutiny because it compels—rather than restricts—speech and, moreover, the speech it compels is not commercial speech. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562 (1980).

103.    And while compelled speech that is purely factual and uncontroversial may pass constitutional muster by a government showing that the speech is reasonably related to a substantial government interest and would not be unduly burdensome, none of that applies here. *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 651 (1985). The labeling requirements are not commercial speech and thus fall outside *Zauderer*. The labeling requirements also fall outside *Zauderer* because they require AHAM to present information in a misleading way. *See CTIA–The Wireless Ass'n v. City of Berkeley, Cal*., 928 F.3d 832, 847 (9th Cir. 2019) ("We recognize, of course, that a statement may be literally true but nonetheless misleading and, in that sense, untrue."). Additionally, the information that the Labeling Requirements require AHAM's members to present is controversial, because a public outcry has arisen due to media misperceptions of studies funded by private interest groups.

104.    In any event, the labeling requirements fail intermediate scrutiny. The Act includes no legislative declaration or findings to clarify the government's purpose. That should be telling enough, because when the government *does* regulate public health, it includes such statements to explain its reasons. Here, however, the Act itself leaves retailers, manufacturers, and the public to guess its purpose.

105.    To the extent that purpose is in protecting consumer health, it cannot be a substantial interest. The Labeling Requirements do not remedy any real harm, because there is no scientific consensus that gas stoves cause one.

106.    And even if the purpose is "transparency," as with strict scrutiny, "transparency" is too broad and nebulous to be a substantial interest. And because the Labeling Requirements do not remedy any real harm, the State cannot prove that its interests are substantial.

107.    There is a bona fide and actual controversy between AHAM (and its constituent members) and Defendant Weiser, because Defendant is charged with enforcing the labeling requirements, and has not expressed any intention not to do so, even though the Requirements violate the First Amendment.

108.    There is also a bona fide and actual controversy between AHAM (and its constituent members) and Defendants Ryan and Lawrence, because Defendants Ryan and Lawrence are charged with developing the very speech AHAM will be compelled to endorse and publish.

109.    In light of the violation of the First Amendment to the United States Constitution, AHAM seeks permanent injunctive relief against enforcement of [the Act]. Uber is suffering daily irreparable harm through compliance with the Act, and the aforementioned Disclosure Requirements specifically, and has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, AHAM respectfully requests that this Court:

A.    Issue a permanent injunction Defendant Weiser and his employees, agents, and successors, from enforcing HB25-1161;

B.      Issue a permanent injunction enjoining Defendants Ryan and Lawrence and their employees, agents, and successors from publishing on the government website mandated by HB25-1161 any content that would mislead consumers;

C.      Enter a judgment under Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 declaring that the Act violates AHAM's right to free speech and free association under the First Amendment to the U.S. Constitution and that it cannot be applied against the Association's constituent members;

D.      Order a speedy hearing under Fed. R. Civ. P. 57 to resolve this case;

E.      Award AHAM costs, including reasonable attorneys' fees under 42 U.S.C. §§ 1983 and 1988; and

F.      Grant such other and further relief as the Court deems just and proper.

Dated: August 5, 2025                         Respectfully submitted,


*s/ Frederick R. Yarger*
Frederick R. Yarger
Andrew M. Unthank
Herman J. Hoying
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone:     303.244.1800
Facsimile:     303.244.1879
Email:     yarger@wtotrial.com
               unthank@wtotrial.com
               hoying@wtotrial.com

Attorneys for Plaintiff Association of Home Appliance Manufacturers