# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-02417-SKC-KAS

ASSOCIATION OF HOME APPLIANCE MANUFACTURERS,

      Plaintiff,

v.

JILL HUNSAKER RYAN, Executive Director of the Colorado Department of Public
Health & Environment (CDPHE), in her official capacity;
JEFF LAWRENCE, Director of the Environmental Health and Sustainability
Division of the CDPHE, in his official capacity; and
PHIL WEISER, Colorado Attorney General, in his official capacity,

      Defendants,

and

PHYSICIANS FOR SOCIAL RESPONSIBILITY COLORADO

      Proposed Defendant-Intervenor.

---

## UNOPPOSED MOTION TO INTERVENE

---

## TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND.....................................................................1

ARGUMENT ........................................................................................................3

I.     PSR Colorado is entitled to intervene as of right ...........................................3

       A.    The Motion to Intervene is timely ........................................................4

       B.    PSR Colorado has an interest in the subject matter of this
             litigation........................................................................................6

             1.    Interests of PSR Colorado ........................................................7

             2.    PSR Colorado was directly involved in the development of
                   HB25-1161 and has a long history of educational and
                   advocacy outreach on the issues addressed by HB25-1161 .......8

             3.    PSR Colorado's interests, and that of its members, in
                   educating the public about the air quality impacts associated
                   with the indoor use of gas cooking stoves are advanced by
                   HB25-1161. ...............................................................................10

       C.    PSR Colorado's interests may be impaired as a result of
             this litigation .......................................................................................11

       D.    PSR Colorado's interests are not adequately represented by the
             State of Colorado ................................................................................12

II.    Alternatively, this Court should grant PSR Colorado
       permissive intervention .....................................................................................14

CONCLUSION....................................................................................................15

CERTIFICATION ...............................................................................................16

## EXHIBIT INDEX

Exhibit A    Colorado House Bill 25-1161 "Concerning requiring the labeling of gas-fueled stoves

Exhibit B    Declaration of Lauren Swain

Exhibit C    Declaration of Harv Teitelbaum

Exhibit D    Declaration of Elizabeth Gillespie

**INTRODUCTION AND BACKGROUND**

In 2025, the Colorado General Assembly passed, and the Colorado Governor signed into law, a first-in-the-nation requirement for a label to be placed on gas powered cooking stoves. *See* Colorado House Bill 25-1161 "Concerning requiring the labeling of gas-fueled stoves" (attached as Exhibit A). The label is relatively restrained, requiring only that retailers place a yellow adhesive label on display models for gas-fueled stoves that bears the following statement in bold-faced, black type that is clearly legible in English and Spanish: "Understand the air quality implications of having an indoor gas stove," along with a QR Code for a State created web-page containing credible, evidence-based information on the health impacts of gas-fueled stoves.  Online retailers are similarly required to post the label on the website where the online sale occurs. These requirements are now contained in C.R.S. § 25-5-1602. Enforcement of these provisions is provided through the Colorado Consumer Protection Act, C.R.S. Article 1 of Title 6. *See* C.R.S. § 25-5-1603.

This labeling requirement furthers a long-held goal of Proposed Defendant-Intervenor Physicians for Social Responsibility Colorado ("PSR Colorado") to better educate the public as to the indoor air quality and potential public health implications associated with the indoor use of gas cooking stoves, particularly without adequate ventilation, in smaller spaces, and by people with pre-existing respiratory conditions or otherwise frail, and thereby protect public health. Notably,

HB25-1161 does not restrict the sale of gas cooking stoves, but only encourages the
consumer public to better understand the air quality implications of their consumer
choices.

However, Plaintiff Association of Home Appliance Manufacturers ("AHAM"),
representing the gas cooking stove manufactures and retailers claim that HB25-
1161 runs afoul of the First Amendment to the U.S. Constitution, applicable to state
and local governments through the Fourteenth Amendment's Due Process Clause.
Compl. ¶¶ 95–106 (Doc. 9). This argument is largely premised on assertions that
the scientific evidence demonstrating that gas cooking stoves emit air pollutants
with potential to affect human health is controversial. *Id.*

PSR Colorado moves to intervene to uphold and defend HB25-1161 and its
labeling requirement. PSR Colorado has worked for years to help educate the public
on the issues addressed by HB25-1161 and has worked to develop and enact the
challenged labeling requirement. The labeling requirement provides important
public health, indoor air quality, and other benefits to PSR Colorado, its public
health-driven mission, and its members. This lawsuit, if successful, will invalidate
HB25-1161, and harm PSR Colorado's organizational mission and the interests of
its members and supporters in ensuring public health.

