#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-02417-SKC-KAS

ASSOCIATION OF HOME APPLIANCE MANUFACTURERS,

    Plaintiff,

v.

JILL HUNSAKER RYAN, Executive Director of the Colorado Department of Public
 Health & Environment (CDPHE), in her official capacity;
JEFF LAWRENCE, Director of the Environmental Health and Sustainability
 Division of the CDPHE, in his official capacity; and
PHIL WEISER, Colorado Attorney General, in his official capacity,

    Defendants.

#### REPLY IN SUPPORT OF
#### MOTION TO DISMISS CDPHE DEFENDANTS (DKT. 31)

    In its Response to the CDPHE Defendants' Motion to Dismiss, Dkt. 34, (Sept. 17, 2025), AHAM cites no authority for the bold proclamation that the Court's equitable authority extends to copy-editing the content of a government website. *See id.* at 13-14 (suggesting an injunction of the website and its content). To the contrary, and as AHAM concedes, the Court's authority is limited to enjoining "specified unlawful actions." *Id.* at 13.

    Even if the Labeling Requirement in subsections (1) and (3) of Section 25-5-1602 violates the First Amendment rights of AHAM's members (which it does not), enjoining that unlawfulness is limited to enjoining enforcement of the requirement that AHAM's members include a label on new gas stoves offered for sale in

Colorado. But the Labeling Requirement is distinct from the obligation that CDPHE publish a public government website with "credible, evidence-based information on the health impacts of gas-fueled stoves," located in subsection (4) of Section 25-5-1602. CDPHE's separate duty, to produce and publish government speech, is independent from both the Labeling Requirement and its enforcement, the specific statutory provisions and anticipated state action challenged by AHAM.

It is clear from its pleadings that AHAM wants an injunction against "the challenged law," Section 25-5-1602. Dkt. 34 at 5; Mot. for Prelim. Inj. (Dkt. 27) at 30. But the Eleventh Amendment flatly prohibits that relief. *See, e.g.*, *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021) ("under traditional equitable principles, no court may . . . enjoin challenged laws themselves") (cleaned up). In this forum, consistent with the Eleventh Amendment, the most a plaintiff may obtain is an injunction prohibiting a defendant with enforcement authority from enforcing an unlawful requirement. *See generally Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 288 (1997) (O'Connor, J., concurring) (recognizing that the *Ex parte Young* exception relies on the theory that the state cannot cloak an official's future unlawful actions in sovereign immunity). Here, that means AHAM is entitled to, at most, an injunction prohibiting the Attorney General from enforcing Section 25-5-1602's compelled speech requirement against its members in the future.

Because the CDPHE Defendants have no role in enforcing—and in fact play no role in giving effect to—the Labeling Requirement, they are entitled to dismissal.[1]

I.  **CDPHE's obligation under Section 25-5-1602(4) is to publish a website with government speech, which is separate and distinct from the Labeling Requirement.**

Throughout the Response, AHAM repeatedly characterizes CDPHE as creating, publishing, and maintaining "compelled speech" under Section 25-5-1602. Dkt. 34 at 6, 7, 10 n.6. But CDPHE's only obligation under the law is plain from the language of the statute; it must "establish a page on the department's public website with credible, evidence-based information on the health impacts of gas-fueled stoves." § 25-5-1602(4). The website, which is hosted at "Colorado.gov" and clearly branded as the state's speech, is plainly government speech. *See* Dkt. 31 at 9.

In asserting that the website is not "pure government speech," AHAM contends that CDPHE would not have created the website absent the enactment of Section 25-5-1602(4). Dkt. 34 at 12. But AHAM offers no case law or authority that government speech must be independent of any statutory authority or obligation to qualify as government speech. And AHAM fails to engage in any actual legal analysis as to whether the website meets the requirements of government speech

---

[1] AHAM speculates that the Motion to Dismiss is "aimed at avoiding future discovery of CDPHE officials." Dkt. 34 at 2 n.2. To the contrary, even if those officials are dismissed, such discovery is presumably available to AHAM under the auspices of Fed. R. Civ. P. 45, assuming it satisfies that Rule.

3

under *Shurtleff v. City of Boston*, 596 U.S. 243, 252 (2022). When such requirements are considered, it's clear the website is government speech not subject to First Amendment scrutiny. Dkt. 31 at 9-10. That it was created in response to a statutory obligation is irrelevant.

Rather than directly addressing *Shurtleff* and the government speech status of the website, AHAM shifts focus to claiming its members are being unconstitutionally required to disseminate the website to potential consumers. Dkt. 34 at 13. But in doing so, AHAM underscores that it is the *label* that is compelled speech, not the content of the separate governmental website. And even though the website is to be linked to on the label, the alleged unconstitutionality flows at all times from the label, not the website in isolation.

