**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-02417-SKC-KAS

ASSOCIATION OF HOME APPLIANCE MANUFACTURERS,

    Plaintiff,

v.

JILL HUNSAKER RYAN, Executive Director of the Colorado Department of Public Health & Environment (CDPHE), in her official capacity;
JEFF LAWRENCE, Director of the Environmental Health and Sustainability Division of the CDPHE, in his official capacity; and
PHIL WEISER, Colorado Attorney General, in his official capacity,

    Defendants,

and

PHYSICIANS FOR SOCIAL RESPONSIBILITY COLORADO

    Proposed Defendant-Intervenor.

---

**DEFENDANT-INTERVENOR'S RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION**

---

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT .........................................................................................................3

I.   The First Amendment does not apply to the government's speech. ..3

II.  The website's contents a) that gas stoves emit specific pollutants that electric stoves do not, and b) that exposure to these pollutants, particularly if not mitigated through ventilation or otherwise, raise the risk of negative health outcomes, are not controversial. ...........................................................................................5

III. AHAM's assertion that the statute is not supported by a public health interest is incorrect. ..........................................................................9

IV.  AHAM's arguments for strict scrutiny are unsupportable. ................10

V.   Even if intermediate scrutiny is applied, HB25-1161's labeling requirement is readily constitutional. ....................................................12

VI.  The balance of equities weighs against a preliminary injunction. ...14

CONCLUSION ..................................................................................................15

# EXHIBIT INDEX

Exhibit A   Declaration of Dr. Michael Johnson, PhD

Exhibit B   Declaration of Dr. Jennifer Peel, PhD, MPH

ii

# TABLE OF AUTHORITIES

**CASES**

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,*
447 U.S. 557 (1980) ............................................................................................... *passim*

*Cooksey v. Futrell,*
2012 WL 3257811 (W.D.N.C. 2012) ........................................................................... 15

*Dobbs v. Jackson Women's Health Org.,*
597 U.S. 215 (2022) ...................................................................................................... 10

*Doe v. Kerry,*
2016 WL 5339804 (N.D. Cal. 2016) .............................................................................. 4

*Free Speech Coal., Inc. v. Paxton,*
95 F.4th 263 (5th Cir. 2024) ........................................................................................... 6

*Hobby Lobby Stores, Inc. v. Sebelius,*
723 F.3d 1114 (10th Cir. 2013) ............................................................................... 9, 12

*Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston, Inc.,*
515 U.S. 557 (1994) ........................................................................................................ 4

*Mainstream Mktg. Servs. v. FTC,*
358 F.3d 1228 (10th Cir. 2004) ...................................................................... 12, 13, 14

*Miami Herald Publishing Co. v. Tornillo,*
418 U.S. 241 (1974) ................................................................................................... 4, 5

*Nat'l Ass'n of Wheat Growers v. Bonta* ("Wheat Growers"),
85 F.4th 1263 (9th Cir. 2023) ........................................................................................ 6

*Nat'l Inst. of Family & Life Advocs. v. Becerra,*
585 U.S. 755 (2018) ........................................................................................................ 6

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n,*
475 U.S. 1 (1986) ............................................................................................................ 6

*PhRMA v. Stolf,*
2025 WL 2448851 (9th Cir. Aug. 26, 2025) ............................................................... 11

*PruneYard Shopping Center v. Robins,*
447 U.S. 74 (1980) ..................................................................................................... 4, 5

*Regan v. Wald*,
468 U.S. 222 (1984) .................................................................................................. 10

*Riley v. North Carolina Federation of the Blind*,
487 U.S. 781 (1988) .................................................................................................... 4

*Rumsfield v. FAIR*,
547 U.S. 47 (2006) .................................................................................................. 4, 5

*Schrier v. Univ. of Colo.*,
427 F.3d 1253 (10th Cir. 2005) ................................................................................ 14

*Semler v. Or. State Bd. of Dental Exam'rs*,
294 U.S. 608 (1935) .............................................................................................. 9, 12

*United States v. Edge Broad. Co.*,
509 U.S. 418 (1993) .................................................................................................. 14

*Va. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
425 U.S. 746 (1976) .................................................................................................... 4

*United States v. Wenger*,
427 F.3d 840 (10th Cir. 2005) .................................................................................. 12

*West Virginia Board of Education v. Barnette*,
319 U.S. 624 (1943) .................................................................................................. 4, 5

