UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:25-cv-02417-SKC-KAS

ASSOCIATION OF HOME APPLIANCE
MANUFACTURERS,

          Plaintiff,

v.

JILL HUNSAKER RYAN, Executive Director of the
Colorado Department of Public Health & Environment
(CDPHE),

JEFF LAWRENCE, Director of the Environmental
Health and Sustainability Division of the CDPHE, and

PHIL WEISER, Colorado Attorney General,

          Defendants.

---

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION (ECF 27)**

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................iii

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................ 3

I.   DEFENDANTS IGNORE THE ACTUAL CONTENT OF HB25-1161's
COMPELLED SPEECH. ................................................................................ 3

      A.   HB25-1161 Compels the Scientifically Unsupported
Message that There are Purported "Implications," "Health
Risks," and "Health Impacts" from Gas Stoves. ........................... 4

      B.   Defendants Provide No Competent Evidence Supporting
"Implications," "Impacts," or "Risks" from Gas Stoves. .............. 6

      C.   AHAM's Request for Preliminary Injunction Is Entirely
Consistent with Its Longstanding Work on Ventilation. ............. 9

      D.   Defendants' Attempts to Equate the Labeling
Requirement with Warnings AHAM's Members Already
Make Pursuant to California's Proposition 65 Are
Disingenuous and Irrelevant. ....................................................... 10

II.  HB25-1161 IS SUBJECT TO STRICT SCRUTINY BECAUSE
*ZAUDERER* DOES NOT APPLY AND BECAUSE THE LABELING
REQUIREMENT COMPELS SPEECH BASED ON VIEWPOINT................ 12

      A.   *Zauderer* Does Not Apply Because the HB25-1161
Labeling Requirement Is Neither Purely Factual nor
Uncontroversial. .......................................................................... 12

      B.   The HB25-1161 Labeling Requirement Is Also Subject to
Strict Scrutiny Because It Compels Speech Based on
Viewpoint. .................................................................................... 16

III.    NEITHER DEFENDANT CONTENDS HB25-1161 WITHSTANDS
        STRICT SCRUTINY, AND HB25-1161 FAILS EVEN *ZAUDERER*............. 17

IV.     THE ADDITIONAL ARGUMENTS RAISED BY PSR—WITHOUT
        THE SUPPORT OF THE STATE—ARE WITHOUT MERIT. ....................... 19

        A.    HB25-1161 Is Not Government Speech. ..................................... 19

        B.    *Central Hudson* Scrutiny Has No Application to
              Disclosure Requirements Like HB25-1161's Labeling
              Requirement, and, Regardless, HB25-1161 Fails
              Intermediate Scrutiny. ............................................................... 19

        C.    The Balance of Equities Do Not Weigh Against a
              Preliminary Injunction Where, as Here, The Moving
              Party Has Established a Likelihood of Success on a First
              Amendment Claim..................................................................... 20

CONCLUSION.............................................................................................. 20

CERTIFICATION REGARDING NON-USE OF GENERATIVE AI ....................... 22

# TABLE OF AUTHORITIES

## CASES

*Att'y Gen. of Okla. v. Tyson Foods, Inc.,*
   565 F.3d 769 (10th Cir. 2009) ..................................................................... 9

*Black Emergency Response Team v. Drummond,*
   2023 WL 6810561
   (W.D. Okla. Oct. 16, 2023) ......................................................................... 9

*Cooksey v. Futrell,*
   2012 WL 3257811
   (W.D.N.C. Aug. 8, 2012).......................................................................... 20

*CTIA--The Wireless Ass'n v. City & Cnty. of San Francisco,*
   827 F. Supp. 2d 1054 (N.D. Cal. 2011)
   *aff'd sub nom.* 494 F. App'x 752 (9th Cir. 2012)...................................... 15

*DigitalGlobe, Inc. v. Paladino,*
   269 F. Supp. 3d 1112 (D. Colo. 2017) ....................................................... 7

*Franciscan Alliance, Inc. v. Azar,*
   414 F. Supp. 3d 928 (N.D. Tex. 2019)........................................................ 7

*Free Speech Coal., Inc. v. Paxton,*
   95 F.4th 263 (5th Cir. 2024) ...................................................................... 14

*In re Breast Implant Litig.,*
   11 F. Supp. 2d 1217 (D. Colo. 1998) ......................................................... 8

*Nat'l Ass'n of Wheat Growers v. Bonta,*
   85 F.4th 1263 (9th Cir. 2023) ........................................................... passim

*Nat'l Ass'n of Wheat Growers v. Zeise,*
   2018 WL 3000488
   (E.D. Cal. June 12, 2018) .......................................................................... 19

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra ("NIFLA"),*
   585 U.S. 755 (2018) .......................................................................... 17, 18, 20

*Norris v. Baxter Healthcare Corp.,*
   397 F.3d 878 (10th Cir. 2005) ..................................................................... 8

*Pers. Care Prods. Council v. Bonta,*
  2025 WL 2323833
  (E.D. Cal. Aug. 12, 2025) ........................................................................ 6

*Rimbert v. Eli Lilly & Co.,*
  No. CIV 06-0874 JCH/LFG, 2009 WL 2208570
  (D.N.M. July 21, 2009) ........................................................................... 8

*Rosenberger v. Rector & Visitors of Univ. of Va.,*
  515 U.S. 819 (1995) ............................................................................... 12

*Schrier v. Univ. of Co.,*
  427 F.3d 1253 (10th Cir. 2005) .............................................................. 20

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,*
  471 U.S. 626 (1985) ....................................................................... passim

