# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:25-cv-02417-SKC-KAS

ASSOCIATION OF HOME APPLIANCE MANUFACTURERS,

     Plaintiff,

v.

JILL HUNSAKER RYAN, Executive Director of the Colorado Department of Public
Health & Environment (CDPHE), in her official capacity;
JEFF LAWRENCE, Director of the Environmental Health and Sustainability
Division of the CDPHE, in his official capacity; and
PHIL WEISER, Colorado Attorney General, in his official capacity,

     Defendants.

v.

PHYSICIANS FOR SOCIAL RESPONSIBILITY COLORADO,

     Intervenor Defendant.

---

## ORDER GRANTING MOTION TO DISMISS (DKT. 31)

---

Before the Court is Jill Hunsaker Ryan and Jeff Lawrence's (the CDPHE
Defendants) Motion to Dismiss (Dkt. 31). The CDPHE Defendants assert that they
are entitled to sovereign immunity under the Eleventh Amendment. Dkt. 31, p.2.
Because the CDPHE Defendants do not have some connection with the enforcement
of Colorado HB25-1161 (HB25-1161 or the Act), they are entitled to sovereign
immunity. As such, the CDPHE Defendants' Motion to Dismiss is GRANTED.

## A. FACTUAL BACKGROUND

Plaintiff Association of Home Appliance Manufacturers (AHAM) is a "trade association whose members include manufacturers of gas and electric cooking products such as stoves, range hoods, and air cleaning appliances." Dkt. 3, ¶1. Plaintiff brought suit against the CDPHE Defendants and Phil Weiser, the Colorado Attorney General, in their official capacities, alleging that HB25-1161 violates its members' First Amendment rights to be free from unconstitutional compelled speech. *Id.* at ¶2.

Hb25-1161 requires two important things. First, it requires the CDPHE to "establish a page on the [CDPHE]'s public website with credible, evidence-based information on the health impacts of gas-fueled stoves." Colo. Rev. Stat. § 25-5-1602(4). Second, it requires retailers to place a label on gas-fueled stoves for sale in Colorado that says: "Understand the Air Quality Implications of Having an Indoor Gas Stove." *Id.* § 25-5-1602(1)(a). The label must also have a QR or other machine-readable code that links to the CDPHE website. *Id.* § 25-5-1602(1)(b). The labeling requirement is enforced through Colorado's Consumer Protection Act which lodges enforcement authority with the Colorado Attorney General, local district attorneys, and private citizens.  Dkt. 3, ¶54.

Plaintiff alleges the label requires its "members to disseminate and endorse a non-consensus, scientifically controversial, and factually misleading government mandated message." *Id.* at ¶2. Specifically, it says "[t]he content of the CDPHE-

created website that AHAM members are compelled to disseminate and tacitly endorse was developed at the sole discretion of the State." *Id.* at ¶3. With respect to the CDPHE Defendants, Plaintiff alleges that they "have oversight of the agency and division, respectively, responsible for developing . . . the specific content on the CDPHE webpage that AHAM members are required to publish and tacitly endorse every time they sell to consumers within the state."[1] *Id.* at ¶13. And "by forcing AHAM and its members to endorse a link to a government website . . . the labeling requirements *also* force AHAM to speak the messages included on those websites regardless of what they may say initially or over time." *Id.* at ¶100. Therefore, Plaintiff alleges there is a "bona fide and actual controversy between AHAM . . . and [the CDPHE Defendants], because [the CDPHE Defendants] are charged with developing the very speech AHAM will be compelled to endorse and publish."[2] *Id.* at ¶108. Plaintiff requests the Court "[i]ssue a permanent injunction enjoining [the CDPHE Defendants] and their employees, agents, and successors from publishing on the government website mandated by HB25-1161 any content that would mislead consumers." *Id.* at p.36.

---

[1] In contrast, Plaintiff alleges Phil Weiser "*enforces* the laws of the state of Colorado," and, should HB25-1161 go into effect, he will be tasked with enforcing it. Dkt. 3, ¶14 (emphasis added).

[2] Again, with respect to Phil Weiser, Plaintiff alleges there is a bona fide and actual controversy because "Defendant is charged with *enforcing* the labeling requirements, and has not expressed any intention not to do so, even though the Requirements violate the First Amendment." Dkt. 3, ¶107 (emphasis added).

