IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:25-cv-02417-SKC-KAS

ASSOCIATION OF HOME APPLIANCE MANUFACTURERS,

      Plaintiff,

v.

PHIL WEISER, Colorado Attorney General, in his official capacity,

      Defendant,

v.

PHYSICIANS FOR SOCIAL RESPONSIBILITY COLORADO,

      Intervenor Defendant.

---

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION (DKT. 27)

---

      Before the Court is Plaintiff Association of Home Appliance Manufacturers' (AHAM) Motion for Preliminary Injunction (Dkt. 27). The Court has determined that oral argument will not materially assist in ruling on the Motion.

      After careful consideration and review of the briefing and evidence, the Court has determined that AHAM is likely to succeed on the merits of its First Amendment claim. The Court is also satisfied that the other preliminary injunction factors are met. Accordingly, for the reasons shared below, Plaintiff's Motion for Preliminary Injunction is GRANTED.

## A. FACTS PERTINENT TO THE MOTION

The Court's jurisdiction arises under 28 U.S.C. §§ 1331 and 1343(a). Plaintiff is a "trade association whose members include manufacturers of gas and electric cooking products such as stoves, range hoods, and air cleaning appliances." Dkt. 3, ¶1. Plaintiff brought suit against employees of the Colorado Department of Public Health & Environment (CDPHE) and Phil Weiser, in his official capacity as Colorado Attorney General. This Court dismissed the CDPHE Defendants in a prior order because they were entitled to sovereign immunity. *See* Dkt. 49.

Plaintiff "brings this lawsuit to protect its members' First Amendment rights to be free from unconstitutional compelled speech" mandated by Colorado House Bill 25-1161 (HB25-1161 or the Act). *Id.* at ¶2. The Act requires retailers to place a yellow adhesive label on the display model for gas-fueled stoves that says: "Understand the Air Quality Implications of Having an Indoor Gas Stove." Colo. Rev. Stat. § 25-5-1602(1)(a). The content of the label must also be posted on internet sites where the online sale of a gas-fueled stove in Colorado occurs. *Id.* at § 25-5-1602(3). In addition to the above text, the label must also include a website link or QR code to a webpage established by the CDPHE. *Id.* at § 25-5-1602(1)(b).

With respect to the webpage, the Act requires the CDPHE to "establish a page on the [CDPHE's] public website with credible, evidence-based information on the health impacts of gas -fueled stoves." *Id.* at § 25-5-1602(4). The CDPHE complied with

its obligation under the Act and created the webpage, which was published on August 4, 2025.[1] Dkt. 3, ¶85.

The webpage itself, titled "Credible, Evidence-Based Information on the Health Impacts of Gas-Fueled Stoves," contains approximately two pages of substantive information, as well as footnotes and a bibliography of relied upon sources. *See* Dkt. 27-2. In a section entitled "Health Impacts from Indoor Air Pollution with Gas Stoves," the webpage reports:

> [Health impacts] [c]an include headaches, nausea, eye, nose, or throat irritation, respiratory symptoms, and worsening asthma symptoms[, and] [b]reathing high levels of indoor air pollution associated with gas stoves and other sources, breathing it more frequently, or over long periods of time, can increase the risk of developing chronic heart and lung diseases, asthma, impacts to the immune system, and some cancers, such as leukemia, or cancers of the nose and throat.

*Id.*

The claim that health impacts "can include headaches, nausea, eye, nose, or throat irritation, respiratory symptoms, and worsening asthma symptoms" is supported by an EPA article titled "Introduction to Indoor Air Quality" and the bibliography, which contains 17 sources. *Id.* The EPA article states that "[w]hile pollutants commonly found in indoor air can cause many harmful effects, there is considerable uncertainty about what concentrations or periods of exposure are necessary to produce specific health problems." Dkt. 27-50, ¶58. The claim that gas-

---

[1] The website was published without opportunity "for public comment or stakeholder input." Dkt. 3, ¶85.

fueled stoves can "increase the risk of developing chronic heart and lung diseases, asthma, impacts to the immune system, and some cancers, such as leukemia, or cancers of the nose and throat" is supported by the bibliography, an EPA article titled "Benzene," and an article titled "Public Health Statement Formaldehyde" by the Agency for Toxic Substances and Disease Registry. Dkt. 27-2. These articles are generic information sheets for benzene and formaldehyde and do not explicitly reference gas-fueled stoves. *See* Dkt. 39-3; Dkt. 39-4. Additionally, "[t]he benzene fact sheet does not include cooking with natural gas as a source of exposure" and only states that "an increased risk of leukemia is observed in humans *occupationally* exposed to benzene." Dkt. 27-50, ¶50 (emphases added).