As described below, PSR Colorado meets all the requirements to intervene as
of right in this case under Federal Rule of Civil Procedure 24(a). Alternatively, PSR

Colorado moves for permissive intervention under Federal Rule of Civil Procedure 24(b).

PSR Colorado files herewith an Answer in Intervention and an Unopposed Motion to Revise Briefing Schedule in Light of Motion to Intervene in this matter, which, if approved by the Court, would allow PSR Colorado to submit a Response to Plaintiff AHAM's pending Motion for Preliminary Injunction in a manner that minimizes overlap and repetition in the argument, or disruption to the proceedings. Specifically, the Unopposed Motion to Revise Briefing Schedule allows, should this Unopposed Motion to Intervene be granted by the Court, PSR Colorado to file a Response to AHAM's Motion for Preliminary Injunction no later than October 6, 2025, six days following the State Defendants' Response. In this staggered fashion, PSR Colorado can ensure the minimization of any overlap in the legal or technical arguments submitted by the State Defendants, benefitting the parties and the Court in the consideration of the issues.

Counsel for PSR Colorado conferred with counsel for all parties in accordance with D.C.COLO.LCivR 7.1(a) and this Court's Standing Order for Civil Cases. Both Plaintiff AHAM and the State Defendants take no position on this Motion.

## ARGUMENT

**I.   PSR Colorado is entitled to intervene as of right.**

A movant is entitled to intervene as of right under Rule 24(a) if (1) the motion to intervene is timely, (2) the applicant has an interest relating to the property or

transaction that is the subject of the litigation, (3) the applicant's interest may as a practical matter be impaired or impeded by the litigation, and (4) the applicant's interest may not be adequately represented by the parties before the court. *Kane Cnty. v. U.S. ("Kane 2024")*, 94 F.4th 1017, 1029–30 (10th Cir. 2024). The Tenth Circuit follows "a liberal approach to intervention and thus favors the granting of motions to intervene." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (internal quotations omitted). PSR Colorado satisfies each of the Rule 24(a) requirements and is entitled to intervene in this case as of right.

### A. The Motion to Intervene is timely.

In the Tenth Circuit, "[t]he timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'" *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (quoting *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984)). However, the "timeliness" requirement focuses on any prejudice to existing parties resulting from the passage of time between the initiation of the litigation and the motion to intervene. *Id.*

In *Utah Ass'n of Counties*, the Tenth Circuit found a motion to intervene to be timely even though filed two and one half years after the complaint was filed, and despite substantial case activity including "document discovery, discovery disputes, and motions by defendants seeking dismissal on jurisdictional grounds." *Id.* at

1250-51. In *W. Energy All.*, the Tenth Circuit agreed with a district court determination that a motion to intervene filed "just over two months after the [Plaintiff] filed the complaint" was timely "[g]iven how early in the lawsuit the groups moved to intervene, and, as a result, the lack of prejudice to the [Plaintiff]." *W. Energy All.*, 877 F.3d at 1164-65.

Here, PSR Colorado's Motion to Intervene is timely. Plaintiff AHAM initiated this case on August 5, 2025 with the filing of an emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 1) along with supporting declarations and a Complaint (Doc. 9). On August 11, 2025, the Court denied Plaintiff's emergency Motion without prejudice to refile (Doc. 24). On August 13, 2025, the Court issued an Order adopting a stipulated briefing schedule and a stipulation by the parties to a temporary stay of enforcement of HB25-1161 until resolution of a re-filed Motion for Preliminary Injunction (Doc. 26). Plaintiff refiled the Motion for Preliminary Injunction on August 19, 2025 (Doc. 27).

PSR Colorado has submitted this Motion to Intervene approximately one month after the filing of the Motion for Preliminary Injunction. This is well within the time period held timely in the other cases discussed *supra*. Further, as discussed herein, the parties have reached an agreement that would make only minor changes to the briefing schedule so as to allow PSR Colorado's reasonable participation in the case, including as to the pending Motion for Preliminary

Injunction, without upsetting the existing schedule – thus minimizing, if not eliminating, any prejudice to the existing parties.

Specifically, filed herewith is an Unopposed Motion to Revise the Briefing Schedule seeking to adjust the briefing schedule for the Motion for Preliminary Injunction should this Court grant this Motion to Intervene. As contemplated by this Unopposed Motion, the State Defendants would file a Response to the Motion for Preliminary Injunction on the currently set deadline of September 30, 2025; Proposed Defendant-Intervenor PSR Colorado would file its Response on October 6, 2025; Plaintiff AHAM's would file its Reply on the existing deadline of October 21, 2025. This proposed stipulation largely preserves the current briefing schedule previously established by the Court while allowing a staggered brief for PSR Colorado to minimize overlap and duplication so as to provide for more efficient briefing and presentation of the issues to the Court and the parties.