The obligation that CDPHE publish the website—found in subsection (4) of the law—exists independent of the Labeling Requirement in subsections (1) and (3). § 25-5-1602. It is these latter provisions that require retailers of new gas stoves to include a label on their products or web sale pages. CDPHE has no involvement in these provisions, nor in enforcement actions against AHAM members that fail to follow the provisions.

II.     **The Court's jurisdiction in this action is limited to enjoining enforcement of the Labeling Requirement.**

In this action, AHAM challenges the obligation to include a label on stoves and webpages, with text set by state statute and a link to the state's website. Dkt. 9 ¶ 3. To the extent AHAM members are being unconstitutionally compelled to speak,

4

the most this Court can do is lift the compulsion. This is done only by enjoining enforcement of the Labeling Requirement—not through removing or editing the content of the CDPHE website.

Vitally, if one of AHAM's members elects not to include that label or the website link, the CDPHE Defendants are not involved with, have no connection with, and do not assist in giving effect to, the enforcement of that requirement. They likely will not even be aware of noncompliance and any subsequent enforcement actions. That alone makes them improper Defendants under *Ex parte Young*. *See generally Peterson v. Martinez*, 707 F.3d 1197, 1206 (10th Cir. 2013); *see also Garcia v. Metro. State Univ. of Denver*, No. 19-cv-02261-RBJ, 2020 WL 886219, at \*7 (D. Colo. Feb. 24, 2020) ("[T]he official must have a connection to the unconstitutional act or conduct in question.").

To the extent AHAM contends its members will be injured by the website itself even if the Attorney General is enjoined from enforcing the Labeling Requirement, *see* Dkt. 34 at 14 (asserting that "the compelled-speech provisions of [the law] will remain in effect even if the Attorney General is enjoined from enforcing them"), that is irrelevant to the legal authority for AHAM's claim here. If it is the website AHAM is concerned about, it could have sued in state court in an attempt to challenge whether CDPHE's website complies with the statutory standard of "credible, evidence-based information on the health impacts of gas-fueled stoves," and where the Eleventh Amendment does not stand as a bar against

5

unconsented suits against sovereign states. Instead, AHAM elected to sue in this forum, where the Court's authority is circumscribed.

And if AHAM's concern is that other authorities besides the Attorney General could enforce the Labeling Requirement, this does not render the CDPHE's website unlawful and subject to an injunction by this Court. Of course, an injunction prohibiting the Attorney General from enforcing the Labeling Requirement will not necessarily remove the specter of future lawsuits against members that elect not to include the label. *See, e.g.*, § 6-1-103, C.R.S. (giving district attorneys concurrent enforcement authority). But this fact exists irrespective of the website. Pre-enforcement relief is the exception, not the rule. "[M]any federal constitutional rights are as a practical matter asserted typically as defenses to state-law claims, not in federal pre-enforcement cases[.]" *Whole Woman's Health*, 595 U.S. at 49-50. Even if AHAM succeeds in this lawsuit, its members will face the choice of whether to include a label, or risk an enforcement action brought by someone other than the Attorney General.

The existence of that choice does not affect the central question posed by the CDPHE Defendants' Motion to Dismiss: whether those Defendants have authority to bring an enforcement action against members that choose not to include that label. They do not, and in fact have disclaimed authority to do so. Dkt. 9 ¶ 82.

6

### III. AHAM fails to show a nexus between the CDPHE Defendants and enforcement of the Labeling Requirement.

In the Response, AHAM offers a broad formulation of the *Ex parte Young* exception, claiming that *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 & n.15 (10th Cir. 2007), provides that "officials who *merely* 'assist in giving effect to' a state law" fall within the exception. Dkt. 34 at 6 (emphasis added).[2] But this reading of *Wagnon* incorrectly expands the *Ex parte Young* exception. As subsequently explained by the Tenth Circuit, even if an official lacks specific enforcement authority, there still must be "a nexus between the defendant and '*enforcement*' of the challenged statute." *Peterson*, 707 F.3d at 1206 (quoting *Ex parte Young*, 209 U.S. at 157, and adding emphasis). Indeed, *Peterson* cites *Wagnon* as holding "the defendant must have 'a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty." *Id.* (quoting *Wagnon*, 476 F.3d at 828).

The facts in *Wagnon* make clear that an official's mere involvement in a statutory scheme, without more, is insufficient to trigger *Ex parte Young*. There, an Indian Nation challenged a "policy decision," 476 F.3d at 821, whereby the state of Kansas did not recognize motor vehicle registrations and titles issued by the Nation, *id.* at 820. Of the named defendants, one "enforce[d] traffic and other laws"

---

[2] *Wagnon* chose this language of "to give effect" as the dictionary definition of "enforce," 476 F.3d at 828 n.15, making clear that the focus is always on enforcement.