*Wooley v. Maynard*,
430 U.S. 705 (1977) .................................................................................................. 4, 5

*Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*,
471 U.S. 626 (1985) ........................................................................................... *passim*

**INTRODUCTION**

Although doctors and public health officials have long taken measures to address the adverse effects of exposure to ambient air pollution, i.e., emissions of harmful substances by cars and industrial sources, recent years have seen increasing attention to issues of *indoor* air quality. This concern is well-founded. People spend the vast majority of their time indoors; those most vulnerable to respiratory ailments—children, the elderly, people with existing health impairments—even more so; and a robust body of data establishes that seriously harmful pollutants are present in homes at levels that exceed those triggering concern under ambient air pollution regulations.

Gas stoves, in particular, have been one area of focus, because (1) the combustion process undeniably releases substances like carbon monoxide, benzene, formaldehyde, particulate matter, and NOx that are well known to threaten health and (2) equipment that can prevent pollutants from accumulating – ventilation – is unavailable in many people's residences or is not properly operated.

In response to these substantial public health concerns, the Colorado General Assembly enacted HB25-1161, taking a decidedly "light touch" approach. Rather than restrict the use of gas stoves or add to the various warnings that sellers and manufacturers already provide, the law directs CDPHE to develop a webpage providing "credible, evidence-based information" about these air quality issues and requires those selling gas stoves (either in stores or online) to provide would-be

1

buyers with a link to the website, as part of a label inviting consumers to "understand the implications of having an indoor gas stove." The State website, consistent with legislative instruction, advises, with citations to relevant reports and publications, that (1) indoor air pollution is a problem; (2) gas stoves emit various substances of known concern; (3) potential health risks depend on numerous factors; and (4) proper ventilation is important to avoiding such risks.

Plaintiff Association of Home Appliance Manufacturers ("AHAM") asks the Court to enjoin enforcement and implementation of HB25-1161 as violative of its members' Free Speech rights. Among other things, AHAM insists that (1) because supporters of the law are also concerned about greenhouse gas emissions, the labeling requirement should be strictly scrutinized as if it made AHAM an unwilling participant in the political debate over climate change and (2) the State's website so misrepresents the scientific consensus about health risks associated with gas stove use that the usual First Amendment test for analyzing required commercial disclosures, from *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio* 471 U.S. 626 (1985), doesn't apply.

The former claim, as the State shows and as discussed herein, is without basis. As for the proper test, it is not clear that the First Amendment is even implicated. The First Amendment does not police State speech, and even the QR code and description are not clearly private speech. Remarkably, AHAM's brief entirely avoids facing what the website actually says.

2

AHAM is simply wrong that the actual website is misleading – because it does not claim or omit what AHAM *assumes* it does: It *does* addresses ventilation and it *doesn't* claim broad causation of disease. What it does actually say – that there are distinct pollutant emissions and attendant risks to cooking with gas stoves – is both factual and uncontroversial, contrary to the impression AHAM declarant's doubt-sowing assertions seek to convey. In any case, AHAM does not attempt to show (and could not) that the modest label requirement fails the appropriate *Zauderer* mode of scrutiny.

But even if the very permissive *Zauderer* test *were* unavailable, AHAM would still be wrong that *strict* scrutiny is warranted. Rather, Colorado's label requirement would be subject to, and readily withstand, review under *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557 (1980). Because intermediate scrutiny applies even to content-based prohibitions on commercial speech, it would be highly anomalous to hold mere disclosures – which provide the public with the Government's information but *do not* prevent the private business from expressing its own views – to higher scrutiny than that.

## ARGUMENT

### I. The First Amendment does not apply to the government's speech.

As an initial matter, it is far from clear that HB25-1161 warrants *any* First Amendment scrutiny, let alone intermediate scrutiny – and surely not *strict* scrutiny. To be sure, the Supreme Court has recognized that Freedom of Speech can

3

be abridged both by laws that compel speech and those which forbid it. *See West Virginia Board of Education v. Barnette*, 319 U.S. 624 (1943); *Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 258 (1974); *Wooley v. Maynard*, 430 U.S. 705 (1977); *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston, Inc.,* 515 U.S. 557 (1994).