**STATUTES**

C.R.S. § 25-5-1601-03 ................................................................................ 10

C.R.S. § 25-5-1602 ................................................................................. 4, 5

Cal. Health & Safety Code § 25249.6 ......................................................... 11

Cal. Health & Safety Code § 25249.8 ......................................................... 11

Cal. Health & Safety Code § 25249.10 ....................................................... 11

**REGULATIONS**

Cal. Code Regs. tit. 27, § 25205 ................................................................. 11

Cal. Code Regs. tit. 27, § 25302-05 ........................................................... 12

## INTRODUCTION[1]

HB25-1161 compels retailers (including manufacturers who make direct sales) to endorse a scientifically dubious, non-consensus, and politically controversial message regarding "air quality implications," "health risks," and "health impacts" of gas stoves. HB25-1161 is unprecedented in two ways. First, it requires retailers to disseminate the false message that gas stoves *themselves* are associated with "health risks" and "impacts." That assertion is scientifically unsupported: the scientific consensus, which the State and proposed Defendant-Intervenor Physicians for Social Responsibility Colorado ("PSR") continue to ignore, finds no association, let alone a causal relationship, between gas stoves and health outcomes.

Second, HB25-1161 requires retailers to direct every potential purchaser to a detailed, lengthy website—functionally, a state-run opinion editorial—created by CDPHE officials without input from stakeholders, which is highly misleading (mentioning none of the relevant epidemiological science) and, worse, can be changed at any time without notice. The website falsely implies there *is* a scientific consensus based on "credible, evidence-based information," and that this purported consensus supports the notion that gas stoves are associated with serious, fatal conditions, including "chronic heart and lung diseases" and "leukemia." This is simply untrue.

---

[1] The opposition briefs of the State Defendants (collectively referred to as "the State"), ECF 39, and of proposed Defendant-Intervenor Physicians for Social Responsibility Colorado ("PSR"), ECF 41, are cited as "State" and "PSR," respectively. The declarations of Dr. Benson in support of the Motion for Preliminary Injunction are cited as follows: ECF 27-3 is cited as "Benson," ECF 27-50 is cited as "Benson Supp.," and the reply declaration is cited as "Benson Reply" attached as Ex. 8. The declarations of Diane Duero in support of the Motion are cited as follows: ECF 27-27 is cited as "Duero," and the reply declaration is cited as "Duero Reply" attached as Ex. 9. The Declarations of Dr. Johnson, ECF 41-1, and Dr. Peel, ECF 41-2, in support of PSR's brief are cited as "Johnson" and "Peel," respectively.

Remarkably, the State makes essentially no effort to justify *the actual compelled disclosures at issue*—concerning purported health "risks" and "impacts" from gas stoves. Nor do they show that those disclosures are "purely factual" and "uncontroversial," *i.e.*, supported by scientific consensus and thus subject to less-demanding First Amendment scrutiny. Indeed, the State proffers no expert to counter Dr. Benson, who reviewed the epidemiological literature and concluded: "there is no scientific consensus that using gas stoves for home cooking is associated with or causes any health impacts or effects." (Benson ¶ 10.) Instead, the State cherry picks excerpts from the HB25-1161 website to mischaracterize its contents, claiming it contains only generalized disclosures about (1) combustion byproducts, (2) potential health effects at exposures *unrelated* to gas cooking, and (3) ventilation.

PSR adopts the same misleading strategy—ignoring the actual compelled disclosures at issue and focusing instead on generalized statements selectively excerpted from the HB25-1161 website. And although PSR proffers its own experts, their testimony is unreliable, unhelpful and thus irrelevant: they utterly ignore the relevant epidemiological evidence on gas stoves.

Defendants fall far short of their burden to prove that HB25-1161's compelled disclosure of purported "health risks" and "impacts" *from gas stoves* is supported by a scientific consensus. They also sidestep the true purpose of HB25-1161, which is to promote the controversial viewpoint that consumers should avoid gas stoves due not to health concerns, but to the unrelated issue of climate change. Consequently, Defendants cannot retreat to the relaxed *Zauderer* standard of constitutional review and must prove that HB25-1161 survives strict scrutiny. Because neither Defendant argues, let alone demonstrates, that HB25-1161 survives this demanding standard—and because HB25-1161 fails other, less-demanding constitutional tests—AHAM is

likely to succeed on the merits. A preliminary injunction should be granted.

**ARGUMENT**

## I.    DEFENDANTS IGNORE THE ACTUAL CONTENT OF HB25-1161's COMPELLED SPEECH.

Defendants run from the actual message that retailers are compelled to propagate under HB25-1161: that purported "air quality implications," "health risks," and "health impacts" are "associated with gas stoves." Although Defendants cite a few secondary sources on gas stoves, they make no attempt to demonstrate those sources establish scientific consensus for HB25-1161's claims of health impacts from gas stoves. Nor could they. As Dr. Benson established: (1) extensive epidemiological literature shows *no scientific consensus* that gas stoves are associated with health impacts (Benson ¶¶ 10-12 (emphasis added)); and (2) the few studies that may be (inaccurately) read to support health impacts are deeply flawed, because they rely on exposures unrelated to actual consumer use (*e.g.*, emissions from outmoded stoves with pilot lights no longer sold, or unrealistic cooking times and conditions) and ignore critical confounding variables such as smokers in the household. (*See* Benson ¶¶ 53-56, 75-77; Benson Supp. ¶¶ 9-18, 33-48; Benson Reply ¶¶ 11-17, 26-29.)