## B. LEGAL PRINCIPLES

"The Eleventh Amendment constitutionalizes the doctrine of state sovereign immunity." *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 735 (10th Cir. 2024) (quoting *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021)). It states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The immunity applies not only to the states themselves, but also to suits against a state official in their official capacity. *Anderson*, 119 F.4th at 736 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

However, *Ex parte Young* created an exception to sovereign immunity whereby "individuals can sue state officers in their official capacities if the lawsuit seeks prospective relief for an ongoing violation of federal law." *Id.* at 736 (10th Cir. 2024) (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)). To fall within this exception, "the named state official 'must have some connection with the enforcement' of the challenged statute." *Hendrickson*, 992 F.3d at 965 (10th Cir. 2021) (quoting *Ex parte Young*, 209 U.S. at 157). While no "special connection" is required, a defendant must "have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) (citing *Ex parte Young*, 209 U.S. at 157). According to the Tenth Circuit, "enforce" means "to give effect." *Id.* at 828 n.15; *see also* Black's

Law Dictionary (12th ed. 2024) (defining "enforce" as "[t]o give force or effect to (a law, etc.); to compel obedience to."). Thus, "[a]n official enforces a law when they clearly assisted or currently assist in giving effect to the contested law." *Anderson*, 119 F.4th at 736 (cleaned up).

"[A]n assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court[.]" *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Thus, "such immunity constitutes a bar to the exercise of federal subject matter jurisdiction," and "the issue must be resolved before a court may address the merits of the underlying claim." *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000); *Joseph A. ex rel Wolfe v. Ingram*, 275 F.3d 1253, 1259 (10th Cir. 2002).

A motion to dismiss based on sovereign immunity may come in one of two forms: (1) a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, or (2) a challenge to the facts upon which subject matter jurisdiction rests. *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (citing *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1303 (10th Cir. 2001)). The CPDHE Defendants make a facial attack on the Complaint, thus this Court "must accept the allegations in the complaint as true." *Id.* at 1205-06; *see also* Dkt. 31, p.5. However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Peterson*, 707 F.3d at 1206 (*Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## C. ANALYSIS

The CDPHE Defendants argue that they are entitled to sovereign immunity "because they are not involved in the enforcement of the challenged law." Dkt. 31, p.7. They point to the Act itself, which "explicitly lodges enforcement authority with the Attorney General, local district attorneys, and private parties under the CCPA." *Id.* at p.8. They also argue the labeling requirement that binds Plaintiff is distinct from their obligation to create the website. Dkt. 40, p.2. For its part, Plaintiff argues the CDPHE Defendants are "solely responsible for enforcing—*i.e.*, giving effect to—a key portion of HB25-1161 by creating, publishing, and maintaining the content of the HB25-1161 website that AHAM's members are required to disseminate and tacitly endorse." Dkt. 34, ECF p.9. Plaintiff relies heavily on the Tenth Circuit's opinion in *Wagnon*, *supra*, for its position.

In *Wagnon*, the plaintiff, the Prairie Band Potawatomi Nation (Nation), sued Kansas's Secretary of Revenue, Director of Vehicles, and Superintendent of Highway Patrol, seeking to enjoin the state's practice of refusing to recognize the Nation's vehicle registrations and titles outside of the reservation. 476 F.3d at 820. The Court found:

> Defendant Walker, as Director of Vehicles, manages vehicle registrations and titles and supervises vehicle reciprocity; Defendant Wagnon, as the Secretary of Revenue, is the State official—in connection with Defendant Walker—who decided to deny the validity of the Tribe's registrations; and Defendant Seck, as Superintendent of the Kansas Highway Patrol, enforces traffic and other laws of the State related to

highways, vehicles, and drivers of vehicles. This satisfies the "some
connection" requirement of *Ex parte Young*.

*Id.* at 828.

In a case decided after *Wagnon*, a plaintiff sued the Attorney General of Utah
and the Commissioner of the Utah Department of Public Safety to stop enforcement
of a Utah law that required certain commercial entities to verify the age of users
seeking to access online material harmful to minors. *Anderson*, 119 F.4th at 734 (10th
Cir. 2024). The Court held the Commissioner's management of Utah's Mobile Driver's
License (mDL) program was "far more attenuated than the enforcement connections"
in *Wagnon*, and while "the Commissioner's mDL program may (eventually) offer one
convenient way to verify a user's age for purposes of complying with the Act . . . it
does not amount to 'a particular duty to enforce the statute in question.'" *Id.* at 738
(citing *Ex parte Young*, 209 U.S. at 157).

Based on the Tenth Circuit precedent discussed above, the Court finds that the
CDPHE Defendants do not have "some connection with the enforcement" of HB25-
1161; thus, the *Ex parte Young* exception does not apply. *Hendrickson*, 992 F.3d at
965 (10th Cir. 2021) (quoting *Ex parte Young*, 209 U.S. at 157). Based on the
allegations in the Complaint, it is clear Plaintiff's challenge to HB25-1161 is to its
labeling requirement—not to CDPHE's maintenance of the related website. To be
sure, Plaintiff even states that "an injunction would not prohibit CDPHE from
engaging in pure government speech on this topic—e.g., publishing a website
independent of the labeling requirements of HB25-1161, as other states have done."