Plaintiff's expert, Dr. Stacey Benson, submitted a supplemental declaration concerning her analysis of the content and sources on the CDPHE webpage.[2] Dkt. 27-50, ¶1. She noted that "only two of the provided citations are scientific research articles published in the peer-reviewed literature," and there were no citations to any epidemiological evidence regarding the health effects of cooking with gas-fueled stoves. *Id.* at ¶¶3-4.

## B. LEGAL PRINCIPLES

Injunctive relief is an extraordinary remedy which should only be granted when the moving party clearly and unequivocally demonstrates its necessity. *See*

---

[2] Intervenor Defendant submitted two expert reports to rebut Dr. Benson. Their reports are discussed below.

*Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Granting such "drastic relief" is the exception rather than the rule. *United States ex rel Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989); *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984). In the Tenth Circuit, a party requesting injunctive relief must clearly establish (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction would not be adverse to the public interest; and (4) a substantial likelihood of success on the merits. *Enter. Mgmt. Consultants, Inc.*, 883 F.2d at 889.

If the injunction sought is of the "disfavored" variety, the moving party must make an especially "strong showing" that the likelihood of success and balance of harms weigh in its favor. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019); *see also O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). Neither Defendant nor Intervenor Defendant argue the injunction sought here is the disfavored variety. Nor does the Court find it so.

## C. ANALYSIS & FINDINGS

### 1.   There is a Substantial Likelihood of Success on the Merits

Plaintiff and Defendant agree that HB25-1161's labeling requirement implicates the First Amendment but disagree on the level of scrutiny the Court

5

should apply when examining that claim. Plaintiff argues strict scrutiny applies because the labeling requirement does not regulate commercial speech, is not purely factual or uncontroversial, and "compels speech on the basis of viewpoint." Dkt. 27, ECF pp.18, 29. Defendant argues the labeling requirement is subject to deferential review under *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 637 (1985), because the labeling requirement regulates commercial speech and is purely factual and uncontroversial. Dkt. 39, ECF pp.17-26.

Intervenor Defendant argues the First Amendment does not apply because the labeling requirement is government speech.[3] Dkt. 41, ECF pp.7-9. Should the First Amendment apply, Intervenor Defendant agrees with Defendant that *Zauderer* scrutiny should be used. *Id.* at ECF pp.9-10. Finally, Intervenor Defendant argues

---

[3] The Court disagrees with Intervenor Defendant. As support for its assertion, Intervenor Defendant cites *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006). In *Rumsfeld*, the Court considered whether the Solomon Amendment, which required the Department of Defense to deny federal funding to institutions of higher education that prohibited military representatives access to and assistance for recruiting purposes, violated the First Amendment. *Rumsfeld*, 547 U.S. at 51. The Court held that the compelled speech was not subject to First Amendment scrutiny because the Solomon Amendment did "not dictate the content of the speech at all, which is only 'compelled' if, and to the extent, the school provides such speech for other recruiters." *Id.* at 62. *Rumsfeld* is inapplicable to the current circumstance. HB25-1161 does in fact dictate the speech at issue here, and it is not compelled only in certain situations. The law requires specific wording as well as a link to a website that Plaintiff had no say in creating. *See* Dkt. 3, ¶85. Further, there is no indication on the label itself that anyone other than AHAM's members are speaking. Even if someone clicks on the QR code and is led to the webpage, the average consumer is likely to think that AHAM's members endorse the speech contained on the webpage because it is on their product. Accordingly, the speech at issue here is not government speech.

that if *Zauderer* does not apply, this Court should fall back to intermediate scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980). *Id.* at ECF p.15.

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'" *All. of Health Care Sharing Ministries v. Conway*, No. 24-cv-01386-GPG-STV, 2025 WL 315389, at *28 (D. Colo. Jan. 13, 2025) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). It protects both the right to speak freely and right to refrain from speaking. *Id.* (quoting *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)). To determine whether a law violates the First Amendment, courts "distinguish between content-based and content-neutral regulations of speech." *NetChoice v. Weiser*, No. 25-cv-2538-WJM-KAS, 2025 WL 3101019, at *7 (D. Colo. Nov. 6, 2025) (quoting *Vidal v. Elster*, 602 U.S. 286, 292 (2024)). A regulation is content-based when it targets speech based on its communicative content, "restricting discussion of a subject matter or topic." *Id.* (citing *Reed*, 576 U.S. at 163). In addition, "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech" and is content-based. *Riley v. Nat'l Fed'n of the Blind of N.C.*, Inc., 487 U.S. 781, 795 (1988). In general, content-based regulations are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018) (quoting *Reed*, 576 U.S. at 163).