Apart from the Motion for Preliminary Injunction, there are no other substantive issues pending before the Court. No discovery has commenced, and no motions or trial dates have been set. As such, PSR Colorado's intervention will not prejudice the existing parties and is thus timely.

    **B.**    **PSR Colorado has an interest in the subject matter of this litigation.**

The second requirement of Rule 24(a) is that an intervenor has an interest related to the property or transaction in dispute. *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010). There is no "rigid formula" or

"mechanical rule" for determining whether an interest is sufficient to justify intervention. *San Juan Cnty. v. U.S.*, 503 F.3d 1163, 1199 (10th Cir. 2007) (en banc).[1]

Instead, courts must apply "practical judgment" to determine "whether the strength of the interest and the potential risk of injury to that interest justify intervention." *Id.*; *see also Kane Cnty v. U.S. ("Kane 2019")*, 928 F.3d 877, 891 (10th Cir. 2019). It is "indisputable" that an applicant's environmental concern is an interest sufficient to meet this standard. *Kane 2024*, 94 F.4th at 1030 (citing *Nat'l Park Serv.*, 604 F.3d at 1198).

### 1.    Interests of PSR Colorado.

PSR Colorado is an independent Colorado nonprofit corporation, acting as a chapter of Physicians for Social Responsibility national (PSR national). PSR Colorado represents over 1500 members. Declaration of Lauren Swain ("Swain

---

[1] An intervenor does not need to independently establish Article III standing if it seeks the same relief as an existing party. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020) (where a government party and supporting intervenor seek the same relief, a court "err[s] by inquiring" into an intervenor's "independent Article III standing."); *Kane 2019*, 928 F.3d at 886–87 (citing *San Juan Cnty.*, 503 F.3d at 1172). An applicant seeking to intervene to defend a challenged law seeks the same relief as the government defendant: "namely, the upholding of the law." *Id.* at 887 n.12 (citing *Pennsylvania v. President United States of Am.*, 888 F.3d 52, 57 n.2 (3d Cir. 2018)). Thus, PSR Colorado need not establish its independent standing because it seeks the same relief as the existing State Defendants. Nevertheless, as this Motion and the declarations included as exhibits demonstrate, PSR Colorado satisfies the Article III standing requirements. *See id.* at 888–89.

Decl.") at ¶ 2 (attached as Exhibit B). The organization believes in prevention and supports policies that protect public health and the environment. PSR Colorado focuses our efforts on educating the public and advocating for policies that reduce emissions of hazardous air pollutants and greenhouse gases, promote healthy air and water quality, and reduce public exposure to hazardous substances. *Id.*

The organization's members are health professionals, concerned scientists, parents, students, and impacted community members. *Id.* With help from volunteers and donors, the organization uses all lawful means in its work to educate decision-makers and the public and to participate in policy proceedings at the local and state levels to help mitigate the harmful health impacts caused by air-borne pollution. *Id.* PSR Colorado works with other partner organizations and nonprofits to advocate for policies that ensure protections for public health, including the right to clean, healthy air quality, both indoors and out. *Id.*

> **2.     PSR Colorado was directly involved in the development of HB25-1161 and has a long history of educational and advocacy outreach on the issues addressed by HB25-1161.**

Courts have recognized that "[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *see also W. Energy All.*, 877 F.3d at 1165–66 (holding that a nonprofit organization's "record of advocacy" for measures being challenged satisfied the interest requirement).

PSR Colorado has a long record of advocacy supporting the policy behind HB25-1161. PSR Colorado and its members were directly involved in the development of the policy that led to HB25-1161. Swain Decl. at ¶ 3; Declaration of Harv Teitelbaum ("Teitelbaum Decl.") at ¶ 4 (attached as Exhibit C). Further, PSR Colorado has a long history of educational and advocacy outreach on the issues addressed by HB25-1161. Swain Decl. at ¶ 4; Teitelbaum Decl. at ¶ 4. These efforts include the production of written and video educational materials to provide the public with timely information as to the potential health impacts associated with the indoor use of gas stoves. Swain Decl. at ¶ 3; Teitelbaum Decl. at ¶ 4.