7

of the state of Kansas, while the other two were the ones who made the "policy decision" to "deny the validity of the Tribe's registrations." *Id.* at 828. On these facts, the officials "assist[ed] in giving effect to the law," because they were the ones who developed, enforced, and could change, the challenged policy decision. *Id.*

CDPHE plays no similar role here. It does not oversee or "manage[]" the labels, and had no role in the policy decision to compel speech from AHAM's members.[3] AHAM does not appear to dispute these facts. Moreover, CDPHE has disclaimed any enforcement authority under the law. Dkt. 9 ¶ 82. Thus, unlike the defendants in *Wagnon*, the CDPHE Defendants lack the *Ex parte Young* requirement of "'some connection' to the enforcement of the allegedly defective act." *Wagnon*, 476 F.3d at 828.

CDPHE's role in the law is more akin to the executive director of the Department of Public Safety in *Peterson*, 707 F.3d at 1201. There, a non-resident challenged the constitutionality of a state law allowing sheriffs to issue concealed handgun licenses to state residents only. *Id.* The Tenth Circuit found that the claims against the executive director did not fall within the *Ex parte Young* exception "[b]ecause sheriffs are responsible for administering the state's CHL regime—not the executive director[.]" *Id.* Moreover, the Tenth Circuit rejected the

---

[3] It is also noteworthy that, earlier in this case, AHAM agreed to a modified briefing schedule based on an assurance that the Attorney General would not initiate enforcement actions during a specified period of time. AHAM did not require any assurances from the CDPHE Defendants.

8

argument that the executive director's maintenance of "a database of states with which Colorado maintains reciprocity" was sufficient to create a nexus with enforcement of the challenged action. *Id.* at 1206. This role fell short because it was not "a particular duty to 'enforce' the statute in question," held by the executive director. *See id.* (quoting *Wagnon*, 476 F.3d at 828).

Similarly, the CDPHE Defendants lack "a particular duty to 'enforce'" the challenged statute. Although they have an obligation under the statute to establish a webpage, like the executive director in *Peterson*, this ministerial obligation is not related at all to enforcement of the statute. § 25-5-1602(4). Enforcement clearly and discretely rests with the Attorney General, local district attorneys, and private parties under the CCPA. § 25-5-1603.

## IV. In conceding that CDPHE could publish a website "independent of the labeling requirements," AHAM highlights the absence of unlawful activity from CDPHE.

Finally, AHAM's own pleading makes clear that it is the Labeling Requirement, not the website, that gives rise to AHAM's First Amendment claim. AHAM concedes that the injunction it seeks "would not prohibit CDPHE from engaging in pure government speech on this topic—e.g., publishing a website independent *of the labeling requirements* of HB25-1161." Dkt. 34 at 14 (emphasis added). But that is what the website is. It is a publicly available webpage, located on CDPHE's website, with information and links chosen by CDPHE. Its only nexus to AHAM's claims is through "the labeling requirements of HB25-1161." *Id.*

9

Although AHAM can seek an injunction prohibiting enforcement *of those requirements* in this forum, and its members may raise the First Amendment as a defense *to those requirements* in an enforcement action, it is in all cases the Labeling Requirement that implicates AHAM's members' First Amendment rights. And CDPHE has no role in enforcing, or giving effect to, that requirement.

## CONCLUSION

The CDPHE Defendants should be dismissed.

Respectfully submitted this 1st day of October, 2025.

        PHILIP J. WEISER
        Attorney General

        *s/* Katherine M. Field
        **Michael Landis**
        First Assistant Attorney General
        Water Quality Unit | Natural Resources & Environment Section
        **Peter G. Baumann**
        Senior Assistant Attorney General
        Public Officials Unit | State Services Section
        **Katherine M. Field**
        Senior Assistant Attorney General
        Consumer Fraud Unit | Consumer Protection Section
        **Pawan Nelson**
        Senior Assistant Attorney General
        Cross-Unit Litigation Team | Civil Litigation & Employment Section
        Colorado Department of Law
        Ralph L. Carr Colorado Judicial Center
        1300 Broadway
        Denver, CO 80203
        Telephone: 720.508.6000
        michael.landis@coag.gov

peter.baumann@coag.gov
kate.field@coag.gov
pawan.nelson@coag.gov

*Attorneys for Defendants*
\*Counsel of Record

## ARTIFICIAL INTELLIGENCE CERTIFICATION

Undersigned counsel certifies that no portion of this filing was drafted by Artificial Intelligence.

11