But not every law that requires a regulated party to disclose information triggers *any* First Amendment scrutiny. Indeed, the Court is accepting of certain compelled commercial speech on the ground that the basis for constitutional *protection* – the public's interest in receiving truthful information (*see Va. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 746 (1976)) – is *advanced* through disclosure. *See Zauderer*, 471 U.S. at 651. The Court has also emphasized that the Amendment's strictures do not apply to speech that is the Government's, rather than a private party's. *See Rumsfield v. FAIR*, 547 U.S. 47 (2006); *PruneYard Shopping Center v. Robins,* 447 U.S. 74 (1980); *see also Riley v. North Carolina Federation of the Blind*, 487 U.S. 781, 800 (1988) (drawing sharp distinction between laws requiring charitable solicitors themselves to utter disclosures, and State publication of the same information); cf. *Doe v. Kerry*, 2016 WL 5339804, at *18 (N.D. Cal. 2016) (sex offender designation on passport was government speech, not compelled speech of holder).

The law challenged here is worlds removed from those in the Supreme Court's landmark "compelled speech" cases. Unlike measures invalidated in

*Barnette* and *Maynard*, HB25-1161 does not require gas-stove sellers to make government-compelled affirmations of belief; the requirement does not meaningfully interfere with their ability to express their own views on any subject, be it public health or anything else; nor, unlike *Miami Herald*, does the law attach a heavy burden – or any burden – to their speaking out. And it bears a strong resemblance to ones where the Supreme Court has held beyond First Amendment concern.

Thus, in *FAIR*, the Court unanimously turned aside the Free Speech claim of law schools who disapproved of the discriminatory views of military recruiters the challenged federal law required them to welcome on campus. The Court noted that the law did require the schools assist recruiters by sending out emails alerting students, but explained that compelling a law school to send an email "is simply not the same as forcing a student to pledge allegiance, or forcing a Jehovah's Witness to display the motto 'Live Free or Die,' and it trivializes the freedom protected in *Barnette* and *Wooley* to suggest that it is." 547 U.S. at 62. As in *FAIR* here there is "little likelihood that [Colorado's] views … would be identified with the sellers]," who are "free to disassociate [themselves] from" the State's message, 547 U.S. at 65 (quoting *PruneYard*, 447 U.S. at 88).

**II.  The website's contents a) that gas stoves emit specific pollutants that electric stoves do not, and b) that exposure to these pollutants, particularly if not mitigated through ventilation or otherwise, raise the risk of negative health outcomes, are not controversial.**

To the extent the labeling requirement is understood to require AHAM to "speak" the contents of the website, it is subject to *Zauderer* scrutiny because the

5

statements are (1) factual, and (2) uncontroversial. State Defendants appropriately detail that the language of HB25-1161 is purely factual and effectively distinguish AHAM's mistaken reliance on *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1276 (9th Cir. 2023). State Defs' Opp. at 22-24.

The remaining question under the *Zauderer* standard is whether the underlying statements are uncontroversial, whether their truth "is not subject to good-faith scientific or evidentiary dispute [or] . . . an integral part of a live, contentious political or moral debate." State Defs' Opp. at 24 quoting *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 281-82 (5th Cir. 2024) (citing *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n*, 475 U.S. 1, 8-9 (1986) and *Nat'l Inst. of Family & Life Advocs. v. Becerra*, 585 U.S. 755, 769 (2018)).

AHAM asserts that the label requirement is controversial based on the testimony of Dr. Stacey Benson. Mot. at 25. Specifically, AHAM asserts that the website implies that gas stoves "cause" health impacts. Mot. at 4; Benson Decl. (Doc. 27-3) ¶¶ 60-70. As State Defendants highlight, AHAM attacks "causation" assertions that don't exist, as "the website simply states 'there is evidence' that cooking with gas can release various indoor air pollutants, and that those pollutants 'can build up to levels that may affect people's health if the space is not properly ventilated.'" State Def. Opp., at 23-24 quoting Doc. 27-26.

In any case, these uncontroversial scientific conclusions are substantiated by the declarations attached hereto. Specifically, the attached Declaration of Michael

6

Johnson, PhD, an expert in monitoring indoor air pollution, supports the studies included on the website. "Johnson Decl." attached as Exhibit INT-A. Dr. Johnson explains that "[b]ased on established scientific principles and empirical evidence, gas stoves emit multiple air pollutants, including nitrogen oxides (NO and $NO_2$), carbon monoxide, and benzene, during normal operation" and that the "concentrations observed indoors vary according to non-source factors such as room size, ventilation, and housing type, these factors influence the degree of accumulation rather than the presence of emissions." Johnson Decl. ¶ 9. Importantly, Dr. Johnson also notes that "gas stove use results in indoor $NO_2$ concentrations that frequently reach or exceed levels identified by the U.S. EPA as unhealthy." *Id.* ¶ 10.