Instead, Defendants falsely argue that HB25-1161's compelled disclosures consist only of the "common sense consensus that gas stoves have the potential to contribute to indoor air pollution and should be well-ventilated." (State at 2.) Rather than attempting to demonstrate scientific support for the Labeling Requirement's contention that there are "implications," "health risks" and "health impacts" *from gas stoves*, Defendants instead focus on theoretical heath impacts from pollutants generally, *untethered to actual consumer use of gas stoves*. (*See, e.g.*, State at 8 (conceding "there is less consensus about the specific concentrations or periods of

exposure necessary to contribute to individual health outcomes").) Alternatively, Defendants assert that HB25-1161's disclosures are like those AHAM's members voluntarily make regarding ventilation, or disclosures required by California's Proposition 65. (State at 11.) Both contentions are flatly wrong.

### A. HB25-1161 Compels the Scientifically Unsupported Message that There are Purported "Implications," "Health Risks," and "Health Impacts" from Gas Stoves.

Defendants attempt to deflect from HB25-1161's compelled disclosure that there are "health impacts" *from gas stoves* by mischaracterizing HB25-1161 and the CDPHE website implementing it. Specifically, Defendants contend the Labeling Requirement "does not discourage consumers from buying gas stoves or allege that gas stoves cause health problems." (State at 2.) Defendants insist the Labeling Requirement "focus[es] solely" on the following generic points, for which there purportedly *is* scientific consensus: (1) gas combustion emits pollutants; (2) those pollutants "in certain concentrations and over periods of exposure [unrelated to the actual, real-world use of gas stoves], can be harmful;" and (3) ventilation is important to mitigate the theoretical risk of harm from the pollutants. (State at 4, 11; *see also* PSR at 6 (making functionally identical contentions). Defendants grossly mischaracterize HB25-1161 and the Labeling Requirement.

Defendants' contention that the Labeling Requirement is merely aimed at educating consumers about air quality and ventilation—and not "discourage[ing] consumers from buying gas stoves or alleg[ing] that gas stoves cause health problems"—is belied by the timing and nature of the Labeling Requirement. HB25-1161 compels Retailers to make the disclosures *only prior to purchase.* Specifically, the disclosures must be placed on a display model or the website where online sales occur. C.R.S. § 25-5-1602(1)(a), 3. The disclosures are thus transparently aimed at

discouraging consumers from buying gas stoves *at the point of sale*, not warning them about ventilation *at the point of use*. One sponsor of HB25-1161 admitted this aim: "We don't think that people need to have the labels in their homes because they've already made a decision to purchase that stove." (Duero, Ex. A at 37:4-6.)

Moreover, HB25-1161 mandates that: (1) the label warn potential consumers of purported "air quality implications of having an indoor gas stove" and (2) the CDPHE website include "information on the [purported] health impacts of gas-fueled stoves." C.R.S. § 25-5-1602(1)(a), 4. The text of HB25-1161 thus does not speak to Defendants' cherry-picked website excerpts—*e.g.*, purported effects of gas combustion byproducts (divorced from real-world exposure *from* gas stoves) or ventilation. Instead, HB25-1161 is laser-focused on dissuading purchases of gas stoves by warning of purported "implications" and "health impacts." And the text of HB25-1161 itself is *entirely silent* as to ventilation.

The website includes many statements that, as HB25-1161 requires, make clear the aim is alarming consumers about purported "health impacts" and "risks":

- the website asserts it provides "credible, evidence-based information on the *health impacts* of gas-fueled stoves";
- it claims consumers should "Learn about *the health risks associated with the indoor use of gas-fueled stoves*;"
- it includes warnings about "*Health Risks* from Indoor Air Pollution Associated with Gas Stoves," including that "people who are more sensitive to pollutants may be more likely to experience *health impacts*;"
- it makes the grossly unsupported claim that "air pollution *associated with gas stoves* … can increase the risk of developing *chronic heart and lung diseases, asthma, … and some cancers.*"

(Cassady, Ex. O (emphasis added).) Notably, the website never mentions that these contentions about "health impacts" or "health risks" are subject to scientific debate. Nor does the website cite *any* of the prominent studies finding *no evidence* of an association between gas stoves and health risks or impacts. (*See* Benson ¶¶ 53-54,

64.) The website is a one-sided op-ed, not a legitimate and useful consumer disclosure.

It is these statements regarding purported "implications," "health impacts," and "health risks" from gas stoves—which Defendants tellingly ignore—that are the focus of HB25-1161's Labeling Requirement and the subject of AHAM's constitutional challenge. Even if there were a way to interpret these misleading statements to mean only that certain pollutants emitted by gas stoves "in certain concentrations and over periods of exposure [unrelated to consumers' actual use of gas stoves], can be harmful" (State at 4), consumers "are unlikely to discern th[at] logic" and will be left with the false impression that "using [gas stoves] increases their personal risk." *Pers. Care Prods. Council v. Bonta*, 2025 WL 2323833, at *7 (E.D. Cal. Aug. 12, 2025).

The Court must focus its analysis on the First Amendment issues actually presented—not Defendants' mischaracterizations and cherry-picked excerpts.

## B. Defendants Provide No Competent Evidence Supporting "Implications," "Impacts," or "Risks" from Gas Stoves.

In its Motion, AHAM—supported by the analysis of expert epidemiologist Dr. Benson—established that "there is no scientific consensus that using gas stoves for home cooking is associated with or causes any health impacts or effects." (Motion at 11-13 (quoting Benson ¶ 10).) The State does not challenge Dr. Benson or her conclusion that it "*would be scientifically inappropriate and therefore factually inaccurate*" to suggest a scientific consensus supporting an association between health impacts and gas stove use. (Benson ¶ 10 (emphasis added).) Indeed, the State barely mentions Dr. Benson and fail to proffer an expert to counter her conclusions. More telling, the State offers *no testimony from any official from CDPHE*, the agency whose staff—one hopes—reviewed the science before authoring the CDPHE website

without stakeholder input. Instead, the State relies entirely on hearsay[2]—namely, secondary sources such as government websites and journals—without expert analysis or context to support its contention that these sources are reliable, let alone represent scientific consensus.