Dkt. 34, ECF p.18. Therefore, the Court's discussion must focus on whether the CDPHE Defendants have some connection with the "enforcement" of the labeling requirement.

The CDPHE Defendants do not have enforcement authority over the Act; the enforcement of HB25-1161 is explicitly lodged with the Attorney General, local district attorneys, and private citizens. *See Peterson*, 707 F.3d at 1207 ("[W]hen a state law explicitly empowers one set of officials to enforce its terms, a plaintiff cannot sue a different official absent some evidence that the defendant is connected to the enforcement of the challenged law.") *see also Chamber of Com. of the U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010) (refusing to apply *Ex parte Young* exception where plaintiff failed to cite any law authorizing the Attorney General to enforce the specific provision being challenged).   To be sure, the Complaint does not allege the CDPHE Defendants have any authority to enforce the law by bringing a lawsuit against AHAM or any of its members. In contrast, the Complaint does note that the Attorney General of Colorado has enforcement authority. *See supra*, n.1, 2.

Further, the CDPHE Defendants do not give effect to the complained of provision at issue—the labeling requirement. But the website is independent of the labeling requirement placed on retailers under the Act. Retailers have a duty under the Act to include the label and QR code on the gas-fueled stoves they sell in Colorado, while the CDPHE Defendants only have the ministerial role of creating the website that the label itself directs consumers to. That the duties of Plaintiff and the CDPHE

Defendants come from the same statute does not, without more, implicate the CDPHE Defendants in enforcement of the Act.

Plaintiff does not challenge the website as violative of the First Amendment on its own. Instead, it challenges the fact that it has to disseminate the message by including a link to the website on the label. This is the crux of the issue: the portion of the Act that applies to Plaintiff is the label requirement, and the CDPHE Defendants have no connection to the enforcement of that provision. By comparison, the defendants in *Wagnon* had enforcement authority because their decisions directly impacted the plaintiff's compliance with the law at issue, despite not being specifically empowered to ensure compliance. 476 F.3d at 828. For example, two of the defendants made the decision to deny the validity of the plaintiff's registration, which meant plaintiff would be in violation of the challenged statute. *Id.* Here, Plaintiff's compliance with the labeling requirement is not affected by any action the CDPHE Defendants could take. Instead, the CDPHE Defendants are merely complying with the Act themselves. *See Cressman v. Thompson*, 719 F.3d 1139, 1146 (10th Cir. 2013) ("[T]he authority to interpret and administer a statute is not the same as the authority to *enforce* a statute."). And while the CDPHE Defendants are required by the Act to create the website, this requirement is attenuated from the enforcement of the labeling requirement. *See Anderson*, 119 F.4th at 738.

The relief Plaintiff seeks against the CDPHE Defendants also points to their lack of enforcement authority. Plaintiff seeks a permanent injunction enjoining the

CDPHE Defendants from publishing any content on the website that would "mislead consumers." Dkt. 3, p.36. As evidenced by this lawsuit, what Plaintiff and the CDPHE Defendants consider misleading is not the same. In essence, Plaintiff seeks to moderate the content on a website created and published by the government. The Court cannot see how this relates in any way to the enforcement of the labeling requirement as against Plaintiff.[3] This is further evidence that the CDPHE Defendants do not have a connection to the enforcement of the Act.

The Eleventh Amendment bars lawsuits against a state official acting in his or her official capacity unless the official has "some connection with the enforcement" of the challenged law. *Hendrickson*, 992 F.3d at 965. The CDPHE Defendants do not have the requisite connection because they do not give effect to HB25-1161; they are simply complying with their statutory obligation to create a website. The CDPHE Defendants' obligation to create a website does not affect Plaintiff's separate duty to put a label on gas-fueled stoves in the state of Colorado. Accordingly, taking the allegations in the Complaint as true, the CDPHE Defendants are entitled to sovereign immunity and the case against them is dismissed for lack of subject matter jurisdiction.

\*       \*       \*

---

[3] If anything, Plaintiff's requested relief would in turn compel the CDPHE to speak a message with which it does not agree.

For the reasons shared above, the CDPHE Defendants' Motion to Dismiss (Dkt. 31) is GRANTED.

Dated: November 25, 2025

BY THE COURT:

S. Kato Crews
United State District Judge