There are two circumstances, however, in which courts will apply less exacting scrutiny to content-based regulations of "commercial speech." First, the court applies intermediate scrutiny to restrictions on commercial speech analyzing them under the framework announced in *Central Hudson*. *See Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995). Second, if the law "imposes only a disclosure requirement rather than an affirmative limitation on [commercial] speech," the court applies the less exacting scrutiny set out in *Zauderer*. *See Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 230 (2010). Accordingly, this Court must first determine whether HB25-1161's labeling requirement qualifies as commercial speech.

### a. The Labeling Requirement Regulates Commercial Speech

Plaintiff argues "HB25-1161's labeling requirement, which compels retailers and manufacturers to endorse and propagate a State website disconnected from any specific product or any proposed commercial transaction, neither proposes a transaction nor advertises a product," and thus is not commercial speech. Dkt. 27, ECF p.30. Defendant argues the labeling requirement is commercial speech because it is "concededly an advertisement," "refers to a specific product," and "is motivated by an economic interest in selling the product." Dkt. 39, ECF pp.19-20. Intervenor Defendant believes that Defendant "convincingly" demonstrated the labeling requirement is commercial speech and made no argument of its own. Dkt. 41, ECF pp. 14-15.

Commercial speech is speech that does nothing more than "propose a commercial transaction." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993). Or, as the Supreme Court put it in *Central Hudson*, commercial speech is an "expression related solely to the economic interests of the speaker and its audience." *Central Hudson*, 447 U.S. at 561 (citing *Va. Pharmacy Bd. v. Va. Citizens Consumer Council*, 425 U.S. 748, 762 (1976)). The commercial speech analysis is fact driven due to the inherent difficulty of drawing bright lines that will clearly cabin commercial speech in a distinct category. *Weiser*, 2025 WL 3101019, at *7 (quoting *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1272 (9th Cir. 2017)). Thus, courts should engage in a common-sense analysis to distinguish between commercial and non-commercial speech. *United States v. Wegner*, 427 F.3d 840, 846 (10th Cir. 2005).

The Supreme Court has considered several factors to determine whether speech is commercial, including: (1) whether the speech is concededly an advertisement, (2) whether the speech references a specific product, and (3) whether the speaker has an economic motivation for the speech. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983). However, "[n]o single formulaic test can be applied to the question of whether certain speech falls within the rubric of commercial speech." *Wegner*, 427 F.3d at 847; *see also Bolger*, 463 U.S. at 67 n.14 ("[W]e [do not] mean to suggest that each of the characteristics present in this case must necessarily be present in order for speech to be commercial.").

9

In *Maryland Shall Issue, Inc. v. Anne Arundel County Maryland*, a county ordinance required businesses that sold guns or ammunition to distribute a pamphlet to purchasers related to gun safety, training, suicide prevention, mental health, and conflict resolution. 91 F.4th 238, 242 (4th Cir. 2024). The court determined that the pamphlet was commercial speech because it had to be displayed at the point of sale, "[t]hus, it is facially apparent that the required disclosures are a safety advisory linked to the sales of guns and ammunition, which are commercial transactions." *Id.* at 248. The court stated:

> [S]peech connected with the sale of a good or service—promoting the product or service, explaining it, or giving warnings about it—is commercial; it serves either the interest of the seller or "assists consumers and furthers the societal interest." Thus, while commercial speech includes speech proposing a commercial transaction, it also includes the advertising and promotion of products and services, assembly or user instructions, information about the product or service, disclaimers, and warnings on health and safety.

*Id.* (internal citations omitted).

Other courts have followed the reasoning in *Maryland Shall Issue* and considered labels on products as commercial speech (whether explicitly or implicitly) by simply moving forward with an analysis of the speech under *Zauderer*. *See Am. Beverage Ass'n v. City and Cnty. of San Francisco*, 916 F.3d 749, 756-57 (9th Cir. 2019) (applying *Zauderer* to ordinance requiring sugar sweetened beverages to include a warning label on effects of drinking sugary beverages); *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 22-23 (D.C. Cir. 2014) (applying *Zauderer* to secretary of agriculture mandate that meat products disclose country of origin