The risks of indoor use of gas stoves include public health impacts resulting from emission of air pollution contaminants that do not occur with electric stoves, and which are harmful to human health by reducing lung function and exacerbating respiratory disease symptoms. Teitelbaum Decl. at ¶ 5; Declaration of Elizabeth Gillespie, MD MPH ("Gillespie Decl.") at ¶ 5 (attached as Exhibit D). PSR Colorado has also participated in state rulemakings and policy development proceedings, including submitting written comments and providing testimony, aimed at reducing public exposure to air-borne contaminants and advancing the organization's public health and clean air goals. Swain Decl. at ¶ 4.

Given its long-term advocacy and public education efforts on behalf of HB25-1161, including helping to develop the policy behind the new law and in furthering public education and protection of public health from air pollution impacts, such as

9

that from the indoor use of gas stoves, PSR Colorado has a sufficient interest in this litigation to intervene as of right.

> **3.** **PSR Colorado's interests, and that of its members, in educating the public about the air quality impacts associated with the indoor use of gas cooking stoves are advanced by HB25-1161.**

HB25-1161 furthers the interest of PSR Colorado and its members by helping to educate the public as to the air quality issues associated with the use of indoor gas-stoves, thereby reducing air pollution, and benefiting Coloradans that suffer from respiratory illness. Gillespie Decl. at ¶ 6. PSR Colorado members include physicians that treat Coloradans suffering from respiratory disease. *Id*. at ¶ 4. The public education and public health policies that underpin HB25-1161's labeling requirement furthers the organizational interests of PSR Colorado and aids in the efforts of these PSR Colorado physician-members to educate, inform, and ultimately protect vulnerable Coloradans from the health risks associated with the indoor use of gas stoves. Gillespie Decl. at ¶¶ 5-6.

The role of HB25-1161 in in furthering these organizational priorities provides a sufficient interest for intervention. *See, e.g., Kane 2024*, 94 F.4th at 1030; *Nat'l Park Serv.*, 604 F.3d at 1200–01; *Utah Ass'n of Counties*, 255 F.3d at 1252. Additionally, it is "'indisputable' that a prospective intervenor's environmental concern is a legally protectable interest" for intervention purposes. *Nat'l Park Serv.*, 604 F.3d at 1198 (quoting *San Juan Cnty.*, 503 F.3d at 1199).

HB25-1161 advances PSR Colorado's organization mission and the interests of its members by protecting the public health and environment and educating the public as to the air quality issues associated with the indoor use of gas stoves. These health and environmental interests of PSR Colorado and its members demonstrate a sufficient interest for intervention in this case.

### C. PSR Colorado's interests may be impaired as a result of this litigation.

The third requirement under Rule 24(a) for intervention as of right is that the litigation "may, as a practical matter, impair or impede the movant's interest." *Nat'l Park Serv.*, 604 F.3d at 1198. Meeting this "impairment" requirement presents only a "minimal burden" to prospective intervenors. *Id.* at 1199. A movant for intervention "must show <u>only</u> that impairment of its substantial legal interest is <u>possible</u> if intervention is denied." *Id.* (emphases added).

Because Plaintiff asks this Court to invalidate HB25-1161 and enjoin implementation and enforcement of the law, this case undoubtedly threatens to impair the PSR Colorado's interests. Compl. ¶ 109 and pp. 35-36 (Prayer for Relief) (Doc. 9). Litigation seeking to invalidate a statute clearly "may, as a practical matter, impair or impede the movant's interest" in the continued operation and validity of that statute. *See Nat'l Park Serv.*, 604 F.3d at 1198; *Coal. of Arizona/New Mexico Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996) ("[T]he *stare decisis* effect of the district court's judgment is sufficient impairment for intervention…").

If the HB25-116 is struck down, PSR Colorado and its members will lose the
health, educational, and environmental benefits described above. *See supra* at 7–
10. This step backwards will likely impair PSR Colorado's mission and its efforts to
ensure the education and protection of the public regarding the risks of the indoor
use of gas stoves. Swain Decl. at ¶6; Teitelbaum Decl. at ¶¶ 7-8; Gillespie Decl. at
¶¶ 7-8. This possibility of impairment is sufficient for intervention. *See e.g., Nat'l
Park Serv.*, 604 F.3d at 1201; *Utah Ass'n of Counties*, 255 F.3d at 1253–54.

### D.     PSR Colorado's interests are not adequately represented by the State of Colorado.

The final requirement of Rule 24(a) for intervention as of right is that the
movant's interests may not be adequately represented by existing parties. This
"inadequate representation" requirement also imposes a "minimal burden,"
particularly when parties seek to intervene in support of the government. *See, e.g.,
Kane 2024*, 94 F.4th at 1030 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528,
538 n.10 (1972)); *Nat'l Park Serv.*, 604 F.3d at 1200. A prospective intervenor "must
show only the possibility that representation may be inadequate." *Nat'l Park Serv.*,
604 F.3d at 1200. The fact that an applicant seeks the same form of relief as an
existing party does not render their interests identical. *Kane 2024*, 94 F.4th at 1032
(citing *Kane 2019*, 928 F.3d at 887 n.13).