Dr. Johnson's conclusions are supported by decades of cited research detailing extensive analysis demonstrating that combustion of natural gas is a source of indoor air pollution. *Id.* ¶¶ 11-12. Dr. Johnson describes that while cooking with any form of stove can release particulate matter, gas stoves, because of their reliance on combustion, emit pollutants that electric stoves do not. *Id.* ¶ 13. Further, homes with gas stoves reliably exhibit measurably and statistically significant higher nitrogen oxide air pollution levels, regularly exceeding the U.S. EPA's standard deemed "unhealthy for sensitive populations." *Id.* ¶¶ 15-18. As he, and the website forthrightly recognize, a family's exposure to the air pollution emitted from gas stoves is determined by the presence or absence of ventilation, as

7

well as by environmental factors, such as the size of a dwelling unit's rooms. *Id*. ¶¶ 19-21.[1]

Similarly, the attached Declaration of Jennifer Peel, PhD, an epidemiologist with extensive experience studying the health impacts associated with the very same air pollutants for which Dr. Johnson demonstrates gas stoves emit at consequential levels. "Peel Decl." attached as Exhibit INT-B. Dr. Peel confirms the broad scientific consensus that the air pollutants emitted from gas stoves, specifically nitrogen oxides, carbon monoxide, formaldehyde, and benzene, are linked to adverse health effects. Peel Decl. ¶ 10. The evidence regarding the health effects from these pollutants is sufficiently established that public health entities issue recommendations for installation and ventilation of gas stoves. *Id*. ¶¶ 11, 16, 17. Specifically, the US EPA, World Health Organization, and International Agency for Research on Cancer have all characterized gas stove-emitted pollutants as being associated with serious respiratory, cardiovascular, and cancer risks. *Id*. ¶¶ 14, 15.

Thus, the science underpinning HB25-1161's modest labeling requirement is uncontroversial. The science is well-established that gas stoves emit air pollutants

---

[1] AHAM argues that it is significant that the Colorado General Assembly amended the eventual HB25-1161 to alter the label requirement from one specifically addressing ventilation. Mot. at 9-10, 17-18. However, the website specifically addresses ventilation. *See* State Defs' Opp. at 15. The established scientific evidence demonstrates that the presence or absence of ventilation has a significant impact on the indoor air pollution levels to which gas stove purchasers could be exposed to. *See* Johnson Decl. at ¶¶ 19-21. Thus, AHAM's attempt to sow cynicism due to a moderate change in bill language should be rejected by this Court.

8

in consequential amounts that electric stoves do not and those pollutants are associated with adverse health impacts. This Court should reject AHAM's attempts to cloud these rather straight forward and uncontroversial scientific realities with ill-defined questions on strict "causation" of various diseases. The science supports the uncontroversial conclusion that the pollutants emitted from gas stoves are associated with adverse health impacts. *See* Peel Decl. ¶¶ 12-14.

### III.   AHAM's assertion that the statute is not supported by a public health interest is incorrect.

AHAM attempts to persuade this Court to apply strict scrutiny in its constitutional analysis of HB25-1161 asserting the law was passed as a proxy for some nebulous anti-carbon agenda. Mot. at 16-19. But Colorado indisputably has a substantial interest in protecting the health of its citizens. *See Semler v. Or. State Bd. of Dental Exam'rs*, 294 U.S. 608, 612 (1935) (public health is a "vital interest"); *see also* State Defs' Opp. at 26 citing *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1143 (10th Cir. 2013) (recognizing the "importance" of interest in preserving public health).

Here, there is ample evidence that the indoor use of gas stoves releases air pollutants that contribute to degraded indoor air quality and that those specific pollutants are associated with adverse health impacts. *See* Johnson Decl. ¶¶ 9-10; Peel Decl. ¶ 10. That entities providing testimony in favor of the eventual HB25-1161 also favor reducing greenhouse gas emissions is of no import, as the predominant legislative concern with local pollution is legitimate and manifest.