In fact, most of these sources are irrelevant, because they do not address gas stoves at all, let alone the specific question here: whether scientific consensus shows purported "implications," "health risks" and "health impacts" from gas stoves. (*See* Benson Supp. ¶¶ 49-53.) With regard to sources that *do* address gas stoves, the State offers no response to Dr. Benson's analysis showing why those sources are unreliable and provide no support—much less consensus—for HB25-1161's compelled disclosures. (*See generally* Benson Supp.) The Court thus should accord no weight to the State's unexplained, hearsay-based secondary sources.

Even if PSR were permitted to assist the State in carrying its burden under the First Amendment (and it is not[3]), PSR's evidence fares no better. Although PSR offered two experts, Dr. Michael Johnson and Dr. Jennifer Peel, their opinions are likewise irrelevant and unreliable. Most studies cited by PSR's experts do not even consider health impacts from actual gas stove use. (*See* Benson Reply ¶¶ 1, 36-42.) The studies PSR's experts cite that *do* address gas stoves are largely irrelevant (*see* Benson Reply § 2), rendering their opinions unreliable. Dr. Johnson opines that "emissions from gas stoves result in elevated indoor pollutant concentrations" and

---

[2] While the rules of evidence "do not apply to preliminary injunction hearings[,] [t]he fact that evidence might be excludable goes to the weight of that evidence." *DigitalGlobe, Inc. v. Paladino*, 269 F. Supp. 3d 1112, 1119 (D. Colo. 2017).

[3] PSR cannot carry the State's burden to justify the law's constitutionality. *See Franciscan Alliance, Inc. v. Azar*, 414 F. Supp. 3d 928, 943 (N.D. Tex. 2019) ("[B]inding precedent make clear that Putative Intervenors cannot carry Defendants' burden….").

that "the use of gas stoves leads to indoor NO2 concentrations that frequently exceed levels identified by the U.S. EPA as unhealthy." (Johnson ¶ 10.) Dr. Peel similarly opines, "the air pollutants emitted from gas cooking, specifically nitrogen oxides, carbon monoxide, formaldehyde, and benzene, are linked to adverse health effects." (Peel ¶ 10.) As Dr. Benson explains, Dr. Johnson's and Dr. Peel's conclusions improperly rely on studies that (1) use data from outmoded stoves with pilot lights that, for years, have not been sold in the U.S., while ignoring studies that show lower emissions from modern stoves; (2) fail to account for confounding variables such as the presence of smokers in the home; and (3) assess health impacts for occupational exposures untethered from gas stove exposures. (*See* Benson Reply ¶ 7, 11.) Even worse, Drs. Johnson and Peel both fail to *discuss or even cite* the wealth of epidemiological studies relevant to the inquiry. (*Id.* ¶¶ 1, 37.) In stark contrast, Dr. Benson analyzed those studies and concluded that there is no scientific consensus that gas stoves are associated with or cause any health impacts. (Benson ¶¶ 11-13.)

The failure of Drs. Johnson and Peel to account for this epidemiological evidence renders their opinions entirely unreliable and deserving of no weight. Expert testimony must be excluded if it "completely ignore[s] or discount[s] without explanation the many epidemiological studies" that contradict the proffered opinions. *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884, 886 (10th Cir. 2005) (disregarding expert opinion that "fail[ed] to properly address the previous and contrary views").[4] This is precisely what Drs. Johnson and Peel did here. They ignored

---

[4] *See also In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1224-25 (D. Colo. 1998) (collecting cases excluding experts who fail to address contrary epidemiological evidence); *Rimbert v. Eli Lilly & Co.*, No. CIV 06-0874 JCH/LFG, 2009 WL 2208570, at *13 (D.N.M. July 21, 2009) ("Even more damaging … than [the expert's] lack of reliance on epidemiological studies … is her failure to grapple with any of the myriad epidemiological studies that refute her conclusion.").

the extensive evidence in Dr. Benson's declarations, which belie HB25-1161's claims of "health impacts" or "risks" from gas stoves. Because their opinions are irrelevant and unreliable, the Court should exclude their testimony or accord it no weight.[5]

### C. AHAM's Request for Preliminary Injunction Is Entirely Consistent with Its Longstanding Work on Ventilation.

AHAM has a long history of collaborating with regulators and independent organizations to deliver safer, more efficient products, including by developing science-driven standards to improve air quality through ventilation and air-cleaning appliances. (Cooper ¶¶ 2, 3, 8, 12.) Defendants incorrectly contend AHAM's Motion is inconsistent with those efforts, as well as AHAM's and its members' statements on ventilation, because the Labeling Requirement purportedly is focused on "encourage[ing] prospective stove users to use appropriate ventilation." (PSR at 18-19; State at 3.) That is not true. The Labeling Requirement is *not* focused on ventilation (indeed, HB25-1161 never *mentions* ventilation). Further, the Labeling Requirement contravenes the approach to ventilation AHAM consistently advocates.

Although the original version of HB25-1161 purported to address ventilation, a Senate Committee inexplicably struck this language,[6] shifting the Labeling

---

[5] AHAM recognizes Practice Standard 7.1A(a)(6) requires a request for relief to be made by separate motion. Although the Tenth Circuit has held that, even in preliminary injunction proceedings, "*Daubert*'s standards must still be met," *Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009), District Courts regularly conclude *Daubert* is not a basis for exclusion at this stage but nonetheless "a useful method for evaluating the weight of the evidence presented," *Black Emergency Response Team v. Drummond*, 2023 WL 6810561, at *2 (W.D. Okla. Oct. 16, 2023). AHAM thus addresses the reliability of PSR's experts here rather than by separate motion. Should the Court request full briefing, AHAM will promptly comply.