information); *Wegner*, 427 F.3d at 847 (10th Cir. 2005) (requirement that person touting stock for compensation disclose fact and amount of payment regulated commercial speech); *N.Y. State Restaurant Ass'n v. N.Y. City Bd. of Health*, No. 08 Civ 1000(RJH), 2008 WL 1752455, at *6 (S.D.N.Y. Apr. 16, 2008) (mandatory disclosure of nutrition information on menus was squarely within definition of commercial speech); *Upton's Naturals Co. v. Stitt*, No. CIV-20-938-F, 2020 WL 6808784, at *2 (W.D. Okla. Nov. 19, 2020) (law requiring sellers of plant based foods from using meat terms to describe their foods unless they have a disclaimer that their products are plant based applied *Zauderer* scrutiny); *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1275 (9th Cir. 2023) (labels required by California's Proposition 65 are commercial speech).

Here, the Court finds the labeling requirement is commercial speech. Similar to the above cases, HB25-1161 requires AHAM's constituent members to have a label on gas-fueled stoves at the point of sale, whether on a display model or on a website where the sale of gas-fueled stoves occurs. Colo. Rev. Stat. § 25-5-1602(2), (3). The purpose of a display model or a posting of a gas-fueled stove on a website is to advertise the stove for sale. Using the common-sense analysis prescribed by the courts, this Court considers the labeling requirement to be commercial speech.

The *Bolger* factors, while less instructive, can still be applied in this case.[4] As stated above, by placing a stove on a website or a display model in a store, it is clearly AHAM's (or its members') intent to sell the product and advertise it for sale. Further, the text of the compelled speech here references "indoor gas stove[s]" specifically. *Id.* at § 25-5-1602(1)(a). And contrary to Plaintiff's contention, the CDPHE webpage also explicitly references gas-fueled stoves. *See* Dkt. 27-2. Lastly, AHAM has an economic motivation for its speech, *i.e.*, to sell gas-fueled stoves. Accordingly, under a common-sense analysis and looking to the *Bolger* factors, the labeling requirement pursuant to HB25-1161 is commercial speech.

### b. Neither *Central Hudson* nor *Zauderer* Apply

Because the labeling requirement is commercial speech, the Court next must determine whether either *Central Hudson* or *Zauderer* applies. If neither applies, the Court will analyze the labeling requirement under strict scrutiny. Plaintiff argues

---

[4] Plaintiff filed a Notice of Supplemental Authority directing the Court to *Weiser*. Dkt. 45. In that case, the court considered whether a Colorado law that required social media platforms covered by the law to provide peer-reviewed information to minors about the impact of social media on the developing brain and the mental and physical health of users was commercial speech. *Weiser*, 2025 WL 3101019, at *2. "[T]he disclosures compelled by the Act require social media companies to opine on the impacts of social media use on minors' mental and physical health." *Id.* at *8. Based on this, the court was "hard-pressed to conclude that such opinions do not pertain to expressive issues of significant social, political, and scientific concern—and not matters of commercial character." *Id.* In contrast, the labeling requirement here relates to a commercial transaction—the sale of gas-fueled stoves. Thus, the Court is not persuaded that the outcome here should be the same as in *Weiser*. Additionally, based on persuasive authority from other circuits, point-of-sale advertisements and warnings fall under the category of commercial speech.

intermediate scrutiny does not apply because *Central Hudson* only applies to speech restrictions and not compulsions. Dkt. 27, ECF p.29. Defendant agrees. Dkt. 39, ECF p.23 n.8 ("The parties' only dispute is whether *Zauderer* or strict scrutiny applies."). Intervenor Defendant argues that *Central Hudson* should be the fallback test if *Zauderer* does not apply. Dkt. 41, ECF pp.14-15.

The Court agrees with Plaintiff and Defendant. The sole focus of *Central Hudson* is on *restrictions* of commercial speech. *Central Hudson*, 447 U.S. at 571-72 ("When, however, such action involves the suppression of speech, the First and Fourteenth Amendments require that the restrictions be no more extensive than is necessary to serve the state interest."). The Supreme Court has noted this distinction in a case decided after *Central Hudson*. *See Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457, 474 n.18 (1997) ("The Court of Appeals fails to explain why the *Central Hudson* test, which involved a restriction on commercial speech, should govern a case involving the compelled funding of speech."). A court in this district has also made the distinction. *See Conway*, 2025 WL 315389, at *28 ("[L]aws restricting commercial speech generally need only survive intermediate scrutiny . . . [m]eanwhile, laws that compel commercial speech" are subject to the *Zauderer* standard.). Accordingly, *Central Hudson* does not apply.[5]

---

[5] Courts in the Ninth Circuit have applied *Central Hudson* if the compelled commercial speech fails to meet the requirements of *Zauderer*. *See Bonta*, 85 F.4th at 1282. However, the Court is not aware of any Tenth Circuit precedent on the issue, and given the Supreme Court's language, this Court declines to apply *Central Hudson* since the case here involves compelled commercial speech.