In most circumstances "the government is obligated to consider a broad
spectrum of views, many of which may conflict with the particular interest of the
would-be intervenor." *Utah Ass'n of Counties*, 255 F.3d at 1256. As a result, the

Tenth Circuit "ha[s] repeatedly recognized that it is 'on its face impossible' for a government agency to carry the task of protecting the public's interests and the private interests of a prospective intervenor." *Nat'l Park Serv.*, 604 F.3d at 1200 (quoting *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002)). "The burden of showing inadequacy of representation is satisfied," according to the court, "[w]here a government agency may be placed in the position of defending both public and private interests." *Id.*

The State Defendants cannot adequately represent the interests of PSR Colorado. PSR Colorado is focused on advancing the public health and educational benefits of HB25-1161. *See supra* at 7–10; Swain Decl. at ¶ 7. By contrast, the State represents a broad spectrum of views—including private economic and business interests—that may differ substantially from those of PSR Colorado.

Further, it is foreseeable that the State's strategic litigation decisions may place a lower priority than PSR Colorado will on than on its other economic or business interests. The fact that the State has already agreed to stay enforcement and implementation of HB25-1161 during the pendency of the briefing on Plaintiff's Motion for Preliminary Injunction demonstrates that the State's representation "may be inadequate" vis-à-vis PSR Colorado's interests.

In short, the Court cannot assume that the State's approach to defending HB25-1161 will adequately represent PSR Colorado "merely because both entities occupy the same posture in the litigation." *Utah Ass'n of Counties*, 255 F.3d at 1256.

The State represents a much broader range of interests, and it is "on its face impossible" for the State to adequately represent PSR Colorado. Thus, PSR Colorado has met the "minimal burden" of the "inadequate representation" requirement. *See Nat'l Park Serv.*, 604 F.3d at 1200.

## II.    Alternatively, this Court should grant PSR Colorado permissive intervention.

In addition to qualifying for intervention as of right, PSR Colorado satisfies the requirements for permissive intervention under Rule 24(b). Permissive intervention is appropriate where an applicant demonstrates: (1) it has a claim or defense that shares a common question of law or fact with the main action; (2) the intervention will not cause undue delay or prejudice; and (3) the motion to intervene is timely. Fed. R. Civ. P. 24(b).

Here, PSR Colorado intends to assert claims and defenses in common with those at the center of this action: the question of whether the First Amendment precludes the labeling requirement embodied in HB25-1161. In addition, PSR Colorado may raise additional arguments the State may forego. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110–11 (9th Cir. 2002) (nonprofit advocacy groups met test for permissive intervention where they asserted defenses "directly responsive" to plaintiffs' complaint).

Moreover, this Motion to Intervene is timely and allowing PSR Colorado to intervene in this case will not cause undue delay or prejudice to the existing parties. *See supra* at 7. To the contrary, PSR Colorado may assist the Court in resolving this

case by providing additional perspective on the air, health, and educational benefits of the labeling requirement embodied in HB25-1161, as well as the legal issues related to the First Amendment. *See Utahns*, 295 F.3d at 1116 (recognizing that "experience with" and "contribut[ions] to" agency actions challenged in litigation as supporting intervention); *accord Utah Ass'n of Counties*, 255 F.3d at 1255. Accordingly, even if the Court does not grant intervention as of right, permissive intervention is warranted here.

## CONCLUSION

For the foregoing reasons, the Court should grant PSR Colorado's intervention as a matter of right under Rule 24(a). Alternatively, permissive intervention should be allowed under Rule 24(b). In addition, PSR Colorado requests that, if the Court grants this Motion to Intervene, the Court also grant PSR Colorado's Unopposed Motion to Revise the Briefing Schedule filed herewith.

Respectfully submitted this 24th day of September, 2025.

*/s/ Jeffrey C. Parsons*
Jeffrey C. Parsons
Parsons Law Office
2205 W. 136th Ave., Ste. 106-311
Broomfield, CO 80023
jeff@parsonslawoffice.com
720-203-2871

*Counsel for Proposed Defendant-Intervenor*

15

## CERTIFICATION

Undersigned counsel certifies that no portion of this Motion to Intervene was drafted by AI.

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2025, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to all current parties to the case.

*/s/ Jeffrey C. Parsons*