9

In any case, AHAM provides no legal support for using statements of individual legislators, let alone non-legislative public witnesses, to characterize the intent of the entire legislative body. The Supreme Court has long affirmed that "inquiries into legislative motives 'are a hazardous matter.' Even when an argument about legislative motive is backed by statements made by legislators who voted for a law, we have been reluctant to attribute those motives to the legislative body as a whole." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 253-254 (2022). Settled precedent rejects attempts to use oral testimony of particular witnesses or legislators as a basis to divine overall legislative intent. *See Regan v. Wald*, 468 U.S. 222, 237 (1984).

## IV.     AHAM's arguments for strict scrutiny are unsupportable.

AHAM stakes its claim to ultimate relief, and to a preliminary injunction, on arguments that strict First Amendment scrutiny governs. Based on the allegations that the State lacked a legitimate substantial public health interest in enacting HB25-1161 and the scientific underpinnings of the label requirement are controversial, AHAM argues that *Zauderer* does not apply and this Court should apply a strict scrutiny analysis. Mot. at 23-27. AHAM contends that the intermediate scrutiny analysis under *Central Hudson* is inapplicable here because 1) HB25-1161 is not a restriction on speech but rather compels speech and 2) HB25-1161 does not relate to commercial speech. Mot. at 22-23. State Defendants

10

convincingly demonstrate that the labeling requirement in HB25-1161 relates to commercial speech. *See* State Defs' Opp. at 17-19.

AHAM's framework is based on an erroneous "bursting bubble" theory of *Zauderer*, where insufficiently factual (or controversial) commercial speech requirements (and thus outside *Zauderer*) are subject to strict scrutiny instead of simply falling back to *Central Hudson* intermediate scrutiny.

In *Central Hudson*, the Court subjected to intermediate scrutiny a state regulation that, in the interest of energy conservation, prohibited public utilities from encouraging customers to use electricity. 447 U.S. 560-61. In AHAM's view, however, a state regulation that required sharing conservation information but did not restrain utilities from also speaking in favor of energy use, would be presumptively unconstitutional and subject to unyielding strict scrutiny. That is irrational, ignoring the reason why commercial speech enjoys First Amendment protection to begin with—to increase the flow of truthful information to the marketplace. And, unsurprisingly, that is not how other courts have understood the doctrine. *See, e.g.*, *PhRMA v. Stolf*, 2025 WL 2448851, at *17 (9th Cir. Aug. 26, 2025) (explaining that intermediate scrutiny applies when requirement does not qualify for *Zauderer* review).

## V. Even if intermediate scrutiny is applied, HB25-1161's labeling requirement is readily constitutional.

Should this Court find that intermediate scrutiny applies, HB25-1161 easily survives. This is because HB25-1161 directly furthers a substantial government

11

interest in reasonable proportion to the interests served.

In the Tenth Circuit, the applicable test requires 1) a substantial interest; 2) that directly advances that governmental interest, meaning that it must do more than provide "only ineffective or remote support for the government's purpose,"; and 3) although the regulation need not be the least restrictive measure available, it must be narrowly tailored not to restrict more speech than necessary, such that it is a proportional response. *United States v. Wenger*, 427 F.3d 840, 849 (10th Cir. 2005) quoting *Mainstream Mktg. Servs. v. FTC,* 358 F.3d 1228, 1237-1238 (10th Cir.2004) and citing *Central Hudson,* 447 U.S. at 564.

AHAM's arguments regarding intermediate scrutiny are flawed. As to the State's interest, AHAM again asserts that the State's interest in health is a "pretextual" surrogate for climate change concerns. Mot. at 27. As discussed, there is no basis – legal or factual – for this assertion. Further, AHAM claims that any purported health interest is illegitimate because the science is controversial. *Id*. As also demonstrated herein and in the attached declarations, the relevant science establishing that gas stoves emit particular air pollutants associated with negative health impacts is noncontroversial. AHAM's argument cannot dispel the State's substantial interest in the public health. *See Semler* 294 U.S. at 612 (public health is a "vital interest"); *Hobby Lobby Stores*, 723 F.3d at 1143.

AHAM repeats the same arguments with regard to whether the labeling requirement advances the State's interest. Mot. at 28. That is, AHAM simply re-

12

states its position that because it contends there is no health concern of any type or degree associated with gas stoves, the labeling requirement cannot advance that interest. *Id.* However, the labeling requirement ensures that some purchasers of gas stoves become aware of the need to ensure proper ventilation so as to minimize exposure to harmful chemicals, thus directly advancing the State's interest.