[6] Defendants' reliance on the original text of HB25-1161, which focused on ventilation, are thus, at best, misleading. (*See* State at 14 (stating that, as introduced, HB25-1161 "was primarily concerned with ventilation"); PSR at 12 n.1 (falsely describing strike-below amendment as "moderate change").)

Requirement from one addressing ventilation to one about "air quality implications" and "health impacts." (*See* Duero, Ex. P.) Indeed, the word "ventilation" *appears nowhere* in the enacted text and there is *no requirement* that the CDPHE website mention ventilation. C.R.S. § 25-5-1601-03.

In any event, the website's stray references to ventilation are inconsistent with AHAM's prior (and current) views on ventilation—and the website thus compels speech with which AHAM disagrees—because the website unfairly and without scientific support targets gas stoves, even though "the epidemiological evidence demonstrates that the risk of respiratory symptoms and diseases are equivalent between those cooking with natural gas versus those using electricity." (Benson ¶ 13; *see also* Cooper ¶ 15.) Accordingly, as AHAM emphasized in the legislative process, any ventilation label should apply to gas *and* electric ranges. (*See, e.g.*, Duero, Ex. L at 13:13-17, 14:4-7.) In short, Defendants' contention that the Labeling Requirement merely duplicates AHAM's and its members' own statements on ventilation is false.

### D. Defendants' Attempts to Equate the Labeling Requirement with Warnings AHAM's Members Already Make Pursuant to California's Proposition 65 Are Disingenuous and Irrelevant.

To further distract from HB25-1161's scientifically-unsupported disclosures regarding "health impacts" from gas stoves, Defendants falsely contend the Labeling Requirement adopts a "light-touch approach" by linking to a state-controlled website, and that "AHAM and its members already make statements similar to the label and the website." (*See* State at 2, 11, 30.) In particular, Defendants claim that AHAM members already include a "significantly more burdensome" and "aggressive" label pursuant to California's Proposition 65. (State at 30; PSR at 13.) Defendants' contentions are incorrect and ultimately irrelevant to HB25-1161's constitutionality.

Colorado's Labeling Requirement is unprecedented. It requires that retailers

of gas stoves warn consumers about unspecified "implications" and "health impacts" from gas stoves, and only gas stoves. It compels retailers to speak the State's preferred message without an opportunity to participate in the creation of that message or a procedure to ensure its accuracy. Indeed, because the content of the website can change any time without notice, compelled speakers are not even made aware of the content of the speech before being compelled to endorse and propagate it, leaving them no advance opportunity to protect their First Amendment rights. The Labeling Requirement thus is the opposite of a "light touch."

In sharp contrast, Prop 65 applies to *all* products that emit *certain levels* of *specifically-identified chemicals* determined—through a *scientifically-supported process with stakeholder input*—to *cause specific health impacts*, namely, cancer or reproductive harm.[7] Contrary to the State's contention, there is no specific warning label required by Prop 65 or any requirement that the label "directs consumers to a website." (State at 12.) Instead, Prop 65 requires only that the regulated party provide "clear and reasonable warning." Cal. Health & Safety Code § 25249.6. Although California does provide a sample label with a link to a website, this model label is subject to formal rulemaking, the state agency responsible for creating the label and website is required to obtain stakeholder input, and the state is advised by a science advisory board composed of subject-matter experts.[8]

_____

[7] *See, e.g.*, Cal. Health & Safety Code §§ 25249.6 (providing that no person shall expose individual to chemical known to cause cancer or reproductive harm without giving a warning), 25249.8 (establishing criteria for which chemicals are included); 25249.10(c) (establishing exception from warning requirement where responsible person can show that exposure from a product "poses no significant risk").

[8] *See, e.g, Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1281 (9th Cir. 2023) (noting that "[d]uring this rulemaking, [the state agency] consulted with EPA to revise the [model Proposition 65] warning language"); Cal. Code Regs. tit. 27, §§ 25205 (providing stakeholder involvement for website and process for corrections),

Moreover, there is a significant difference between the Prop 65 website and the website mandated by HB25-1161. The Prop 65 website does not target only a specific subset of products (*i.e.*, gas stoves) that emit regulated chemicals, nor does it assert there are "health risks" and "outcomes" purportedly "associated with" *the use of gas stoves*. (*Compare* Cassady, Ex. O *with* Duero Reply, Exs. V, W.) HB25-1161 and Prop 65 thus bear almost nothing in common.[9] Prop 65 is no excuse for the State to single out sellers of gas stoves for scientifically controversial compelled speech.

## II.    HB25-1161 IS SUBJECT TO STRICT SCRUTINY BECAUSE *ZAUDERER* DOES NOT APPLY AND BECAUSE THE LABELING REQUIREMENT COMPELS SPEECH BASED ON VIEWPOINT.

HB25-1161 is subject to strict scrutiny because (1) the State cannot meet the prerequisites for less-stringent *Zauderer* review; and (2) HB25-1161 impermissibly promotes a particular state-selected viewpoint and is thus "presumed to be unconstitutional," and, at a minimum, must be subject to strict scrutiny, *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995).

### A.    *Zauderer* Does Not Apply Because the HB25-1161 Labeling Requirement Is Neither Purely Factual nor Uncontroversial.[10]

---

25302-05 (establishing science advisory boards).