The Court next considers whether *Zauderer* applies. Under *Zauderer*, compelled disclosures that are "purely factual and uncontroversial" should be upheld unless they are "unjustified or unduly burdensome." *Becerra*, 585 U.S. at 768 (citing *Zauderer*, 471 U.S. at 651). Neither the Supreme Court nor the Tenth Circuit have elaborated on what it means to be "purely factual and uncontroversial." Therefore, this Court looks to other circuits to help elucidate the meaning.

"Information that is purely factual is necessarily 'factually accurate,' but that alone is not enough to qualify for the *Zauderer* exception." *Bonta*, 85 F.4th at 1276 (citing *Am. Beverage Ass'n*, 916 F.3d at 757). Thus, a statement is purely factual if it is both (1) factually accurate and (2) not so misleading as to render an otherwise factually accurate statement untrue. *Id.* To determine whether something is factual, courts take a sentence-by-sentence approach but still consider whether the totality of the disclosure is misleading. *CTIA – The Wireless Ass'n v. City of Berkeley, Cali.*, 928 F.3d 832, 846-47 (9th Cir. 2019).

A compelled disclosure can be either subjectively controversial or objectively controversial. To determine whether something is subjectively controversial, courts should consider the topic of the disclosure and its effect on the speaker. *Bonta*, 85 F.4th at 1277. Thus, something can be controversial if it forces someone to "convey a message fundamentally at odds with its mission." *Id.* A statement is objectively controversial if there is "robust disagreement by reputable scientific sources" as to the certainty of the statement. *Id.* (citing *Cal. Chamber of Com. v. Council for Educ.*

14

*and Rsch. on Toxics*, 29 F.4th 468, 478 (9th Cir. 2022)). Accordingly, when there is
"robust disagreement by reputable scientific sources" over a health warning,
compelling the seller of a product to provide that warning is objectively controversial.
*See Cal. Chamber of Com.*, 29 F.4th at 478. In summary, "[a] compelled statement is
'uncontroversial' for purposes of *Zauderer* where the truth of the statement is not
subject to good-faith scientific or evidentiary dispute and where the statement is not
an integral part of a live, contentious political or moral debate." *Free Speech Coal.,
Inc. v. Paxton*, 95 F.4th 263, 281-82 (5th Cir. 2024).

The Court will address whether the labeling requirement is uncontroversial
first. Because the Court finds that the labeling requirement is controversial, it need
not address whether the labeling requirement is purely factual.[6] Plaintiff argues the
disclosure requirement is controversial because (1) there is no scientific consensus
that using gas stoves is associated with or causes any health impacts, (2) it forces
AHAM to convey a message fundamentally at odds with its business, and (3) it
requires affected sellers to take sides in a heated political controversy regarding
climate change. Dkt. 27, ECF pp.32-33. Defendant argues that the statements are
uncontroversial because they are factually accurate and supported by citations to
relevant authority. Dkt. 39, ECF p.23. As support for this proposition, Defendant

---

[6] Even still, the Court is concerned that the statements on the webpage about health
impacts are so misleading as to render an otherwise factually accurate statement
untrue. Accordingly, the labeling requirement likely would also not meet the "purely
factual" requirement under *Zauderer*.

provides a chart in its briefing with relevant citations for each statement made on the website. *Id.* at ECF pp. 15-17. Intervenor Defendant argues "[t]he science supports the uncontroversial conclusion that the pollutants emitted from gas stoves are associated with adverse health impacts." Dkt. 41, ECF p.13.

Based on the evidence before it, the Court concludes the labeling requirement is objectively controversial. HB25-1161 is objectively controversial because there is robust disagreement by scientific sources concerning the validity of the statements contained on the CDPHE webpage, which AHAM's members must provide a link to on the label. Plaintiff's expert, Dr. Benson, conducted an extensive review of the epidemiological evidence evaluating cooking with natural gas and adverse health effects. Dkt. 27-3, ¶¶23-24. She applied the Bradford Hill guidelines, which are a set of criteria that were established "to provide structure to the assessment for the presence of a causal relationship between an exposure and a health outcome." *Id.* at ¶ 25. After a thorough discussion of the available studies, she concluded that the epidemiological evidence reviewed does not support a causal association between cooking with natural gas and birth outcomes, cancer endpoints, cardiovascular endpoints, or respiratory endpoints. *Id.* at ¶ 10 ("Based on established scientific principles, there is no scientific consensus that using gas stoves for home cooking is associated with or causes any health impacts or effects.").