As to tailoring, AHAM ignores that the labeling requirement merely encourages prospective purchasers to inform themselves as to the air quality implications of the indoor use of gas stoves. Mot. at 28. AHAM repeats that because there are no conceivable health impacts, the labeling requirement cannot be proportional to or provide a reasonable fit with the State's objectives. *Id.* To the contrary, the State requiring a modest label on the display model or on the sale webpage is not more restrictive than necessary. This is especially true where, as here, the seller can also include any language it desires, and is already required to provide a more aggressive label based on another state law. State Defs' Opp. at 11 (demonstrating that the sellers already display the more stringent California Prop. 65 warning).

Lastly, AHAM repeatedly complains that the labeling requirement of HB25-1161 does not apply to electric stoves. Mot. at 14, 20, 25, 30. However, "First Amendment challenges based on underinclusiveness face an uphill battle in the commercial speech context. As a general rule, the First Amendment does not require that the government regulate all aspects of a problem before it can make

13

progress on any front." *Mainstream Mktg. Servs.*, 358 F.3d at 1238 citing *United States v. Edge Broad. Co.,* 509 U.S. 418, 434 (1993). And as noted, gas stoves release a raft of dangerous pollutants (all those resulting from fuel consumption), that electric stoves do not. Johnson Decl. ¶¶ 10, 13, 15-18.

## VI.   The balance of equities weighs against a preliminary injunction.

Plaintiff has the burden to demonstrate irreparable harm. No such harm results from a state law merely enabling (not requiring) prospective customers to access *truthful, accurate* information about health implications of gas stoves – including that gas stoves should be "properly ventilated," and that gas stove users can "improve [their] indoor air quality" by "turn[ing] on [their] stove hood" and keep it properly maintained. S*ee* State Defs' Opp. at 11-12. AHAM itself claims that ventilation is a pivotal aspect of gas-stove safety. *See. e.g.*, Mot. at 31-32. The state website's accurate and measured statements are conspicuously presented as coming from the state government, not AHAM or others, and AHAM is free to provide shoppers with its own statements regarding the health implications of gas stoves. The statute's requirements do not cause AHAM any irreparable harm, let alone irreparable harm that is both "certain" and "great." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005).

On the other side of the equitable balance, the public interest in providing prospective stove purchasers with accurate information about the health implications of these appliances is strong, and would be impaired by an injunction.

14

The air pollution resulting from combustion of gas in indoor stoves can lead to pollution levels that far exceed health-based emissions standards, and can exacerbate a variety of common health conditions. *See* Peel Decl. ¶¶ 10, 14 ; *see also Cooksey v. Futrell,* 2012 WL 3257811, at *5 (W.D.N.C. 2012) ("[T]he public interest in accurate medical information is strong."). The website encourages prospective stove users to use appropriate ventilation – the very point AHAM insists obviates health risks. Blocking these disclosures would disserve the public's interest in ensuring that consumers have accurate information about real health risks so that they may protect themselves and their families. In sum, the equitable factors point strongly against a preliminary injunction here.

## CONCLUSION

For the foregoing reasons, this Court should deny the Motion for Preliminary Injunction. AHAM is unlikely to succeed on the merits on its arguments that the science underlying the new law is controversial, that labeling requirement is disconnected from commercial speech, or that the legislature passed the law based on a hidden motive to address climate change instead of a good faith concern regarding public health. The State has satisfied the applicable *Zauderer* test. If the Court applies the *Central Hudson* intermediate scrutiny analysis, HB25-1161 meets that test as well. The remaining factors favor denial of a preliminary injunction.

Respectfully submitted this 6th day of October, 2025.

                              */s/ Jeffrey C. Parsons*

15

Jeffrey C. Parsons
Parsons Law Office
2205 W. 136th Ave., Ste. 106-311
Broomfield, CO 80023
jeff@parsonslawoffice.com
720-203-2871

*Counsel for Proposed Defendant-Intervenor*

**CERTIFICATION**

Undersigned counsel certifies that no portion of this Response to Motion for Preliminary Injunction was drafted by AI.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2025, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to all current parties to the case.

*/s/ Jeffrey C. Parsons*

16