[9] These contrasts apply with even greater force to disclosures certain AHAM members provide in user manuals. (State at 11, Exs. V, W, X.) There are no First Amendment concerns regarding these voluntary disclosures—the manufacturers control their content and the process for vetting and revising them. Substantively, the disclosures are entirely different and, unlike HB25-1161, unlikely to mislead, because they (1) do not reference purported "health risks" and (2) clarify that only "small amounts" and "minor exposure" to pollutants may be associated with gas cooking. (*Id.*) The State is wrong that these warnings "go well beyond the Labeling Requirement." (State at 27.)

[10] Separately, *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio* does not apply because it is limited to laws compelling disclosure of "purely commercial speech" directed at "prevent[ing] potential deception of the public" in voluntary advertising. 471 U.S. 626, 629 (1985); *see also* Motion at 30-31. Defendants' response is unpersuasive: they fail to address the Supreme Court precedent on which the

The parties agree that less-stringent *Zauderer* review applies only to compelled speech that is both purely factual and uncontroversial, and that the Court should apply the framework in *Wheat Growers* to determine whether the Labeling Requirement is purely factual and uncontroversial. (State at 23-26; PSR at 9-13.) In *Wheat Growers*, the Ninth Circuit found that any proposed Prop 65 warning for glyphosate—regardless of its specific language—would be neither purely factual nor uncontroversial, because "the presence of a genuine, scientific controversy is sufficient to place a Prop 65 warning outside the realm of the lower level of review under *Zauderer*." 85 F.4th at 1282. Because Defendants have not (and cannot) prove a scientific consensus on "health impacts" or "risks" from gas stoves, HB25-1161 is likewise "outside the realm" of *Zauderer*. *Id.*

Defendants contend the Labeling Requirement is purely factual because each statement on the website is factually accurate and "supported by facts, with citations to relevant authority." (State at 23 (citing *id.* at 16-17); PSR at 10.) That is not true. Despite Defendants' best efforts to ignore them, the website contains numerous unsupported references to "health impacts" and "risks" from gas stoves. (Cassady, Ex. O.) The sources that are cited do not actually support these references. (*See generally* Benson Supp.) Indeed, the website's sources "do not include a single epidemiological study assessing natural gas cooking and the risk of health effects." (*Id.* ¶ 6.) The references to "health effects" and "risks" thus are not supported and certainly not based on scientific consensus.

Even if Defendants were able to demonstrate "that each sentence is entirely and literally true, that is not enough," because "the totality of the [website]" is "nonetheless … misleading." *Wheat Growers*, 85 F.4th at 1279. The website's repeated

---

argument is based. (*See* State at 19-20, 26; PSR at 14-15.)

references to purported "health impacts" and "risks" from gas stoves "convey[ ] the overall message that [the use of gas stoves] is unsafe which is, at best, disputed." *Id.* at 1281. The website ignores this dispute. And it fails to cite studies that have concluded—contrary to the website's representations—that there is no statistically significant increased risk of any heath impact from gas cooking. (Benson Supp. ¶¶ 6-7.) As such, HB25-1161's Labeling Requirement is *less* factually accurate than the warning the Ninth Circuit struck down as not "purely factual" in *Wheat Growers*, which expressly "reference[d] the scientific debate." 85 F.4th at 1279. And the Labeling Requirement is plainly "controversial because it elevates one side of [this] legitimately unresolved scientific debate." *Id.* at 1278 (quotation omitted).

Although the State does not expressly concede the Labeling Requirement is controversial, it implicitly does by: (1) acknowledging mandated disclosures are controversial if "the truth of the statement is … subject to good-faith scientific or evidentiary dispute" (State at 25 (quoting *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 281-82 (5th Cir. 2024))); and (2) conceding "there is ongoing debate about the extent of [gas stoves'] impact on human health" (*id.* at 11 (quoting ECF 27-31 at 1).)[11]

Moreover, Dr. Benson's declarations clearly establish that the website's assertion of "health impacts" and "risks" from gas stoves is, at a minimum, "subject to good-faith scientific or evidentiary dispute" (State at 25 (quoting *Free Speech Coal., Inc.*, 95 F.4th at 281-82).) Defendants do not challenge Dr. Benson's conclusions; indeed, the State does not proffer testimony from any competing expert. Although PSR submitted testimony from two experts, they do not credibly address or contest

---

[11] *See also* State at 9 (conceding "there is less consensus about the specific concentrations or periods of exposure necessary to contribute to individual health outcomes" and "pollutant levels from any individual source may be small" (quoting Ex. B at 7)); *id.* (acknowledging "'[f]urther research is needed'" (quoting Ex. B. at 7)).

Dr. Benson's conclusion that there is no scientific consensus to support the website's compelled disclosures of purported "health impacts" and "risks" from gas cooking. Instead, PSR's experts largely address issues unrelated to the challenged statements on the website and base their conclusions on irrelevant studies.[12] (*See* Benson Reply ¶ 1; § 2.) Even if PSR's experts had meaningfully challenged Dr. Benson's conclusions, such challenge merely establishes an ongoing scientific debate. *See Wheat Growers*, 85 F.4th at 1270-71 ("Although these government agencies and regulatory bodies tend to disagree over the terminology used, the data sets used, . . . and much more, suffice it to say, there is a robust debate . . ..").

Defendants contend that *Wheat Growers* does not undermine the constitutionality of the Labeling Requirement because the warning in *Wheat Growers* included a "categorical statement" that glyphosate "is '*known* to the State of California to *cause* cancer,'" whereas the Labeling Requirement "at no point … claim[s] that gas stoves 'cause' health impacts." (State at 24 (quoting *Wheat Growers*, 85 F.4th at 1263).) The State is mistaken.[13] Although the initial versions of the warning at issue in *Wheat Growers* included language regarding causation, the state ultimately proposed a label that omitted the causation language and acknowledged

---

[12] As explained above, because the testimony of PSR's experts is irrelevant and unreliable, it should be accorded no weight. *See supra* 8-9 & n.5.