Defendant does not attack Dr. Benson's conclusions. Instead, Defendant argues that "AHAM and its expert attack language that does not exist" and that the

website does not "claim that gas stoves 'cause' health impacts." Dkt. 39, ECF p.24. Defendant asserts that the website contains only factual information with citation to sources. *Id.* at ECF p.23; *see also* ECF pp. 15-17.

But in fact, the webpage claims a myriad of health impacts are linked to gas stoves. Dkt. 27-2. The Court is not persuaded by Defendant's argument that because the webpage does not claim that gas-fueled stoves "cause" negative health outcomes there is no problem with suggesting that they might "increase the risk of . . . leukemia." *Id.* Whether gas-fueled stoves "cause" or "increase the risk of" certain health impacts, the statements must be supported by scientific evidence. And as discussed below, the Court finds the labeling requirement is objectively controversial because there is, at a minimum, robust disagreement between scientific sources concerning whether gas-fueled stoves cause or increase the risk of negative health outcomes.

Dr. Benson's expert report concludes that the current scientific literature does not support a causal relationship between gas-fueled stoves and adverse health effects. Dkt. 27-3, ¶10. While the CDPHE webpage cites relevant authority for its claims, those claims appear to be the minority view at best, and based on outdated information at worst. *See generally* Dkt. 27-50; *see also Cal. Chamber of Com.*, 29 F.4th at (finding safe harbor warning controversial where it elevated "one side of a legitimately unresolved scientific debate"). To be sure, the labeling requirement does not need to support the minority view to be considered controversial; the matter need

only be subject to a good faith scientific dispute. In addition, "[f]rom the standpoint of an average consumer, saying that something is carcinogenic or has serious deleterious health effects—without a strong scientific consensus that it does— remains controversial." *Bonta*, 85 F.4th at 1278. Based on the evidence before the Court, the compelled speech in this case is controversial. Even Defendant nearly concedes the point when arguing that "[a]lthough there is consensus that indoor air pollutants, including those released from gas stoves, are responsible for harmful effects, there is less consensus about the specific concentrations or periods of exposure necessary to contribute to individual health outcomes." Dkt, 39, ECF p.9.

Intervenor Defendant retained two experts to rebut Dr. Benson—Dr. Michael Johnson and Dr. Jennifer L. Peel. Dkt. 41-1; Dkt. 41-2. Dr. Johnson opines that "emissions from gas stoves result in elevated indoor pollutant concentrations." Dkt. 41-1, ¶10. But all Dr. Johnson's report does is this. It does not connect the "elevated indoor pollutant concentrations" to concrete health impacts. Consequently, his report does nothing to support the argument that the labeling requirement is uncontroversial.

Dr. Peel concludes "[t]here is a broad scientific consensus, supported by a robust evidence base, that the air pollutants emitted from gas cooking, specifically nitrogen oxides, carbon monoxide, formaldehyde, and benzene, are linked to adverse health effects," and that, based on this evidence, "scientific and other entities currently provide recommendations related to use of gas stoves, including proper

installation, ventilation, and use of air cleaners." Dkt. 41-2, ¶¶10-11. However, the CDPHE webpage goes beyond simply recommending people properly install and ventilate their gas-fueled stoves. It purports a myriad of "Health Impacts from Indoor Air Pollution with Gas Stoves," which include asthma and leukemia. Dkt. 27-2. And whether the amount of air pollutants emitted by gas-fueled stoves is enough to contribute to individual health outcomes is not clear. Dkt. 39, ECF p.9; *see also* Dkt. 27-50, ¶50. Further, the "Benzene" webpage that Defendant uses as evidence refers to the dangers of benzene at "occupational" levels, which is not the same level of exposure as someone cooking with a gas-fueled stove. *Id.* Even taking Dr. Peel's conclusions as true, this only creates a robust scientific debate. It does not invalidate Dr. Benson's conclusions that there is evidence to suggest no causal relationship between adverse health outcomes and gas-fueled stoves. And a robust scientific debate, like this one, means that a disclosure is objectively controversial.