[13] Defendants also contend that "AHAM and its expert attack [causation] language that does not exist" on the website. (State at 24; PSR at 10.) Contrary to this assertion, AHAM and Dr. Benson focus on the website's contention that there are "health risks" and "impacts" purportedly *associated with* gas stoves. (*See* Benson Supp. ¶¶ 3, 7.) Further, although the website may not explicitly include "causation language," its use of the terms "impacts" and "risks" obviously imply causation. *See CTIA--The Wireless Ass'n v. City & Cnty. of San Francisco*, 827 F. Supp. 2d 1054, 1061 (N.D. Cal. 2011) (government's use of "risk" to describe relationship with "no known statistical correlation" was "different from the usual way" "risk" is used), *aff'd sub nom.* 494 F. App'x 752 (9th Cir. 2012).

the debate regarding whether glyphosate is carcinogenic. 85 F.4th at 1281. Despite these changes, the Ninth Circuit held that the proposed warning label was not purely factual or uncontroversial. *Id.* Indeed, the Ninth Circuit concluded that *no* changes to the label could survive *Zauderer*, because they would "not change the fact that a deep scientific debate still exists." *Id.* at 1282.

Given HB25-1161's mandate that the Labeling Requirement must include "information on the [purported] health impacts of gas-fueled stoves," and the ongoing scientific debate regarding whether there are any health impacts associated with the use of gas stoves, there is no iteration of the website that can survive *Zauderer* and thus the Labeling Requirement is subject to strict scrutiny.

### B.  The HB25-1161 Labeling Requirement Is Also Subject to Strict Scrutiny Because It Compels Speech Based on Viewpoint.

Defendants' attempt to run from the actual Labeling Requirement—rather than seriously attempt to show there are "health impacts" from gas stoves—further demonstrates that decarbonization, not consumer health, is the motivation for HB25-1161. Consistent with messaging from decarbonization advocates, including those who testified for the bill, the public health justification for HB25-1161 is a pretext.[14] (*See, e.g.*, Duero, Ex. B at 19; *id.*, Ex. L at 6:27-7:12, 7:13-8:7, 9:19-25.)

Had public health been the motivation, the Labeling Requirement would (1) similar to Prop 65, apply to *all* products that emit pollutants, (2) expressly encourage ventilation for any product that emits pollutants; and (3) provide actual

---

[14] Tellingly, PSR focuses on "the climate crisis," "alternatives to reliance on fossil fuels," and "reduction of climate-harming emissions." *See* https://www. psrcolorado.org/. Also, although PSR holds itself out as a group of healthcare professionals, none of its members offered a declaration establishing any observed health impacts from gas stoves. One would expect healthcare experience to be PSR's focus, yet that aspect of PSR's membership is immaterial to its brief.

users—not just buyers—notice of the benefits of ventilation. HB25-1161's irrational targeting of gas stoves exposes its pretextual nature. *See Nat'l Inst. of Fam. & Life Advocs. v. Becerra ("NIFLA")*, 585 U.S. 755, 774-75 (2018) (underinclusiveness "demonstrates the disconnect between its stated purpose and its actual scope").

Defendants' suggestion that the Court disregard this evidence of pretext because the text of HB25-1161 and the Labeling Requirement are "silent on the topics of climate change and decarbonization" ignores the very definition of pretext. (State at 20-21.) The legislative testimony and circumstances surrounding HB25-1161's passage—combined with the State's refusal to scientifically support its purported public health justification—strongly support AHAM's contention that HB25-1161 compels speech based on viewpoint and is thus subject to strict scrutiny.

## III. NEITHER DEFENDANT CONTENDS HB25-1161 WITHSTANDS STRICT SCRUTINY, AND HB25-1161 FAILS EVEN *ZAUDERER*.

Defendants make no attempt to argue—let alone prove—that HB25-1161 can withstand strict scrutiny, despite their burden to do so. Contrary to Defendants' contention, HB25-1161 cannot withstand even the more deferential *Zauderer* review.

"Even under *Zauderer*, a disclosure requirement cannot be 'unjustified or unduly burdensome'" and must be reasonably related to the government's interest. *NIFLA*, 585 U.S. at 768-69. Defendants contend HB25-1161 is justified by the State's "substantial interest in protecting public health." (State at 27.) The State's public health interest, however, cannot be used to justify HB25-1161, because, as explained above, that rationale is a mere pretext for the actual motivation for the Labeling Requirement—decarbonization. Moreover, the Labeling Requirement, which is specific to gas stoves, is not reasonably related to or justified by the State's alleged public health interest, because Defendants have not made a credible showing that

there is any "health risk" or "impact" associated with gas stove use. Nor do Defendants substantively challenge Dr. Benson's conclusion that the vast majority of effect estimates fail to demonstrate a statistically significant association between gas stoves and health impacts. (Benson ¶¶ 60, 63.) Any harm the Labeling Requirement is allegedly meant to address is "purely hypothetical." *NIFLA*, 585 U.S. at 757.