For these reasons, the Court finds the labeling requirement is controversial and thus fails to meet the requirements under *Zauderer*. As the Court stated above, *Central Hudson* does not apply, so this Court will next determine whether the labeling requirement meets strict scrutiny. For the reasons below, it does not.

### c.  The Labeling Requirement does not Satisfy Strict Scrutiny

As an initial matter, the labeling requirement is a content-based regulation because it compels "individuals to speak a particular message." *Becerra*, 585 U.S. at 766 (citing *Riley v. Nat'l Fed'n of Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988)). The

labeling requirement necessarily alters the content of AHAM's speech. *Id.* Thus, the labeling requirement is "presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve compelling state interests." *Id.* (citing *Reed*, 576 U.S. at 163). "The State must specifically identify an 'actual problem in need of solving . . . and the curtailment of free speech must actually be necessary to the solution." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011) (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992)). Strict scrutiny is a demanding test, and the Supreme Court has "only once [held] that a law triggered but satisfied strict scrutiny" in the First Amendment context. *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 484 (2025) (citing *Holder v. Humanitarian L. Project*, 561 U.S. 1, 27-39 (2010)).

Notably, neither Defendant nor Intervenor Defendant assert that the labeling requirement would pass strict scrutiny. Defendant does, however, assert the State has an interest in public health. *See* Dkt. 39, ECF p.27. Specifically, Defendant asserts Colorado has an "interest in protecting public health by ensuring members of the public are educated about issues affecting indoor air quality." *Id.*

Plaintiff argues that "HB25-1161 compels speech on the basis of viewpoint" and forces AHAM's members to express the "State's view as to two ideological debates: (1) that using gas stoves 'contributes to climate change' and (2) that, to promote decarbonization, consumers should be dissuaded from purchasing gas-fueled stoves." Dkt. 27, ECF pp.25-26. Accordingly, Plaintiff argues that Defendant's

purported interest in public health is pretextual and cannot meet strict scrutiny. *Id.* at ECF pp.26-27. As evidence of pretext, Plaintiff points to hearing testimony from sponsors and witnesses who represented that the goal of the bill was actually to encourage people to stop using gas-fueled stoves for climate change reasons. *Id.* at ECF pp.23-26.

Based on the evidence before it, the Court is not persuaded that HB25-1161 was adopted for a pretextual purpose. Senator Kipp, one of HB25-1161's sponsors, testified: "And really what we are looking at [is] just making sure that people understand that there are indoor pollutants created by gas stoves." Dkt. 27-28, ECF p.5. Senator Wallace's comment that "gas appliances contribute to climate change" is not alone enough to prove that HB25-1161 was adopted to combat climate change. *Id.* at ECF p.6. To be sure, the focus of the rest of Senator Wallace's comments was on the public health purpose of the law. And even if Senator Wallace's views were as Plaintiff classifies them, this is not controlling. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 385 (2012) ("[T]he views of a single legislator, even a bill's sponsor, are not controlling."); *see also Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 253-254 (2022) ("The Court has recognized that inquiries into legislative motives 'are a hazardous matter'" . . . and "[e]ven when an argument about legislative motive is backed by statements made by legislators who voted for a law, we have been reluctant to attribute those motives to the legislative body as a whole."). Even less persuasive is the testimony from witnesses who Plaintiff claims are climate advocates. Dkt. 27,

ECF pp.16-17. If the testimony from the sponsor of a bill cannot be attributed to the legislative body as a whole, it follows that the testimony of witnesses in support of the law cannot either.

Plaintiff next argues that "any purported interest in consumer health cannot be compelling because HB25-1161 does not identify an actual concrete problem." *Id.* at ECF p.27 (internal citations omitted). That is, there is not a scientific consensus that gas-fueled stoves are associated with or cause health impacts. *Id.* Neither Defendant nor Intervenor Defendant address this argument.

In *Brown v. Entertainment Merchants Association*, the Supreme Court held that California failed to demonstrate a compelling government interest in protecting minors from violent video games because it lacked evidence showing a causal "connection between exposure to violent video games and harmful effects on children." 564 U.S. at 800. The Court concluded that California's evidence was "ambiguous" and did not establish that violent videogames were such a problem that it was appropriate for California to infringe on its citizens' First Amendment rights. *Id.* at 799-800.

The same is true of the Defendant's evidence in this case. As discussed in the above section, the labeling requirement is controversial because there is robust disagreement between scientific sources concerning whether gas-fueled stoves cause or are associated with negative health outcomes. Defendant does not present any conclusive evidence regarding the potential health effects of using gas-fueled stoves.