Nor can Defendants prove the Labeling Requirement is not unduly burdensome. Contrary to the State's contention that "under-inclusivity is only relevant under strict scrutiny" (State at 28), the Supreme Court, in the context of *Zauderer*, has cautioned that laws that "cover[ ] a curiously narrow subset of speakers … run the risk that the State has left unburdened those speakers whose messages are in accord with its own views." *NIFLA*, 585 U.S. at 758. Such is the case here, where the State unfairly and irrationally targeted gas stoves.[15] The Labeling Requirement also is unduly burdensome, because "[i]t imposes a government-scripted, speaker-based disclosure requirement that is wholly disconnected from the State's [public health] interest." *NIFLA,* 585 U.S. at 758. Moreover, it compels far more speech than necessary—namely, not just a warning label but a detailed website that functions as a biased op-ed. At bottom, retailers are forced to promote the message that their products are dangerous. Nothing could be more burdensome.

There is no factual or legal support for the State's contention that the Labeling Requirement is not unduly burdensome because AHAM members purportedly "already make far more burdensome advisements" and remain free to speak their own message. (State at 29-30.) As demonstrated above, the Labeling Requirement is

---

[15] The risk of health impacts is equivalent between electric and gas stoves, and many household products emit higher levels of the pollutants identified on the CDPHE website than gas stoves. (Benson ¶ 13; Benson Reply ¶¶ 27-29, 41-43.)

substantively different and far more burdensome than other disclosure requirements, including because it requires endorsing a website the State can modify at any time without notice. (*See supra* § I.D.) Moreover, Courts have rejected the "suggestion that [a] warning does not violate the First Amendment because plaintiffs may provide their own additional information regarding [the warning]." *Nat'l Ass'n of Wheat Growers v. Zeise*, 2018 WL 3000488, at *3 n.5 (E.D. Cal. June 12, 2018).

Regardless of what standard of scrutiny applies, AHAM is likely to succeed on the merits of its First Amendment claim.

## IV. THE ADDITIONAL ARGUMENTS RAISED BY PSR—WITHOUT THE SUPPORT OF THE STATE—ARE WITHOUT MERIT.

PSR raises three arguments that are neither joined nor endorsed by the State. None has merit.

### A. HB25-1161 Is Not Government Speech.

The State does not dispute that the HB25-1161 website is part of the Labeling Requirement's compelled speech. (*See, e.g.*, State at 23-26.) Despite this concession, PSR implies the website may constitute *government* speech that is immune from First Amendment scrutiny. (PSR at 7.) The Court should not allow PSR to argue the website is "government speech" when the government itself makes no such argument. Regardless, PSR provides no authority for its position, which is obviously wrong. AHAM's members are compelled to disseminate the website directly to consumers. It is compelled speech, not "government" speech.

### B. *Central Hudson* Scrutiny Has No Application to Disclosure Requirements Like HB25-1161's Labeling Requirement, and, Regardless, HB25-1161 Fails Intermediate Scrutiny.

The State acknowledges intermediate scrutiny under *Central Hudson* "cannot apply." (State at 23 n.8.) PSR again takes a contrary position, arguing—without

binding authority—that intermediate, not strict, scrutiny applies if *Zauderer* is inapplicable. (PSR at 15.) PSR contends strict scrutiny would be "irrational" because it purportedly "ignor[es] the reason why commercial speech enjoys First Amendment protection to begin with—to increase the flow of truthful information to the marketplace." (*Id.* at 15.) This presumes, incorrectly, that the content is "truthful." Because the compelled speech fails *Zauderer*—*i.e.*, is not purely factual and uncontroversial—it must be subject to strict, not intermediate, scrutiny.

Even if intermediate scrutiny did apply, HB25-1161 cannot withstand it, for the same reasons it cannot withstand *Zauderer* scrutiny. (*Supra* § III.) In addition, the State, as other states have done, could educate gas-stove users about purported "health impacts" of gas stoves "without burdening a speaker with unwanted speech" by conducting its own "public-information campaign." *NIFLA*, 505 U.S. at 775.

### C. The Balance of Equities Do Not Weigh Against a Preliminary Injunction Where, as Here, The Moving Party Has Established a Likelihood of Success on a First Amendment Claim.

Finally, PSR argues the balance of equities weighs against a preliminary injunction. (PSR at 18-19.) PSR ignores that, where a party has successfully established a likelihood of success on a First Amendment claim, the remaining factors favor relief. (Motion at 29-30.) Nor does PSR cite any case in which a court found the other factors to weigh against a preliminary injunction where, as here, the moving party established a likelihood of success. *See Schrier v. Univ. of Co.*, 427 F.3d 1253, 1266 (10th Cir. 2005) (finding no "presumption of irreparable injury" because he "failed to demonstrate the requisite likelihood of success"); *Cooksey v. Futrell*, 2012 WL 3257811, at *4 (W.D.N.C. Aug. 8, 2012) (same).

### CONCLUSION

The Court should grant AHAM's requested preliminary injunction.

Dated: October 28, 2025          Respectfully submitted,

*s/ Frederick R. Yarger*
Frederick R. Yarger
Andrew M. Unthank
Herman J. Hoying
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile:  303.244.1879
Email: yarger@wtotrial.com
      unthank@wtotrial.com
      hoying@wtotrial.com

Attorneys for Plaintiff,
Association of Home Appliance
Manufacturers

**CERTIFICATION REGARDING NON-USE OF GENERATIVE AI**

Pursuant to Section C.2 of the Court's Standing Order for Civil Cases, Plaintiff Association of Home Appliance Manufacturers hereby CERTIFIES that no portion of this Reply in Support of Motion for Preliminary Injunction was drafted by generative AI.

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on October 28, 2025, I electronically filed the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Michael Landis**
  michael.landis@coag.gov

- **Peter G. Baumann**
  peter.baumann@coag.gov

- **Katherine M. Field**
  kate.field@coag.gov

- **Pawan Nelson**
  pawan.nelson@coag.gov

- **Jeffrey C. Parsons**
  jeff@parsonslawoffice.com

*s/ Frederick R. Yarger*