22

Indeed, Plaintiff presents evidence that discredits any implication that there might be an association or cause and effect relationship between gas-fueled stoves and negative health impacts. Accordingly, Defendant has not identified "an actual concrete problem," so there is no compelling government interest. *Awad v. Ziriax*, 670 F.3d 1111, 1129 (10th Cir. 2012).

The labeling requirement is also not "narrowly tailored." A content-based regulation of speech "is narrowly tailored only if it is the least restrictive means of achieving the government's compelling objective." *Verlo v. Martinez*, 820 F.3d 1113, 1134 (10th Cir. 2016) (citing *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004)). In this case, the labeling requirement is not the least restrictive means of informing consumers about the alleged health impacts of gas-fueled stoves. As Plaintiff states, "[t]here is no indication the State tried—or even considered—less burdensome alternatives, such as the State itself promoting and disseminating the website, rather than forcing private parties to." Dkt. 27, ECF p.28. The Court agrees. Defendant presented no evidence that it considered different ways to convey its message before it decided to compel speech. For these reasons, the labeling requirement is not narrowly tailored and fails strict scrutiny.

In conclusion, HB25-1161 does not meet the demanding strict scrutiny test. As a result, the labeling requirement is likely invalid, and Plaintiff has shown a likelihood of success on the merits of its First Amendment claim. The Court will next analyze whether the rest of the preliminary injunction factors are met.

2.    **The Remaining Preliminary Injunction Factors are Satisfied**

Plaintiff has shown that it is likely to succeed on the merits of its First Amendment claim, therefore, the remaining factors also weigh in favor of injunctive relief because "in First Amendment cases, the likelihood of success on the merits will often be the determinative factor." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (quoting *ACLU of Ill. v. Alvarez*, 697 F.3d 583, 589 (7th Cir. 2012). With respect to the irreparable injury factor, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (citing N.*Y. Times Co. v. United States*, 403 U.S. 713 (1971)). Defendant argues there is no irreparable harm because Plaintiff is already required to include a warning label on their products in California under state law.[7] Dkt. 39, ECF p.31. This is irrelevant. The law before this Court is HB25-1161, which the Court has determined violates Plaintiff's First Amendment rights. Plaintiff need not show anything else to demonstrate irreparable injury. *See Awad*, 670 F.3d at 1131 ("[W]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

---

[7] California Proposition 65 states that "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning." Cal. Health & Safety Code § 25249.6. It also establishes a criterion for which chemicals are included. *Id.* at § 25249.8.

Intervenor Defendant argues there is no irreparable harm because the labeling requirement is "merely enabling (not requiring) prospective customers to access *truthful, accurate* information about health implications of gas stoves." Dkt. 41, ECF p.18. First, this mischaracterizes a state law that requires private parties to disseminate information to the public writ large. The Court disagrees that the labeling requirement merely enables customers to access information—the only reason customers can access this information is because the State compels peddlers of gas stoves to speak it. Further, as discussed in detail above, whether the information is truthful and accurate is subject to substantial disagreement within the scientific community. Because this Court has determined that the labeling requirement likely violates Plaintiff's First Amendment rights, the irreparable harm factor is satisfied.

Plaintiff has also met its burden on the last two factors of the preliminary injunction analysis. When the government is the opposing party, the last two factors merge, so the Court considers the threatened harm and public interest factors together. *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 112 (10th Cir. 2024) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "[W]hen a law . . . is likely unconstitutional, the interests of those the government represents, such as voters, do not outweigh a plaintiff's interest in having its constitutional rights protected." *Hobby Lobby Stores, Inc.*, 723 F.3d at 1145 (quoting *Awad*, 670 F.3d at 1131-32) (cleaned up).

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* Because this Court has found that the labeling requirement likely violates Plaintiff's First Amendment rights, the final two preliminary injunction factors are met.

**3.     Bond**

"[A] trial court has 'wide discretion under Rule 65(c) in determining whether to require security." *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003) (citing *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir. 1964)). Neither Defendant nor Intervenor Defendant request a bond, and the Court does not find a bond is necessary. Accordingly, no bond is required.

*     *     *

For the reasons shared above, Plaintiff's Motion for Preliminary Injunction (Dkt. 27) is GRANTED.

The Court ORDERS that Defendant, together with any employees or agents and all those acting in privity or concert with Defendant, is PRELIMINARILY ENJOINED from implementing or enforcing Colorado House Bill 25-1161 until such time as otherwise ordered by this Court.

Dated: December 19, 2025

BY THE COURT:

S. Kato Crews
United State District Judge

26